UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

DWAYNE M. REID, et al.,

                Plaintiffs,

      -against-

NASSAU COUNTY SHERIFF'S DEPARTMENT,
et al.,

                Defendants.

----------------------------------------------------------------X

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   AUG 2 0 2014   ★

**LONG ISLAND OFFICE**

13-CV-1192 (SJF)(SIL)

**OPINION & ORDER**

FEUERSTEIN, District Judge:

Pursuant to a February 13, 2012 order entered in *Anderson, et al. v. Sposato, et al.*, 11-CV-5663 (SJF)(WDW) ("the *Anderson* case"), over one hundred (100) separate *pro se* complaints brought pursuant to 42 U.S.C. § 1983 ("Section 1983") challenging the prison conditions allegedly existing at the Nassau County Correctional Center ("NCCC") were consolidated. By Order dated February 11, 2013, the Court entered a scheduling order ("the Scheduling Order") governing discovery, motion practice and the trial in the *Anderson* case. This consolidated action consists of eighteen (18)[1] *pro se* plaintiffs who filed complaints in this Court against the Nassau County Sheriff's Department ("NCSD")[2]; Michael Sposato ("Sheriff Sposato"), individually and in his official capacity as Sheriff of Nassau County; "John Doe,"

---

[1] Four (4) other individuals, Kevin Lee Benloss ("Benloss"), Nelson Herrera ("Herrera"), Johans Cabrera ("Cabrera") and Daquan Wagner ("Wagner"), also filed complaints that were consolidated with this action, but their claims have subsequently been dismissed.

[2] With respect to the complaints at issue on this motion, only plaintiff Dwayne M. Reid ("Reid") names the NCSD as a defendant.

Superintendent of the NCCC ("the Superintendent")[3]; and/or the County of Nassau ("the County")[4], near or after the expiration of several discovery deadlines set forth in the Scheduling Order. On or about June 11, 2013, three (3) of the consolidated plaintiffs[5], Henrius Jovany ("Jovany"), Abigail Torres ("A. Torres") and Guillermo Torres ("G. Torres"), jointly filed an amended complaint ("the amended complaint"), *inter alia*, naming "John Doe # 1" and "John Doe #2," individually and in their official capacity as "County Cooks" for the NCCC (collectively, "the County Cooks"), and Armor Correctional Health Service of New York, Inc. ("Armor"), as additional defendants. Like the complaints in the *Anderson* case, the fifteen (15) remaining complaints and the amended complaint in this consolidated action are brought pursuant to, *inter alia*, Section 1983 and challenge similar prison conditions allegedly existing at the NCCC.

Pending before the Court are: (1) separate motions by defendants NCSD, Sheriff Sposato, the Superintendent, the County and the "County Cooks" (collectively, "the County defendants") to dismiss (a) the complaints of, *inter alia*, Reid, Christian Delosrios ("Delosrios"), Fernando Cazares ("Cazares") and Montavious Jackson ("Jackson") and (b) the amended complaint of

---

[3] With respect to the complaints at issue on this motion, only Reid names "John Doe," Superintendent of the NCCC, as a defendant.

[4] With respect to the complaints at issue on this motion, all of the consolidated plaintiffs, except Reid, name the County as a defendant.

[5] A fourth consolidated plaintiff, Cabrera, also jointly filed the amended complaint. However, by order dated December 18, 2013, Cabrera's motion to "withdraw voluntarily" from this consolidated action was granted and his claims were dismissed in their entirety without prejudice pursuant to Rule 41(a) of the Federal Rules of Civil Procedure.

Jovany, A. Torres and G. Torres[6] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief[7]; and (2) Armor's motion to dismiss the amended complaint as against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. None of the consolidated plaintiffs has filed any opposition to Armor's motion and only A. Torres and G. Torres have opposed the County defendants' motion. For the reasons set forth below, the County defendants' and Armor's motions are granted in part.

I.    The Complaints

A.    Reid's Complaint

The statement of claim in Reid's complaint reads as follows:

> "Unsanitary conditions, abestos [sic], black mole [sic] all over the jail, toilets flush bodily waste into one toilet from another, the guard [sic] fail to give us proper cleaning supplies for the cell, infested with bed bugs, rodent and lack of medical attention. Cells are very cold. I have a rash on the bottom of my left foot that I have caught in here in Sept. I've been going to medical but it's still on my foot (rash)."

(Complaint ["Compl."], ¶ IV). For injuries, Reid claims that he has "a rash on the bottom of

---

[6] Reid, Delosrios, Cazares, Jackson, Jovany, A. Torres and G. Torres will collectively be referred to herein as "the consolidated plaintiffs."

[7] The County defendants also sought dismissal of the complaints filed by Benloss, Wagner and Cabrera. However, by order dated April 9, 2014, *inter alia*, Benloss's and Wagner's claims were dismissed in their entirety with prejudice pursuant to Rules 37(b)(2)(a)(v) and 41(b) of the Federal Rules of Civil Procedure for, *inter alia*, their failure to comply with a January 13, 2014 order of this Court. The April 9, 2014 order also dismissed Cazares's claims. However, by letter dated April 21, 2014, Cazares subsequently sought to have his claims reinstated. Since Cazares has shown good cause for his failure to comply with this Court's January 13, 2014 order, his motion, (Doc. No. 105), is granted and his claims in this consolidated action are reinstated, except to the extent otherwise dismissed herein.

[his] left foot" and that he received medical attention, "but not the proper attention because the rash is still there and it's getting worser [sic]." (Compl., ¶ IV(A)). For relief, Reid seeks "heat, cleaning supplies to clean unsanitary cells, medial [sic] treatment for all injuries herein, injunction [sic] relief and monetary damages" in an unspecified amount. (Compl., ¶ V).

B.    Delosrios's Complaint

Delosrios contends that he has been incarcerated in the E2B housing unit of the NCCC since "[o]n or about March 9, 2013" and has been subjected "to an extremely filthy cell and housing unit that consisted of chipped peeling paint on walls, flooring, that included human feces encrusted on walls and toilet bowl," which caused him "to become very sick and infected on his buttocks from toilet not being clean." (Compl., ¶ IV). Delosrios also contends: (1) that the "housing unit correction officer John Doe" refused his request for cleaning supplies "to sanitize the cell and walls[;]" (2) that he "he has been bitten by numerous 'bed-bugs' and roaches that have caused * * * red marks on [his] neck, back and legs[;]" (3) that there "are [sic] active infestation of mice along with their 'mice feces' all around in [his] cell and running around on unit[;]" (4) that he and the other inmates "are being served * * * unhealthy and unsanitary foods that is [sic] clearly infested with insects and mice droppings;" (5) that he "made a formal complaint to Defendants, and Defendants 'choose [sic] not to investigate these complaints and ignore [sic] to correct these problems of conditions[;]" (6) that when he showed "the housing correction officer the dropping of mice feces," the officer "stated 'its [sic] more protein to eat[;]'" and (7) that "after complaints were made no correction [sic] action or remedy" was given. (Compl., ¶ IV).

4

Delosrios claims that due to the unsanitary and inadequate food, he suffers from "severe migraine headaches, * * * dizzy spells, * * * [and] stomach ache and pains" throughout the day. (Compl., ¶ IV). For injuries, Delosrios claims that he sustained an infection on his body, a fever, a severe migraine headache and stomachache and pains, for which he received medical treatment "consist[ing] of blue pills." (Compl., ¶ IV(A)). Delosrios seeks "injunctive relief and monetary [d]amages in the amount of $20 million dollar [sic] in compensatory [d]amages, and $20 million dollars in punitive damages * * *." (Compl., ¶ V).

### C. Cazares's Complaint

Like Delosrios, Cazares contends: (1) that he has been "subjected to an unsanitary housing unit on E2-B for over 6 ½ months * * *[,]" insofar as "the cell are [sic] extremely [sic] with chipped peeling paint, [and] encrusted dried fecal matters [sic] on the walls, ceiling and flooring[,]" (Compl., ¶ IV); (2) that the "housing unit correction officer John Doe" refused his request for cleaning supplies "to sanitize the walls and flooring and toilet bowl as well as the cell sink[,]" (id.); (3) that his cell and the housing unit are infested with bed bugs, roaches and mice, but defendants "refuse to set traps" and denied his request to be moved to another housing unit, (id.); (4) that he has "been bitten by bed-bugs and cockroaches that have cause [sic] him to become infected and marks on [his] body[,]" (id.); (5) that the food at the NCCC is "unappetizing," "unwholesome," "poorly prepared," "often infested with insects that you can 'see' upon eaten [sic]," "unsanitary to consume [and] being served under conditions that present immediate danger to [his] health as well as other inmates [sic] health[;]" and (6) that he "made 'complaints' too [sic] Defendants, however, Defendants choose [sic] to ignore, correct these

5

problems * * *." (Compl., ¶ IV). (Id.) Cazares claims that due to the unsanitary food, he has "become very sick and weak throughout the day that consisted of severe migraine headaches and dizzy spells and stomach ache and pain from being underfed of proper food." (Compl., ¶ IV). In addition, Cazares alleges: (1) that "during the winter months, [he] is suffering from chills at night, because the cell are [sic] extremly [sic] cold" and his request to "correction office[r] John Doe" for an extra blanket was denied, as a result of which he "became very sick with fever for weeks that require[d] medical attention[,]" (id.); and (2) that "Correction Officer John Doe," bang the cell door on [his] foot intentionally, that caused [him] to 'fracture his foot,' do [sic] to the Correction Officer banging the cell door's [sic] daily as a means of waking inmates up and are banged throughout the day to count inmates, instead of using their P.A. system, which the banging is loud and violent." (Id.)

For injuries, Cazares claims that he sustained an "[i]nfection on his [a]rms, and [b]ack, [s]evere headaches, dizzy spells and stomach ache and pains" and that medical treatment "was delayed for two-weeks, and thereafter received." (Compl., ¶ IV(A)). Cazares seeks "[i]njunctive relief and [m]onetary [d]amages in the amount of $20 million dollars jointly and severally for [c]ompensatory damages, and $20 million dollars in punitive [d]amages * * *." (Compl., ¶ V).


D.     Jackson's Complaint

Like Delosrios and Cazares, Jackson contends: (1) that since on or about August 3, 2012, he has been "subjected to unsanitary conditions at [NCCC] that have caused [him] to become infected from the unsanitary cell[,]" (Compl., ¶ IV); (2) that he "is housed on E2 B housing unit that is extremely dirty with chipped peeling paint on walls, and walls is [sic] clearly encrusted

6

with urine and human feces and toilet not working properly[,]" (Id.); (3) that defendants "refuse to supply any cleaning supplies to sanitize [his] cell[,]" (id.); (4) that his cell is infested with insects and roaches and "active mice * * * running around during the night," which leave "numerous mice feces inside [his] drinking cup[,]" (id.); (5) that the insects and roaches have bitten him on his neck and legs, causing "an infection on [his] neck and red marks on [his] legs[,]" but defendants failed to remedy or correct the problem after he "filed a complaint," (id.); and (6) that he suffers from "severe migraine headaches from being underfed of proper food that is unsanitary to eat because the Defendants [sic] is subjected to unsanitary and unwholesome foods that is infested with insects and roaches along with mice dropping [sic], that have caused [him] to become very weak throughout the day from not eating * * *." (Id.) In addition, Jackson alleges that "[d]uring the night time [he] was bitten by a mice [sic], when [he] 'reached' into his [c]ommissary bag, to grab some cookies[,]" as a result of which he "received medical treatment that consist [sic] of a shot with a needle." (Id.) According to Jackson, he "made a formal complaint to Defendants about this matter, and Defendants refuse [sic] to investigate * * *." (Id.)

For injuries, Jackson claims that he sustained an "[i]nfection on his [l]egs and [a]rms, [b]itten by mice on fingers, treatment received was a shot with a needle, and treatment of pills." (Compl., ¶ IV(A)). Jackson seeks "injunctive relief and [m]oney [d]amages in the amount of $20 million dollars, in [c]ompensatory [d]amages, and $20 million dollars in punitive [d]amages * * *." (Compl., ¶ V).

E.    Amended Complaint

Jovany "has been detained [in the NCCC] since May of 2011." (Amended Complaint

7

["Amend. Compl."], ¶ 9). G. Torres "has been detained in the NCCC since November of 2012" and was "awaiting sentence" at the time that the amended complaint was filed. (Amend. Compl., ¶ 11). A. Torres "has been detained in the NCCC since March, 2013." (Amend. Compl., ¶ 12).

In their amended complaint, Jovany, A. Torres and G. Torres allege, *inter alia*, that inmates at the NCCC, including themselves: (1) "are subjected to inhumane conditions that have pose [sic] unreasonable and substantial risk to * * * [their] health[,]" (Amend. Compl., ¶ 1); (2) "are force [sic] to live in the amidst [sic] of filth, overflowing backups of sewage of stilled water in showers, cells with chipped peeling paint, dried human fecal matters and foods encrusted on walls, ceiling, poor ventilation, inadequate cleaning supplies, insect and rodent populations, sinks and toilets in cells[] don't work properly, cells that are too cold, poorly prepared, unsanitary and unwholesome meals, water leaking ceilings, [i]nadequate medical treatment, * * * [and] [c]ooks not following illness inmates [sic] and plaintiffs [sic] diet meals[] or State provided nutritionally [sic] guidelines[,]" (id.); (3) "lack access to Safe Foods, proper medical diets, as well as basic necessities such are [s]anitary and properly [f]unctioning sinks, toilets, and showers, rodents, and insects invade * * * [their] living areas and [c]ontaminate [their] foods[,]" (Amend. Compl., ¶ 2); (4) "sleep in freezing cells" in the winter and "attempt to fight off the cold cells with a single worn blanket[,]" (id.); (5) are housed in "unsanitary" cells with toilets and "poor ventilation," (Amend. Compl., ¶ 21); (6) "are force [sic] to live in [s]qualid unhygienic and hazardous living conditions that pose a substantial and ongoing risk to [their] physical and mental health[,]" (id.); (7) "are subjected to cells with [a] chipped peeling paint on walls believed to obtain [sic] led [sic], * * * [b] walls * * * encrusted with human feces stains, [c] toilet and sinks * * *[that] are very out-dated[] and don't work properly, * * * [d] toilet seats [that] have accrued filth over time,

as a result of the frequent waste, [which] has caused [them] to suffer from rashes on their buttocks, and infections[,] * * * [e] no ventilation[,] * * * [f] air-ducts [that] are clogged with rust and mold, and * * * [g] windows [that] are 'sealed shut[,]'" (id.); (8) "are subjected to numerous [c]ockroaches [c]rawling everywhere, including biting [them] on their 'arms and faces' at night, causing [them] infections on their bodies[,]" (Amend. Compl., ¶ 22); (9) "have to deal with active infestation of mice's [sic], that run around during the night[] * * * [and] eat [their] foods [sic] purchase[d] from [the] [c]ommissary[,]" (Amend. Compl., ¶ 23); (10) "have numerous mice feces[] inside the only drinking cup that are giving to them[,] * * * [which] 'obsord' [sic] the mices [sic] feces that carry disease and harmful parasites or even hepatitis to add more serious conditions to [their] health[,]" (id.); (11) are "being served unhealthy, unsanitary foods * * * infested with insects and mice droppings[,]" (Amend. Compl., ¶ 24; see also id., ¶ 35); (12) "are being underfed, and the food quanitity [sic] and quality * * * has [sic] been 400 [c]alories each day, below the nationally recommended based 2000 [c]alories diet allowance for [them] * * *, [which] has subjected [them] to contract severe migraines [sic] headaches, dizzy spells, and during the night time, stomach ache and pains[,]" (id.); (13) "are subjected to showers, that are [c]over [sic] in black mole [sic], mildew, stilled water of sewage backups on the flooring shower drains, that are frequently clogged and subjected [them] to contract severe fungal infection [sic] on their feets [sic][,]" (Amend. Compl., ¶ 25); and (14) "live in very cold temperature in cells, during the winter months * * *[,]" as a result of which they "'must' wear all of their County issuing [sic] clothing, a pair of socks on their hands and a towel wrap [sic] around [their] faces, to protect from the cold[,]" which "disrupts * * * [their] sleeping patterns" and causes them "stress[,]" (Amend. Compl., ¶ 27). In addition, A. Torres

9

alleges that due to her age, she "is housed in NCCC, similar to an 'SHU unit,' that include [sic] being subjected in the 'woman unit,' to human waste in the showers, constant intense noise, resulting from deranged screaming inmates and noxious odors throughout the day." (Amend. Compl., ¶ 33).

Jovany, A. Torres and G. Torres allege that the County defendants: (1) "have known about the appalling un-[s]anitary [sic] [c]onditions and [p]oor medical treatment in the NCCC after numerous [c]omplaints from plaintiffs as well as other-inmates [sic] including State Official's [sic], but * * * have failed to make reasonable efforts to remedy these * * * conditions[,]" (Amend. Compl., ¶ 5; see id., ¶ 51 ["These complaints were brought to the attention of Sposato from Plaintiff's as well as other inmates, who [sic] Sposato refused to take any action to correct the situation."]; id., ¶ 52 ["The County of Nassau and Sposato knew of the unsanitary conditions, showed disregard for the health, welfare or human rights of plaintiffs as well as other inmates, and was aware of the type of treatment the plaintiff's [sic] and other inmates were receiving at the NCCC."]); (2) have ignored their "numerous complaints about the conditions of the showers * * * and have not fixed the showers * * *[,]" (Amend. Compl., ¶ 25); (3) have refused or ignored their requests for adequate cleaning supplies "to remove the mold" on the showers, (Amend. Compl., ¶ 26), and "to try to remove the human encrusted [f]eces on walls in cells and clean the toilets in cells, including mold * * *[,]" (Amend. Compl., ¶ 28), and "instead, hand [them] a bar of soap called Corcraft, an ineffective cleaning solutions [sic][,]" (Amend. Compl., ¶ 26), "without any gloves * * * and an old rag[,]" (Amend. Compl., ¶ 28); (4) have not provided Jovany with "his proper vegetarian diet meals, prescribe [sic] by Doctor's [sic][,]" (Amend. Compl., ¶ 35), "intentionally serve [him] 'meats' inside of his meals

throughout the day[,]" (id.), and have provided "no remedy" to him despite his "numerous grievances," (id.); (5) have "a history of sanitation problems in the NCCC[,]" (Amend. Compl., ¶ 37); and (6) "either ratified these acts or condoned them to such a degree, that they became part of the policy, custom, practice, and procedures of the County and Sposato, * * * [which] violated the plaintiffs [sic] herein mentioned rights of the Constitutional [sic][,]" (Amend. Compl., ¶ 53).

Jovany, A. Torres and G. Torres allege that Armor, *inter alia*: (1) "is failing to follow its own policies, * * * ignores signs of mental illness * * *[,] and fail[s] to treat [their] illness related issues[,]" (Amend. Compl., ¶ 29); (2) has engaged in a "repeated and systemic failure in the provision of health care service to [them] and other inmates in NCCC, with very serious mental disorders, including such basic inadequacies as failure to take a complete medical history, failure to keep adequate records, failure to see [them] * * * suffering from seeming mental crises, failure to diagnose medical conditions of inmates, failure to prescribe proper medication, and significant delay in providing any medical treatment service to [them] * * *[,]" (id.); (3) "for over a 'year and present' * * * has failed to take any measurement [sic] to investigate or treat [Jovany's] medical problem [i.e., an "infection on his head"], that have [sic] caused [him] a serious head infection, that requires surgery[,]" (Amend. Compl., ¶ 31) (emphasis omitted); (4) has taken "no action" on Jovany's "numerous sick call request[s]" or the grievance he filed "toward this matter[,]" (id.); (5) has ignored A. Torres's "signs of mental illness," "sick call request slips" and complaints "about serious medical problems in the form of mental disorders and not receiving her prescribed medication for months" and "fail[ed] to treat [her] properly[,]" as a result of which she "is suffering from significant mental problems without proper medical care[,]" (Amend. Compl., ¶ 33); and (6) has refused to "look into" G. Torres's complaints of

11

"serious knee pains, that consisted of a swollen knee, and shoulder pain," or examine his knee or shoulder, as a result of which he has been subjected "to severe 'swollen knee' and shoulder pains * * *[,]" (Amend. Compl., ¶ 34).

Jovany, A. Torres and G. Torres allege that they and other inmates at the NCCC "suffer from [c]hronic ailments, including persistent and recurring digestive issues, mental issues, stomach pains, skin and head infections, rashes, severe migrain [sic] headaches and dizzy spells and * * * are at current and ongoing risk of suffering from more serious ailments in the future[,]" as a result of the "poor conditions and health care[] at the NCCC." (Amend. Compl., ¶ 3; see also id, ¶ 13 ["Plaintiffs * * * as well as other inmates * * * suffered intestinal illness, skin rashes, infection on their heads, infections on their buttocks, fungal infections, headaches, poor medical care, unsanitary foods, improper health food diets for medically ill plaintiffs and mental disordered [sic]."]; id., ¶ 35 ["Defendants * * * have subjected [Jovany] to be underfed, that have caused [him], severe migraine headaches, and dizzy spells, including stomach ache and pains during the night throughout each day and present * * *."]). The amended complaint asserts two (2) causes of action pursuant to Section 1983 for violations of Jovany's, A. Torres's and G. Torres's due process rights under the Fourteenth Amendment to the United States Constitution and right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution (first and second causes of action, respectively), as well as state law claims for violations of their due process rights under the New York State Constitution (third cause of action) and for "negligence and ministerial negligence" (fourth cause of action). (Amend. Compl., ¶¶ 54-61). Jovany, A. Torres and G. Torres seek, *inter alia*: (1) injunctive relief "in the form of an appropriate remedial order to improve the [c]onditions in the NCCC, to

12

meet minium [sic] Constitutionally acceptable [s]tandards," (Amend. Compl., ¶ 5), and "enjoin[ing] [d]efendants, and their successors, from subjecting [them] and other inmates in the NCCC to unsanitary, unhealthy, and unsafe conditions, and requir[ing] that a remedy be formulated, subject to Court's approval and modification, if necessary, to end the inhumane conditions described herein at the NCCC[,]" (Amend. Compl. at 22-23); (2) judgment declaring that "subjecting [them] to the conditions described [in the amended complaint] violates the Eighth and Fourteenth Amendments to the United States Constitution and the Due Process Clause of the New York State Constitution, [and constitutes] negligence and ministerial negligence, which directly and proximately caused the violating [sic] under New York State laws[,]" (Amend. Compl. at 22); and (3) "money damages to redress Defendants [sic] violations of [their] rights under the Eighth and Fourteenth Amendments to the United States Constitution and the Due Process Clause of the New York State Constitution." (Amend. Compl., ¶ 5; see also id., ¶ 14 ["Plaintiffs * * * sues [sic] for injunctive relief, declaratory relief, [c]ompensatory damages and punitive damages."]; at 23 [seeking an award of compensatory damages, punitive damages and "damages for the denials of [their] right to be free from cruel and unusual punishment and right to due process."]).

## II.    Discussion

### A.    Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167

L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678, 129 S. Ct. 1937.

The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the * * * claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678, 129 S. Ct. 1937 (quoting Twombly, 550 U.S. at 555, 127 S. Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557, 127 S. Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. 544, 127 S. Ct. at 1959.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See Aegis Ins. Services, Inc. v. 7 World Trade Co., L.P., 737 F.3d 166, 176 (2d Cir. 2013); Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678, 129 S. Ct. 1937. "While legal conclusions can provide the framework of a complaint, they must be

supported by factual allegations." Id. at 679, 129 S. Ct. 1937. "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.; see also Ruston v. Town Board for Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010).

Nonetheless, a plaintiff is not required to plead "specific evidence or extra facts beyond what is needed to make the claim plausible." Arista Records, LLC v. Doe 3, 604 F.3d 110, 120-1 (2d Cir. 2010); see also Matson v. Board of Education of City School District of New York, 631 F.3d 57, 63 (2d Cir. 2011) ("While a complaint need not contain detailed factual allegations, it requires more than an unadorned, the defendant-unlawfully-harmed-me accusation." (internal quotations and citation omitted)). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679, 129 S. Ct. 1937.

The Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); see also ASARCO LLC v. Goodwin, — F.3d —. 2014 WL 2870117, at * 5 (2d Cir. June 25, 2014).


B.    Section 1983 Claims

The County defendants contend that the consolidated plaintiffs "must identify the specific constitutional rights allegedly infringed upon * * * [and,] "[a]ccordingly, [they] have not pleaded

allegations sufficient to constitute claims under Section 1983." (County Defendants'

Memorandum of Law in Support of Motion pursuant to Fed. Civ. P. Rule 12(b) regarding, *inter*

*alia*, Reid, Delosrios, Cazares and Jackson ["County Mem. I"], at 9; County Defendants'

Memorandum of Law in Support of Motion pursuant to Fed. Civ. P. Rule 12(b) regarding, *inter*

*alia*, Jovany, A. Torres and G. Torres ["County Mem. II"], at 8-9).

Section 1983 of Title 42 of the United States Code provides, in relevant part:

> [e]very person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State . . . subjects, or causes to
> be subjected, any citizen of the United States . . . to the deprivation
> of any rights, privileges, or immunities secured by the Constitution
> and laws, shall be liable to the party injured.

42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege (1) that the

challenged conduct was "committed by a person acting under color of state law," and (2) that

such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the

Constitution or laws of the United States." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010)

(citing Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994)); see also Rehberg v. Paulk, --- U.S.

----, 132 S. Ct. 1497, 1501-02, 182 L. Ed. 2d 593 (2012).

Prison officials have a duty, imposed under either the Eighth Amendment with respect to

convicted prisoners or the Due Process Clauses of the Fifth and Fourteenth Amendments with

respect to pretrial detainees in federal custody and state custody, respectively,[8] to "ensure that

---

[8] With the exception of G. Torres, who indicates that he was "awaiting sentence" at the time that
the amended complaint was filed, none of the other consolidated plaintiffs indicate whether they
are convicted prisoners or pretrial detainees. However, the same "deliberate indifference"
standard applies to claims challenging prison conditions regardless of whether the claim is
brought under the Eighth Amendment or the Due Process Clauses of the Fifth and Fourteenth
Amendments. See Caiozzo v. Koreman, 581 F.3d 63, 70-1 (2d Cir. 2009); see also Nielsen v.
Rabin, 746 F.3d 58, 63 n. 3 (2d Cir. 2014).

16

inmates receive adequate food, clothing, shelter, and medical care, and [to] take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832-33, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (quotations and citations omitted). Contrary to the County defendants' contention, the consolidated plaintiffs' allegations that the acts and/or omissions of the County defendants, acting under color of state law, deprived them of their rights, *inter alia*, to receive adequate food, shelter and medical care under the Eighth and Fourteenth Amendments to the United States Constitution are, thus, sufficient to state a plausible claim under Section 1983. Accordingly, the branches of the County defendants' motions seeking dismissal of the consolidated plaintiffs' Section 1983 claims for failure to "identify the specific constitutional rights allegedly infringed upon," (County Mem. I at 9; County Mem. II at 8), are denied.

1.    Reid's Claims Against the NCSD

"Under New York law, 'departments which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued.'" Dudek v. Nassau County Sheriff's Department, 991 F. Supp. 2d 402, 410 (E.D.N.Y. 2013) (quoting Davis v. Lynbrook Police Department, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002)); see also Burbar v. Incorporated Village of Garden City, 961 F. Supp. 2d 462, 471 (E.D.N.Y. 2013); Robischung-Walsh v. Nassau County Police Dep't, 699 F. Supp. 2d 563, 565 (E.D.N.Y. 2010), aff'd, 421 F. App'x 38 (2d Cir. 2011). Since the NCSD is an administrative arm of the County, see, e.g. Dudek, 991 F. Supp. 2d at 410 (dismissing claims against the NCSD); Varricchio v. County of Nassau, 702 F. Supp. 2d 40, 50 (E.D.N.Y. 2010) (accord), it lacks the capacity to be sued. Accordingly, the branch of the County defendants' motion seeking

dismissal of Reid's claims against the NCSD is granted and Reid's claims against the NCSD are dismissed in their entirety with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief. However, since Reid is proceeding *pro se,* and all of the other consolidated plaintiffs herein have named the County as a defendant, Reid's Section 1983 claims against the NCSD will be construed as being brought against the County.

### 2. Municipal Liability

The County defendants contend, *inter alia*: (1) that "[a]bsent allegations that a Nassau County policy led to the Consolidated Plaintiffs' alleged injuries, the Consolidated Plaintiffs' suit against the County must be dismissed for want of a substantial § 1983 claim," (County Mem. I at 11); (2) that none of the allegations of deliberate indifference in the amended complaint "rise to the level required to withstand a motion to dismiss; they are mere 'naked assertions' devoid of 'further factual enhancement[,]'" (County Mem. II at 23 (quoting Twombly, 550 U.S. at 557, 127 S. Ct. 1955)); (3) that Jovany's, A. Torres's and G. Torres's allegations of deliberate indifference are "specious" and "fall flat because they attempt to establish [it] 'solely from evidence of the occurrence of the incident in question * * * [but] [a] plaintiff cannot prevail on a § 1983 claim against a municipality without introducing other evidence[,]'" (id. at 23-24 (quoting Fiacco v. City of Rensselaer, N.Y., 783 F.2d 319, 328 (2d Cir. 1986)); (4) that Jovany, A. Torres and G. Torres "fail to allege that Nassau County's incarceration system is 'contrary to the practice of most' other municipalities or that it is 'particularly dangerous because it presented an unusually high risk that constitutional rights would be violated[,]' * * * [which] is a key part of

demonstrating deliberate indifference[,]" (id. at 24)[9]; and (5) that Jovany, A. Torres and G.

Torres "do not show that better supervision or more supervision at NCCC would have prevented

or would prevent further violations[,]" (id.).

"[A] municipality can be held liable under Section 1983 if the deprivation of the

plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the

municipality." Jones v. Town of East Haven, 691 F.3d 72, 80 (2d Cir. 2012), cert. denied, 134 S.

Ct. 125, 187 L. Ed. 2d 255 (2013); see also Matusick v. Erie Co. Water Authority, — F.3d —,

2014 WL 700718 (2d Cir. Feb. 25, 2014) (accord). "Absent such a custom, policy, or usage, a

municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee."

Jones, 691 F.3d at 80; see also Connick v. Thompson, — U.S. —, 131 S. Ct. 1350, 1359, 179 L.

Ed. 2d 417 (2011) (holding that under Section 1983, governmental bodies are not vicariously

liable for their employees' actions); Los Angeles County, California v. Humphries, — U.S. —,

131 S. Ct. 447, 452, 178 L. Ed. 2d 460 (2010) ("[A] municipality cannot be held liable solely for

the acts of others, e.g., *solely* because it employs a tortfeasor." (emphasis in original) (quotations

and citation omitted)); Monell v. Department of Social Services of City of New York, 436 U.S.

658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). To prevail on a Section 1983 claim against a

municipal entity, a plaintiff must show: "(1) actions taken under color of law; (2) deprivation of a

constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the

municipality caused the constitutional injury." Roe v. City of Waterbury, 542 F.3d 31, 36 (2d

Cir. 2008); see also Connick, — U.S. —, 131 S. Ct. at 1359 ("Plaintiffs who seek to impose

---

[9] Although the quotations marks are in the original, the County defendants fail to cite any
authority for those quotes.

liability on local governments under Section 1983 must prove that 'action pursuant to official municipal policy' caused their injury." (quoting <u>Monell</u>, 436 U.S. at 691,98 S. Ct. 2018)); <u>Humphries</u>, — U.S. —, 131 S. Ct. at 452 ("[A] municipality may be held liable when execution of a government's *policy or custom* . . . inflicts the injury." (emphasis in original) (quotations and citation omitted)). "A municipal policy may be pronounced or tacit and reflected in either action or inaction." <u>Cash v. County of Erie</u>, 654 F.3d 324, 333 (2d Cir. 2011). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." <u>Connick</u>, — U.S. —, 131 S.Ct. at 1359.

In addition, municipal liability can be established "by showing that a policymaking official ordered or ratified the employee's actions - either expressly or tacitly." <u>Jones</u>, 691 F.3d at 81. "Thus, a plaintiff can prevail against a municipality by showing that the policymaking official was aware of the employee's unconstitutional actions and consciously chose to ignore them." <u>Id.</u>; <u>see also</u> <u>Amnesty America v. Town of W. Hartford</u>, 361 F.3d 113, 126 (2d Cir. 2004) (accord). To establish such deliberate indifference, "a plaintiff must show that a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights." <u>Jones</u>, 691 F.3d at 81. "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." <u>Connick</u>, — U.S. —, 131 S. Ct. at 1360 (quotations and citation omitted). "[D]eliberate indifference requires a showing that the official made a conscious choice, and was not merely negligent." <u>Jones</u>, 691 F.3d at 81; <u>see also</u> <u>Cash</u>, 654 F.3d at 334.

To state a claim for municipal liability under Section 1983, a plaintiff must allege more than that a municipal policy or custom exists. Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) ("[T]he mere assertion that a municipality has * * * a custom or policy is insufficient [to withstand dismissal] in the absence of allegations of fact tending to support, at least circumstantially, such an inference * * *." (quotations, alterations and citation omitted)); see also Zherka v. City of New York, 459 F. App'x 10, 12 (2d Cir. Jan. 19, 2012) (summary order) (accord). "Rather, a plaintiff must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." Santos v. New York City, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012); see also Triano v. Town of Harrison, N.Y., 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012) (accord).

Contrary to the County defendants' contention, the complaints at issue on this motion, and particularly the amended complaint, allege sufficient facts from which it may reasonably be inferred that a municipal policy or custom existed. Specifically, the consolidated plaintiffs' allegations that Sheriff Sposato, a policymaking official, was aware of the challenged conditions at the NCCC but failed to remedy them and/or chose to ignore them, plausibly states a claim of deliberate indifference to the consolidated plaintiffs' constitutional rights under the Eighth and Fourteenth Amendments to the United States Constitution. Contrary to the County defendants' contentions, the consolidated plaintiffs were not required to "introduc[e] other evidence" or "show" anything additional in their pleadings in order to withstand a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Accordingly, the branches of the County defendants' motions seeking dismissal of the consolidated plaintiffs' Section 1983 claims against the County, and as construed to be against the County with respect to Reid, are denied.

### 3. Claims against Sheriff Sposato and the Superintendent

The County defendants contend, *inter alia*, that the consolidated plaintiffs' claims against Sheriff Sposato and the Superintendent must be dismissed because, (1) insofar as they are sued in their official capacity, they do not have a legal identity separate and apart from the County; and, (2) insofar as they are sued in their individual capacity, the consolidated plaintiffs do not allege their personal involvement in the constitutional violations of which they complain.[10]

### a. Official Capacity Claims

"[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity [of which an officer is an agent]." Kentucky v. Graham, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). "It is *not* a suit against the official personally, for the real party in interest is the entity." Id. (emphasis in original). "Within the Second Circuit, where a plaintiff names both the municipal entity and an official in his or her official capacity, district courts have consistently dismissed the official capacity claims as redundant." Phillips v. County of Orange, 894 F. Supp. 2d 345, 384 n. 35 (S.D.N.Y. 2012) (citing cases); see, e.g. Canzoneri v. Incorporated Village of Rockville Centre, 986 F. Supp. 2d 194, 205 (E.D.N.Y. 2013) (dismissing official capacity claims against individual officers "because they are duplicative of the Monell claims against the [municipality]."); Field Day, LLC v. County of Suffolk, 799 F. Supp. 2d 205, 214 (E.D.N.Y. 2011) (dismissing official capacity claim because, *inter alia*, the real party in interest was the County and it was a named party to the action); Schubert v. City of Rye, 775 F. Supp. 2d

---

[10] Although the County defendants also seek dismissal of the consolidated plaintiffs' claims against Sergeant Krueger and Captain Ford, (County Mem. I at 15-18), for purposes of these motions, only Benloss asserted claims against those defendants and, as set forth above, his claims in this consolidated action have already been dismissed.

689, 699-700 (S.D.N.Y. 2011) (dismissing official capacity claims as redundant). Accordingly, the branches of the County defendants' motions seeking dismissal of the consolidated plaintiffs' Section 1983 claims against Sheriff Sposato and the Superintendent in their official capacity are granted and the consolidated plaintiffs' Section 1983 claims against Sheriff Sposato and the Superintendent are dismissed in their entirety with prejudice as redundant to their claims against the County.[11]

b.      Individual Capacity Claims

A Section 1983 claim must allege the personal involvement of any individual defendant in the purported constitutional deprivation. See Spavone v. New York State Department of Correctional Services, 719 F.3d 127, 135 (2d Cir. 2013) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (quoting Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995))); Grullon, 720 F.3d at 138-39 ("[I]n order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation.") "Personal involvement" may be established by evidence of direct participation in the challenged conduct, or by evidence of a supervisory official's "(1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates." Hayut v. State Univ. of New York, 352 F.3d 733, 753 (2d Cir.

---

[11]  Since Delosrios sues Sposato only in his official capacity, i.e., "as Sheriff of Nassau County," his Section 1983 claims against Sposato are dismissed in their entirety.

23

2003); see also Grullon, 720 F.3d at 139; Back v. Hastings on Hudson Union Free School District, 365 F.3d 107, 127 (2d Cir. 2004). "The fact that [a defendant] was in a high position of authority is an insufficient basis for the imposition of personal liability." Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2d Cir. 1989) (quotations and citation omitted); see also Back, 365 F.3d at 127; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). A complaint based upon a violation under Section 1983 that does not allege facts establishing the personal involvement of an individual defendant fails as a matter of law. See Costello v. City of Burlington, 632 F.3d 41, 48-9 (2d Cir. 2011).

The allegations in the complaints, and particularly the amended complaint, at issue on this motion, are sufficient to state a plausible claim of supervisory liability on the part of Sheriff Sposato in his individual capacity. Specifically, the consolidated plaintiffs' allegations, *inter alia*, that Sheriff Sposato knew about the challenged conditions at the NCCC that violated their constitutional rights, but failed to act to remedy or correct those conditions, are sufficient at the pleadings stage to state a plausible Section 1983 claim against Sheriff Sposato in his individual capacity. Accordingly, the branches of the County defendants' motions seeking dismissal of the consolidated plaintiffs' Section 1983 claims against Sheriff Sposato in his individual capacity are denied.

However, Reid has not alleged the direct participation of the Superintendent in any of the wrongdoing alleged in his complaint, nor any basis upon which to find the Superintendent liable in a supervisory capacity. Accordingly, the branch of the County defendants' motion seeking dismissal of Reid's Section 1983 claims against the Superintendent in his individual capacity is granted and Reid's Section 1983 claims against the Superintendent in his individual capacity are dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a

24

claim for relief.[12]

### 4. Conditions of Confinement Claims

While "[t]he Constitution does not mandate comfortable prisons, * * * neither does it permit inhumane ones * * *." <u>Farmer</u>, 511 U.S. at 832, 114 S. Ct. 1970. Prison officials violate the Eighth Amendment, or Due Process Clause of the Fourteenth Amendment, only when: (1) "the deprivation alleged [is], objectively, sufficiently serious, * * * [i.e.,] a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities," <u>id.</u>, 511 U.S. 832, 114 S. Ct. 1970 (quotations and citations omitted); and (2) the officials acted, or failed to act, with "a sufficiently culpable state of mind * * * [i.e.,] [with] deliberate indifference to inmate health or safety * * *." <u>Id.</u> (quotations and citations omitted); <u>see also</u> <u>Walker v. Schult</u>, 717 F.3d 119, 125 (2d Cir. 2013).

#### a. Objective Element

"[T]here is no static test to determine whether a deprivation is sufficiently serious; the conditions themselves must be evaluated in light of contemporary standards of decency." <u>Jabbar v. Fischer</u>, 683 F.3d 54, 57 (2d Cir. 2012) (quotations, alterations and citation omitted); <u>see also</u> <u>Walker</u>, 717 F.3d at 125 (accord). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim[] [b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society." <u>Hudson v. McMillian</u>, 503 U.S. 1, 9,

---

[12] Since Reid has not opposed the County defendants' motion, nor sought leave to amend his complaint, his claims against the Superintendent are dismissed with prejudice.

25

112 S. Ct. 995, 117 L. Ed. 2d 156 (1992) (quotations and citation omitted); see also Sims v Artuz, 230 F.3d 14, 21 (2d Cir. 2000) (accord). As noted above, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates * * *." Farmer, 511 U.S. at 832-33, 114 S. Ct. 1970 (quotations and citations omitted); see also Walker, 717 F.3d at 125 ("To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health. * * * Thus, prison officials violate the Constitution when they deprive an inmate of his basic human needs such as food, clothing, medical care, and safe and sanitary living conditions." (quotations and citations omitted)); Jabbar, 683 F.3d at 57 ("[P]risoners may not be deprived of their basic human needs–e.g., food, clothing, shelter, medical care, and reasonable safety– and they may not be exposed to conditions that pose an unreasonable risk of serious damage to their future health." (quotations and citations omitted)).

"Moreover, conditions of confinement may be aggregated to rise to the level of a constitutional violation, but 'only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise.'" Walker, 717 F.3d at 125 (quoting Wilson v. Seiter, 501 U.S. 294, 304, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)). "Nothing so amorphous as 'overall conditions' can rise to the level of [a constitutional violation] when no specific deprivation of a single human need exists." Wilson, 501 U.S. at 305, 111 S. Ct. 2321.

The County defendants contend, *inter alia*: (1) that the consolidated plaintiffs allege "nothing more than incidents that are insufficiently continuous or chronic to withstand [their]

motion to dismiss[,]" (County Mem. I at 21); (2) that "[w]hile the Second Circuit has been mum on the matter of heating at the Circuit's prisons, considerable authority from sister circuits helps demonstrate that Consolidated Plaintiffs' allegations here are meritless," (id. at 24); and (3) that the consolidated plaintiffs cannot satisfy their burden of showing "that the conditions were objectively serious as to deny the minimal civilized measure of life's necessities." (Id.; see also County Mem. II at 12 ["Plaintiffs here are denied of none of" the basic human needs, including shelter, food and plumbing]).[13]  In addition, the County defendants cite to cases in which courts have dismissed prisoners' Eighth or Fourteenth Amendment claims based upon their *de minimis* injuries, such as a skin rash.

The complaints and amended complaint at issue on the County defendants' motions plausibly allege that the conditions of confinement at the NCCC deprived the consolidated plaintiffs "of the minimal civilized measure of life's necessities and subjected [them] to unreasonable health and safety risks." Walker, 717 F.3d at 126.  In Walker, the Second Circuit found that the plaintiff had plausibly alleged a violation of his constitutional rights based upon his allegations, *inter alia*,

> "that for approximately twenty-eight months, he was confined in a
> cell with five other men, with inadequate space and ventilation,
> stifling heat in the summer and freezing cold in the winter,
> unsanitary conditions, including urine and feces splattered on the
> floor, [and] insufficient cleaning supplies * * *."

717 F.3d at 126; see also Grullon, 720 F.3d at 142 ("[A]llegations of deliberate indifference to

---

[13]  According to the County defendants, the consolidated plaintiffs "still have access to plumbing for their urinary and fecal needs, they are sheltered from the weather in their cells, and they are not being 'tortured' by their conditions.  Indeed, the vermin infestation is undesirable, but these uncomfortable prison conditions are 'part of the penalty that [they] * * * pay for their offenses against society.'" (County Mem. II at 12-13) (quoting McMillian, 503 U.S. at 9, 112 S. Ct. 995).

serious threats to the well-being or safety of a person in custody, such as unhealthy extremes in temperature * * * or unhealthy air conditions in * * * cell[s] * * * have been held sufficient to withstand a motion to dismiss for failure to state a claim on which relief can be granted."); Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001) (holding that a constitutional violation "may be established by proof that the inmate was subjected for a prolonged period to bitter cold" and that "prison officials knowingly * * * allow[ed] an area to remain filled with sewage and excrement for days on end."); Mitchell v. Keane, 175 F.3d 1008, 1999 WL 159896, at * 2 (2d Cir. Mar. 17, 1999) (summary order) (finding that an allegation that "sewage [was] dripping through the ceiling * * * might qualify as a deprivation of 'the minimal civilized measure of life's necessities'- that is, a 'sufficiently serious' deprivation to satisfy the 'objective component' of an Eighth Amendment challenge to conditions of confinement.") In addition, the Second Circuit and district courts in this Circuit have held that, within the prison context, the following allegations, *inter alia*, may all may rise to the level of a constitutional violation: (1) a "failure to provide prisoners with toiletries and other hygienic materials[,]" Walker, 717 F.3d at 127; Solomon v. Nassau County, 759 F. Supp. 2d 251, 258 (E.D.N.Y. 2011); (2) "rodent infestation," Gaston, 249 F.3d at 166; Solomon, 759 F. Supp. 2d at 258; (3) continuous or "chronic exposure to human waste," Florio v. Canty, 954 F. Supp. 2d 227, 234, 235 (S.D.N.Y. 2013); Solomon, 759 F. Supp. 2d at 258; and (4) "unwilling exposure to an unreasonably high concentration of air-borne asbestos particles," i.e., friable asbestos, Pack v. Artuz, 348 F. Supp. 2d 63, 79 (S.D.N.Y. 2004); see also LaBounty v. Coughlin, 137 F.3d 68, 72 (2d Cir. 1998); Pratt v. City of New York. 929 F. Supp. 2d 314, 320 (S.D.N.Y. 2013); Jackson v. Goord, 664 F. Supp. 2d 307, 320

28

(S.D.N.Y. 2009).[14] "However, conditions that are temporary or occasional * * * have been found

not to constitute a sufficiently serious deprivation to sustain a Section 1983 deliberate

---

[14] The Court was unable to find any case in this Circuit involving a conditions of confinement claim based upon exposure to black mold. District courts in other circuits have held that allegations of exposure to black mold may, in certain circumstances, satisfy the objective element of an Eighth Amendment claim provided that the plaintiff alleges that he or she suffered, or is at a substantial risk of suffering from, an injury or health problem as a result of such exposure. See, e.g. Maxie v. Levenhagen, No. 3:13-cv-1280, 2014 WL 3828292, at * 1 (N.D. Ind. Aug. 4, 2014) (holding that allegations that the plaintiff was exposed to, inter alia, "excessive amounts of 'black mold, mildew, and asbestos,'" which caused him "breathing difficulties," were sufficient to withstand dismissal); Reynolds v. Herrington, No. 4:13-cv-P132-M, 2014 WL 1330190, at * 5 (W.D. Ky. Apr. 1, 2014) (dismissing Eighth Amendment claim based upon the plaintiff's exposure to "black mold" because the plaintiff did not allege any injury suffered as a result of his exposure to the mold or that he was "housed in the area where the mold is located[,] nor present any basis for his belief that the mold is a harmful type of mold[,] * * * stat[ing] only that the mold was black"); Dartz v. Vienna Correctional Center, No. 13-cv-00889-JPG, 2013 WL 5435806, at * 1 (S.D. Ill. Sept. 30, 2013) (holding that allegations, inter alia, that the plaintiff is being exposed to asbestos and mold, and that water drips from the ceiling and there is black mold, "are actionable Eighth Amendment claims"); Lyons v. Wickersham, No. 2:12-cv-14353, 2012 WL 6591581, at * 4 (E.D. Mich. Dec. 18, 2012) (holding that although, "[u]nder certain circumstances, exposure to black mold may be sufficiently serious to satisfy the objective component of the Eighth Amendment[,]" where the plaintiff "does not allege that the presence of mold has caused him any health problems or that he is presently at any substantial risk to his health[,] * * * [his] conclusory allegations about the presence of mold do not demonstrate the existence of a sufficiently serious risk to prisoner health."); Walton v. Topps, No. Civ.A. 12-0931, 2012 WL 3947629, at * 7 (E.D. La. July 23, 2012), report and recommendation adopted by 2012 WL 3947976 (Sept. 10, 2012) (dismissing Eighth Amendment claims alleging "[c]ommon sanitation problems," such as insects, dust and mold in the prison, because the plaintiff did not allege, inter alia, that he "suffered any injury, other than inconvenience, as a result of the conditions of the jail."); Dillingham v. Schofield, No. 2:11-cv-07, 2011 WL 3664470, at * 8 (E.D. Tenn. Aug. 19, 2011) (holding that claims of, inter alia, black mold "may arguably state a claim for relief"); Perryman v. Graves, No. 3:10-mc-00109, 2010 WL 4237921, at * 3 (M.D. Tenn. Oct. 20, 2010) (dismissing Eighth Amendment conditions of confinement claim based upon presence of black mold in the jail because the plaintiff did not allege "that his exposure to black mold has caused him to suffer any physical harm or will cause him to suffer harm in the future"); Cameron v. Howes, No. 1:10-cv-539, 2010 WL 3885271, at * 8 (W.D. Mich. Sept. 28, 2010) (holding that the plaintiffs' allegations of the presence of mold in the showers did not demonstrate the existence of a sufficiently serious risk to prisoner health because the plaintiffs did not "suggest that the mold is airborne[,] * * * that the presence of mold causes them health problems or that they are presently at any substantial risk to their health").

indifference claim." <u>Solomon</u>, 759 F. Supp. 2d at 258 (citing cases); <u>see also</u> <u>Florio</u>, 954 F. Supp. 2d at 234.

Moreover, while the failure to issue an inmate a blanket, itself, may not constitute a constitutional deprivation, the failure to issue a blanket combined with a low cell temperature may rise to the level of a constitutional violation. <u>See, e.g.</u> <u>Wilson</u>, 501 U.S. at 305, 111 S. Ct. 2321 ("*Some* conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise– for example, a low cell temperature at night combined with a failure to issue blankets." (emphasis in original)). Similarly, while the denial of cleaning supplies, itself, may not constitute a constitutional deprivation, <u>see, e.g.</u> <u>Dolberry v. Levine</u>, 567 F. Supp. 2d 413, 417 (W.D.N.Y. 2008) (holding that the plaintiff's allegation, *inter alia*, that prison officials denied him cleaning supplies for several weeks did not give rise to a constitutional violation); <u>Davidson v. Murray</u>, 371 F. Supp. 2d 361, 371 (W.D.N.Y. 2005) (holding that "occasional or temporary deprivations of personal hygiene items," such as toothpaste, soap, toilet tissue and "cell cleaning items," did not rise to the level of a constitutional violation), when combined with chronic or prolonged unsanitary conditions, such as the presence of bodily waste on the walls, floors and/or ceilings of the cells, the denial of adequate cleaning supplies may rise to the level of a constitutional deprivation. <u>See, e.g.</u> <u>Walker</u>, 717 F.3d at 127 ("Availability of hygienic materials is particularly important in the context of otherwise unsanitary living conditions.")

With respect to food, the Constitution "require[s] that prisoners be served nutritionally adequate food that is prepared and served under conditions which do not present an immediate

danger to the health and well being of the inmates who consume it." Robles v. Coughlin, 725

F.2d 12, 15 (2d Cir. 1983) (quotations and citation omitted); see also Phelps v. Kapnolas, 308

F.3d 180, 186 (2d Cir. 2002). Allegations that a prisoner was served food contaminated or

"tainted" by foreign objects, e.g., rocks, glass, human waste, soap, metal pins, staples, etc., are

sufficient to plead a constitutional violation, see, e.g. Robles, 725 F.2d at 16; Varricchio, 702 F.

Supp. 2d at 56, as are allegations that prison officials deprived a prisoner of a nutritionally

adequate diet for a prolonged period of time.[15] See Phelps, 308 F.3d at 186.

The consolidated plaintiffs make much of the same allegations about the ventilation,

temperature, unsanitary conditions and insufficient cleaning supplies available to them at the

NCCC as the plaintiff alleged in Walker, which the Second Circuit found sufficient to state a

plausible claim for a deprivation of his constitutional rights, and also allege, *inter alia*, that their

cells and/or housing units are infested with insects and rodents, that they are exposed to asbestos,

black mold and human waste on a chronic basis, and/or that they are served food contaminated

by feces and other foreign objects or below the nationally recommended dietary allowance. In

addition, Jovany alleges that the "County Cooks" have "intentionally served [him] 'meats' inside

---

[15] The County defendants' contention that the consolidated plaintiffs' allegations that "they are only being served '400 calories each day' * * * are insufficient to state a claim under § 1983 * * * [because] they have * * * alternative sources of food, such as the Commissary," (County Mem. II at 15), is without merit. The Constitution "require[s] that prisoners *be served* nutritionally adequate food," Robles, 725 F.2d at 15 (emphasis added), which is not satisfied by serving them meals purportedly accounting for approximately one-fifth (1/5) of their recommended daily caloric allowance and requiring them to expend their own money in the commissary to obtain the rest. Indeed, the County defendants do not cite to even one (1) case in support of their contention.

of his meals" in violation of his religious beliefs[16]. Accordingly, the allegations in the complaints and amended complaint at issue on this motion are sufficient to satisfy the objective element of a Section 1983 conditions of confinement claim, i.e., to state a plausible claim that the consolidated plaintiffs were denied "the minimal civilized measure of life's necessities," Farmer, 511 U.S. 832, 114 S. Ct. 1970, in violation of their Eighth and/or Fourteenth Amendment rights.

Moreover, the nature or extent of the consolidated plaintiffs' injuries does not warrant dismissal of their claims, particularly since they seek, inter alia, injunctive relief to prevent a substantial risk of serious injury from ripening into actual harm by correcting the challenged conditions at the NCCC. "[O]ne does not have to await the consummation of threatened injury to obtain preventative relief." Farmer, 511 U.S. at 845, 114 S. Ct. 1970 (quotations and citation omitted). Prisoners alleging due process violations, or violations of other substantive constitutional rights, may obtain, inter alia, injunctive or declaratory relief, nominal damages, punitive damages and/or compensatory damages for actual injury, notwithstanding the extent, or even lack, of any injury alleged. See, e.g. Carey v. Piphus, 435 U.S. 247, 266, 98 S. Ct. 1042, 55

---

[16] "[C]ourts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights [under the First Amendment]." McEachin v. McGuinnis, 357 F.3d 197, 203 (2d Cir. 2004); see also Holland v. Goord, — F.3d —, 2014 WL 3360615, at * 5 (2d Cir. July 10, 2014) ("[I]nmates have a 'clearly established' right to a diet consistent with their religious scruples." (quotations and citations omitted)). The case cited by the County defendants in their second memorandum of law, Kole v. Lappin, 551 F. Supp. 2d 149 (D. Conn. 2008), for the proposition that Jovany was not prevented from exercising his religious beliefs because he was provided an alternative meal, i.e., lettuce and tuna, whenever he suspected that his meal had been tainted with meat, is distinguishable. In Kole, the plaintiff claimed that the defendants reduced the number of "kosher-for-Passover" foods available for purchase at the commissary by inmates wanting to supplement the daily "kosher-for-Passover" meals provided by the defendants in accordance with the plaintiff's religious dietary restrictions. Id. at 154. Unlike this case, there was no claim in Kole that the defendants intentionally interfered with a meal provided by the prison so as to contravene the plaintiff's religious beliefs.

32

L. Ed. 2d 252 (1978) ("[T]he denial of procedural due process should be actionable for nominal damages without proof of actual injury."); Thompson v. Carter, 284 F.3d 411, 418 (2d Cir. 2002) (holding that the limitation of recovery for mental and emotional injury in the absence of physical injury prescribed by 42 U.S.C. § 1997e(e) does not prevent prisoners from obtaining injunctive or declaratory relief, nominal damages, punitive damages or compensatory damages for actual injuries); Amato v. City of Saratoga Springs, N.Y, 170 F.3d 311, 317 (2d Cir. 1999) ("While the main purpose of a § 1983 damages award is to compensate individuals for injuries caused by the deprivation of constitutional rights, a litigant is entitled to an award of nominal damages upon proof of a violation of a substantive constitutional right even in the absence of actual compensable injury."); Gibeau v. Nellis, 18 F.3d 107, 110 (2d Cir. 1994) ("In an action brought pursuant to Section 1983, 'even when a litigant fails to prove actual compensable injury, he is entitled to an award of nominal damages upon proof of violation of a substantive constitutional right.'" (quoting Smith v. Coughlin, 748 F.2d 783, 789 (2d Cir. 1984))). "'[B]y making the deprivation of such ['absolute'] rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed.'" Amato, 170 F.3d at 317 (quoting Carey, 435 U.S. at 266, 98 S. Ct. 1042) (second brackets in original).

Furthermore, "if [a prisoner] can establish that the levels of alleged exposure to toxic substances at [prison] posed a significant risk of serious harm, then he will have proven a[] [constitutional] violation and be entitled at least to nominal damages." Jackson, 664 F. Supp. 2d at 317.

The cases cited by the County defendants wherein the courts dismissed prisoners' Section

33

1983 claims based upon *de minimis* injuries are inapposite insofar as they involved either: (1)

deliberate indifference claims based upon a deprivation of adequate medical care which require,

*inter alia*, proof that the "defendant was deliberately indifferent to *a serious medical need*,"

Sledge v. Kooi, 564 F.3d 105, 108 (2d Cir. 2009) (emphasis added); or (2) claims seeking

damages for mental duress or emotional suffering, for which recovery is limited absent "a prior

showing of physical injury" by 42 U.S.C. § 1997e(e). See, e.g. Purdie v. City of N.Y., 10 Civ.

5802, 2011 WL 1044133, at * 3 (S.D.N.Y. Mar. 15, 2011) (deliberate indifference to medical

needs claim); Thompson v. Carlsen, No. 08-CV-0965, 2010 WL 3584409, at * 14 (N.D.N.Y.

Aug. 16, 2010), report and recommendation adopted by 2010 WL 3584396 (N.D.N.Y. Sept. 7,

2010) (Section 1997e(e)); Dolberry, 567 F. Supp. 2d at 417-18 (Section 1997e(e); Swindell v.

Supple, 02 Civ. 3182, 2005 WL 267725, at * 7 (S.D.N.Y. Feb. 3, 2005) (deliberate indifference

to medical needs claim); Troy v. Kuhlmann, 96 Civ. 7190, 1999 WL 825622, at * 13 (S.D.N.Y.

Apr. 15, 1999) (deliberate indifference to medical needs claim). Although a serious injury or

medical need is an element of a deliberate indifference claim based upon a deprivation of

adequate medical care, the same is not true of a deliberate indifference claim based upon

inhumane or unhealthy conditions of confinement. Moreover, although Section 1997e(e)

prevents a prisoner from "recover[ing] damages for mental or emotional injury for a

constitutional violation in the absence of a showing of actual physical injury," Thompson, 284

F.3d at 417, it "does not prevent a prisoner from obtaining injunctive or declaratory relief[,] * * *

nominal damages[,] * * * punitive damages[,] * * * [or] compensatory damages * * * provided he

can establish actual injury." Id. at 418. Accordingly, the allegations in the complaints and

amended complaint are sufficient at the pleadings stage to satisfy the objective element of a

34

deliberate indifference claim based upon the conditions of confinement at the NCCC.

### b. Subjective Element

"[D]eliberate indifference describes a state of mind more blameworthy than negligence * * * [but] less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 835, 114 S. Ct. 1970. "[A] prison official cannot be found liable under the Eighth Amendment [or Due Process Clause of the Fourteenth Amendment] * * * unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837, 114 S. Ct. 1970. A prisoner "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 842, 114 S. Ct. 1970.

"To establish a due process violation of the Fourteenth Amendment, an inmate must show that a government official made a deliberate decision to deprive him of his life, liberty, or property. * * * Merely negligent conduct does not give rise to claims under the Fourteenth Amendment." Jabbar, 683 F.3d at 57; see also Walker, 717 F.3d at 125 ("To meet the subjective element, the plaintiff must show that the defendant acted with 'more than mere negligence.'" (quoting Farmer, 511 U.S. at 835, 114 S. Ct. 1970)). "A prison official may be found to have had a sufficiently culpable state of mind if he participated directly in the alleged event, or learned of the inmate's complaint and failed to remedy it, or created or permitted a policy that harmed the inmate, or acted with gross negligence in managing subordinates." Gaston, 249 F.3d at 164. In

35

addition, "[e]vidence that a risk was 'obvious or otherwise must have been known to a defendant' may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk." Walker, 717 F.3d at 125 (quoting Brock v. Wright, 315 F.3d 158, 164 (2d Cir. 2003)); see also Farmer, 511 U.S. at 842, 114 S. Ct. 1970 ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.")

Nonetheless, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer, 511 U.S. at 844, 114 S. Ct. 1970. In sum, "a prison official may be held liable * * * for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847, 114 S. Ct. 1970.

In their first memorandum of law, the County defendants address the subjective element of a deliberate indifference claim in just the following three (3) conclusory sentences: (1) "Even if [the consolidated plaintiffs] were able to satisfy [the objective] burden, they cannot demonstrate that prison officials had the sufficiently culpable state of mind so as to be 'deliberately indifferent' to his [sic] discomfort[;]" (2) "While Consolidated Plaintiffs make no mention of any officials in the Consolidated Complaint [sic], so long as an official acted reasonably, he cannot be found liable under the Cruel and Unusual Punishments Clause [;]" and (3) "Thus, Consolidated Plaintiffs, too, fails [sic] the second prong of his [sic] Eighth Amendment claim regarding the temperatures in the cell." (County Mem. I at 24-25).

In their second memorandum of law, the County defendants make a similar assertion to the first one in their first memorandum of law and contend that the consolidated plaintiffs

36

"allege that [they] were 'deliberately indifferent' but proffer no proof as to how [they] acted. In fact, Plaintiffs mention that [they] provided Plaintiffs with Corcraft soap, exhibiting not deliberate indifference but care that the Plaintiffs maintain a level of cleanliness and sanitation. * * * Without further proof of any sort of deliberate indifference, the Plaintiffs allegations are 'naked assertions' devoid of 'further factual enhancement[,]' Twombly, 550 U.S. at 557[,] * * * [which] cannot survive this motion; similarly, their § 1983 claim about the conditions at NCCC is deficient."

(County Mem. II at 13). With respect to the food issues, the County defendants contend that "[w]ith a higher burden than mere negligence, 'deliberate indifference' is difficult for the Plaintiffs here to prove[;]" that "Plaintiffs do not allege that [they] had any knowledge of the alleged food issues at NCCC; without knowledge, the County Defendants certainly cannot be held to have been 'deliberately indifferent[;]'" and that "[t]hus, Plaintiffs' food grievances are legally deficient." (County Mem. II at 15-16). With respect to cell temperature issues, the County defendants contend, *inter alia*, that since the consolidated plaintiffs "are provided layers of clothing, socks, and a towel (and presumably the jail-issued bedding) with which to keep warm * * * [and] [t]here is no mention of prison officials denying Plaintiffs extra bedding or in any way exhibiting 'deliberate indifference' to Plaintiffs' alleged plight," (County Mem. II at 17)[17], the amended complaint fails to satisfy the subjective element of a Section 1983 conditions of confinement claim.

The allegations in the complaints and/or amended complaint, *inter alia*, that the consolidated plaintiffs, other inmates at the NCCC and State officials filed numerous grievances and/or made complaints about the challenged conditions at the NCCC are sufficient at the

---

[17] In fact, Cazares alleges that his request for an extra blanket was denied.

pleadings stage to satisfy the subjective element of a deliberate indifference claim, i.e., to show that the County defendants knew that the challenged conditions, which posed a substantial risk of serious harm to those exposed to them, existed at the NCCC and failed to take any reasonable measures to abate or remedy those conditions. Contrary to the County defendants' contention, the consolidated plaintiffs need not proffer any "proof" at the pleadings stage in order to avoid dismissal of their complaints and amended complaint. In addition, some of the conditions alleged, e.g., rodent and insect infestation, human excrement on the floors and walls, black mold, etc., and the risks that those conditions pose to those frequently exposed to them, are arguably obvious.

Moreover, the issue of whether it was reasonable to provide the consolidated plaintiffs with only Corcraft soap in light of the purported unsanitary conditions existing at the NCCC, or with only "clothing, socks, and a towel" in light of the "extrem[e]ly cold" temperatures in the cells during the winter months, is properly determined by the finders of fact, not on a motion to dismiss on the pleadings. In addition, the consolidated plaintiffs' allegations that some of the conduct of which they complain was intentional, e.g., the contamination of Jovany's vegetarian meals by the "County Cooks," clearly satisfy the subjective element. Accordingly, the branches of the County defendants' motions seeking dismissal of the consolidated plaintiffs' Section 1983 conditions of confinement claims are denied.[18]

---

[18] In light of this determination, the County defendants' contentions seeking dismissal of the consolidated plaintiffs' state law claims for lack of jurisdiction, and of Jovany's, A. Torres's and G. Torres's claim for violations of the Due Process Clause of the New York State Constitution, are denied.

5.    Deprivation of Adequate Medical Care Claims

Delosrios and Jackson do not claim a denial or delay of adequate medical treatment.  Reid

contends, *inter alia*, that the medical treatment he received for a rash on the bottom of his foot

was "improper" because the rash is still there.  Cazares contends, *inter alia*, that medical

treatment for his complaints of an infection on his arms and back, severe headaches, dizzy spells

and stomachache and pains was delayed for two (2) weeks.  The amended complaint alleges,

*inter alia*: (1) that Armor (a) ignored (i) signs of mental illness in A. Torres and (ii) G. Torres's

complaints of knee and shoulder pain, and (b) failed to investigate and treat Jovany's head

infection and; (2) that A. Torres did not receive her prescribed medication for months.  Attached

to the amended complaint are, *inter alia*: (1) a sick call request by Jovany, dated February 3,

2012, indicating, "I have a bleeding rash on my neck [and] head! [I]t has been four months since

I have reported this.  I have been seen by Med, Doc prescribed several different medications

(None) have made an improvement in my condition.  I also need to address my dietary issues.

Thank you[,]" (Amend. Compl., Ex. 1); (2) a grievance form completed by Jovany, dated March

11, 2012, indicating, *inter alia*, (a) "I have serious condition[.] I have bumps on back on [sic] my

head[.] I've been writing grievances for the last 5 months[.] Now I have a large bump in different

area of my head. [B]umps are not leaving with medication given to me[,]" (Amend. Compl., Ex.

2), (b) "I would like to be taken to outside hospital or doctor concerning this serious matter[,]"

(id.), (c) that the grievance was accepted on March 21, 2012, and (d) that "the healthcare provider

informed [the grievance coordinator] lab work was performed and the provider is waiting for the

results before adjusting the grievant's [illegible][,]" (id.); and (3) a sick call request by G. Torres,

dated January 7, 2013, indicating, "[m]y knee keeps hurting[.] Please help me.  My back been

hurting me too and my left shoulder. I never got a copy of my blood test results[.] I need one[,]"
(Amend. Compl., Ex. 5).

Claims for deliberate indifference to serious medical needs have both an objective and
subjective component. See Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011); Johnson v.
Wright, 412 F.3d 398, 403 (2d Cir. 2005); The objective component of a deliberate indifference
to serious medical needs claim requires that "the alleged deprivation * * * be sufficiently serious,
in the sense that a condition of urgency, one that may produce death, degeneration, or extreme
pain, exists." Hill, 657 F.3d at 122 (quoting Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir.
1996)); see also Farmer, 511 U.S. at 834, 114 S. Ct. 1970 ("First, the deprivation alleged must
be, objectively, sufficiently serious." (quotations and citation omitted)); Johnson, 412 F.3d at
403. In order to determine whether an alleged deprivation of medical care was objectively
serious, the court must inquire (1) whether the inmate was "actually deprived of adequate
medical care," i.e., whether the prison officials acted reasonably in response to the inmate's
medical needs; and (2) "whether the inadequacy in medical care [was] sufficiently serious," i.e.,
how the challenged conduct was inadequate and what harm, if any, the inadequacy has caused or
will likely cause the inmate. Salahuddin v. Goord, 467 F.3d 263, 279-80 (2d Cir. 2006); see also
Thompson v. Racette, 519 F. App'x 32, 33-34 (2d Cir. June 4, 2013) (summary order); Bellotto
v. County of Orange, 248 F. App'x 232, 236 (2d Cir. Sept. 26, 2007) (summary order).


a.      Objective Element

"When a prisoner alleges denial of adequate medical care, [courts] evaluate the
seriousness of the prisoner's underlying medical condition." Bellotto, 248 Fed. Appx. at 236; see

also Salahuddin, 467 F.3d at 280. However, "[w]hen the basis for a prisoner's [deliberate indifference] claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious to support a[] [deliberate indifference] claim." Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003) (emphasis, quotations and citations omitted); see also Bellotto, 248 Fed. Appx. at 236 ("When a prisoner alleges a temporary delay or interruption in the provision of otherwise adequate medical treatment, [courts] focus on the seriousness of the particular risk of harm that resulted from the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." (quotations and citation omitted)). "[I]t's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant * * *." Smith, 316 F.3d at 186; see also Salahuddin, 467 F.3d at 280. In evaluating the objective component of a deliberate indifference claim based upon a delay or interruption in treatment, courts must "focus[] on the particular risks attributable to the missed * * * medication [or other delay or interruption in treatment], rather than on [the plaintiff's underlying medical condition alone] * * *." Smith, 316 F.3d at 187. Where the "risk of harm" the plaintiff faced as a result of missed medication, or other delay in treatment, is "not substantial," there is no constitutional violation. Bellotto, 248 Fed. Appx. at 237.

Reid and Jovany fail to state a plausible claim for deliberate indifference to a serious medical need because a persistent skin rash or infection does not constitute a "sufficiently

serious" medical need.[19] See, e.g. Lewal v. Wiley, 29 F. App'x 26, 29 (2d Cir. Jan. 4, 2002) (summary order) (affirming dismissal of a deliberate indifference to serious medical needs claim based upon allegations that the defendants refused to treat the plaintiff for a slightly low red blood cell count and a persistent rash on the ground that the plaintiff had not alleged, *inter alia*, the existence of a serious medical condition); Purdie, 2011 WL 1044133, at * 3 ("A skin rash is generally insufficient to meet the objective requirement of a sufficiently grave and serious condition giving rise to a deliberate indifference [to serious medical needs] claim."); Gillard v. Rovelli, No. 9:09-cv-0860, 2010 WL 4905240, at * 11 (N.D.N.Y. Sept. 29, 2010), report and recommendation adopted by 2010 WL 4945770 (N.D.N.Y. Nov. 24, 2010) (holding that complaints of a facial rash, elbow pain for five years, back and spine pain and left ankle pain did not plausibly suggest the existence of a serious medical condition); Gonzalez v. Wright, No. 9:06-cv-1424, 2010 WL 681323, at * 11 (N.D.N.Y. Feb. 23, 2010) (holding that a rash or infection on various parts of the body is not sufficiently serious to state a claim for deliberate indifference to serious medical needs).

Likewise, it cannot reasonably be inferred from the allegations in Cazares's complaint that the risk of harm he faced as a result of the purported two (2)-week delay in providing him medical treatment for his complaints of an unidentified infection, headaches, dizzy spells and stomachache and pains was substantial. Accordingly, the branches of the County defendants' motions seeking dismissal of the consolidated plaintiffs' Section 1983 deliberate indifference to

---

[19] In any event the allegations in Reid's complaint and Jovany's amended complaint and attached exhibits state, at most, a claim for negligence, not deliberate indifference, in treating Reid's foot rash and Jovany's head rash or infection. See, e.g. Lewal, 29 F. App'x at 29; Gonzalez, 2010 WL 681323, at * 11.

medical needs claims is granted to the extent that Reid's, Cazares's and Jovany's Section 1983 deliberate indifference to medical needs claims are dismissed in their entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief.[20] Likewise, the branch of Armor's motion seeking dismissal of Jovany's Section 1983 deliberate indifference to medical needs claim against it is granted and Jovany's Section 1983 deliberate indifference to medical needs claim is dismissed in its entirety with prejudice as against Armor pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief.[21]

However, although A. Torres does not identify the mental disorder from which she allegedly suffers, the allegations in the amended complaint that she was receiving medication for a mental health condition is sufficient, at the pleadings stage, to satisfy the objective element of a Section 1983 deliberate indifference to serious medical needs claim. See, e.g. Taylor v. Lawrence, No. 9:05-cv-1316, 2008 WL 2357066, at * 6 (N.D.N.Y. June 4, 2008) ("[B]ecause [the plaintiff] was receiving medication for a mental health condition, he has presumptively alleged facts sufficient to provide relief as to whether he suffered a serious medical need.") In addition, for purposes of this motion only, it is assumed, *arguendo*, that G. Torres's complaints of knee swelling and pain and shoulder pain are sufficient to satisfy the objective element of a deliberate indifference to medical needs claim. Compare Johnson v. Wright, 477 F. Supp. 2d 572, 575-76 (W.D.N.Y. 2007) (finding that a torn meniscus was not sufficiently serious to give

---

[20] Since Reid, Cazares and Jovany have not opposed the County defendants' motion to dismiss, or sought leave to amend their complaints, the dismissal of their Section 1983 deliberate indifference to medical needs claims is with prejudice.

[21] Since Jovany has not opposed Armor's motion to dismiss, or sought leave to amend the amended complaint, the dismissal of his Section 1983 deliberate indifference to medical needs claim against Armor is with prejudice.

rise to a constitutional claim), aff'd, 324 F. App'x 144 (2d Cir. May 21, 2009), and Henderson v. Sommer, Nos. 08 Civ. 3440, 09 Civ. 611, 2011 WL 1346818, at * 3 (S.D.N.Y. Apr. 1, 2011) (finding that knee injuries, e.g., meniscal damage, are insufficient to support a deliberate indifference to serious medical needs claim), with Rosario v. Anson, No. 9:12-cv-1506, 2013 WL 5236568, at * 9 (N.D.N.Y. Sept. 17, 2013) (finding that allegations of repeated complaints about chronic swelling, pain and discomfort in the knee were sufficient to satisfy the objective element of a deliberate indifference to serious medical needs claim).

### b. Subjective Element

Subjectively, the official must have acted "with a sufficiently culpable state of mind, * * * [i.e.,] with deliberate indifference to inmate health." Nielsen, 746 F.3d at 63 (quotations and citation omitted); see also Farmer, 511 U.S. at 834, 114 S. Ct. 1970 (holding that the second requirement for a deliberate indifference claim is that a prison official must have acted or failed to act with a "sufficiently culpable state of mind."); Wilson, 501 U.S. at 299, 111 S. Ct. 2321 (holding that a deliberate indifference claim "mandate[s] inquiry into a prison official's state of mind"). The official must have "act[ed] or fail[ed] to act while actually aware of a substantial risk that serious inmate harm will result." Salahuddin, 467 F.3d at 280; see also Farmer, 511 U.S. at 842, 114 S. Ct. 1970; Caiozzo, 581 F.3d at 72 (holding that the plaintiff must establish that the official "knew of and disregarded an excessive risk to [the plaintiff's] health or safety and * * * was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference." (alterations and quotations omitted)). "Deliberate indifference is a mental state equivalent to subjective recklessness[,]" Nielsen, 746

F.3d at 63 (quotations and citation omitted), and "describes a state of mind more blameworthy than negligence." Farmer, 511 U.S. at 835, 114 S. Ct. 1970; see also Jabbar, 683 F.3d at 57.

Generally, "mere allegations of negligent malpractice do not state a claim of deliberate indifference." Hathaway, 99 F.3d at 553; see also Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L. Ed. 2d 251 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim * * * under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); Hill, 657 F.3d at 123 ("Medical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness– an act or a failure to act by a prison doctor that evinces a conscious disregard of a substantial risk of serious harm." (quotations and citation omitted)); Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003) ("'Deliberate indifference' describes a mental state more blameworthy than negligence * * * [and] is a state of mind that is the equivalent of criminal recklessness. * * * A showing of medical malpractice is therefore insufficient to support an Eighth Amendment claim unless the malpractice involves culpable recklessness, i.e., an act or a failure to act * * * that evinces a conscious disregard of a substantial risk of serious harm." (internal quotations and citations omitted)).

Moreover, "a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment." Hill, 657 F.3d at 123; see also Hanrahan v. Mennon, 470 F. App'x 32, 33 (2d Cir. May 18, 2012) (summary order). "[M]ere disagreement over the proper treatment does not create a constitutional claim." Hill, 657 F.3d at 123 (quoting Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998)); see also Fuller v. Lantz, 549 F. App'x 18, 21 (2d

Cir. Dec. 19, 2013) (summary order). "[T]he essential test is one of medical necessity and not one simply of desirability." Hill, 657 F.3d at 123 (quoting Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986)).

The amended complaint is bereft of any factual allegations from which it may reasonably be inferred that any of the County defendants, or any employee or agent of Armor, acted or failed to act with knowledge that a substantial risk of serious harm would result: (a) to A. Torres by allegedly denying her treatment for her mental disorder or failing to dispense her prescribed medication, or (b) to G. Torres by allegedly failing to treat his complaints of knee and shoulder pain. Accordingly, the branches of the County defendants' motion and Armor's motion seeking dismissal of A. Torres's and G. Torres's Section 1983 deliberate indifference to serious medical needs claims are granted and A. Torres's and G. Torres's Section 1983 deliberate indifference to serious medical needs claims are dismissed in their entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief.[22]

6.      Cazares's Excessive Force Claim

The County defendants contend, *inter alia*, that Cazares's excessive force claim, i.e., that an unidentified correction officer intentionally "bang[ed] the cell door on [his] foot," fracturing it, must be dismissed because it cannot be reasonably inferred from his complaint that the correction officer acted willfully or wantonly to inflict pain upon him.

---

[22] In light of this determination, it is unnecessary to consider Armor's remaining contentions. Moreover, since neither A. Torres nor G. Torres has opposed Armor's motion to dismiss, nor sought leave to amend the amended complaint, the dismissal of their Section 1983 deliberate indifference to medical needs claims against Armor is with prejudice.

"Although not every malevolent touch by a prison guard gives rise to a federal cause of action, * * * inmates have the right to be free from the unnecessary and wanton infliction of pain at the hands of prison officials * * *." Hogan v. Fischer, 738 F.3d 509, 515 (2d Cir. 2013) (quotations and citations omitted). "To establish a claim under the Eighth [or Fourteenth] Amendment for excessive force, a plaintiff must satisfy both an objective and subjective element." Chambliss v. Rosini, 808 F. Supp. 2d 658, 667 (S.D.N.Y. 2011)[23]; see also Wright v. Goord, 554 F.3d 255, 268 (2d Cir. 2009) ("A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components—one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect.")

"The subjective component of the claim requires a showing that the defendant had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the challenged conduct." Wright, 554 F.3d at 268 (quotations and citation omitted). The "core judicial inquiry" for a claim alleging that a prison officer used excessive force upon a prisoner in violation of the Eighth Amendment, is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Wilkins v. Gaddy, 559 U.S. 34, 37, 130 S. Ct. 1175, 175 L. Ed. 2d 995 (2010) (quoting Hudson, 503 U.S. at 7, 112 S. Ct. 995. "Where 'no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the abuse itself may . . . be sufficient evidence of a culpable state of mind.'" Hogan, 738 F.3d at 516 (quoting Boddie v.

[23] "A court considers a [Fourteenth Amendment] claim of excessive force by a pretrial detainee under the same standards that govern a claim, under the Eighth Amendment, to be free from cruel and unusual punishment." Chambliss, 808 F. Supp. 2d at 667.

Schneider, 105 F.3d 857, 861 (2d Cir. 1997)).

To satisfy the objective prong of an Eighth Amendment excessive force claim, "an inmate must establish that the conduct alleged is 'sufficiently serious' to reach constitutional dimensions." Hogan, 738 F. 3d at 515. "This inquiry is 'context specific, turning upon 'contemporary standards of decency.'" Id. (quoting Blyden v. Mancusi, 186 F.3d 252, 263 (2d Cir. 1999)). "[W]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated[,] whether or not significant injury is evident." Id. (quotations, alterations and citations omitted). Nonetheless, "[t]he Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Wilkins, 559 U.S. at 37-38, 130 S. Ct. 1175 (quotations and citation omitted).

In his complaint, Cazares alleges, in relevant part:

> "Correction Officer John Doe, bang [sic] the cell door on [Cazares's] foot intentionally, that caused [him] to 'fracture his foot,' do [sic] to the Correction Officer banging the cell door's [sic] daily as a means of waking inmates up and are banged throughout the day to count inmates, instead of using their P.A. system, which the banging is loud and violent."

(Compl., ¶ IV(5)). Based upon the allegations in Cazares's complaint, there was a legitimate penological purpose for the banging of the cell doors, i.e., to wake and count inmates. Since there are no allegations in Cazares's complaint from which it may reasonably be inferred that, by banging the cell doors, the John Doe Correction Officer, or any other County defendant, acted maliciously or sadistically to cause Cazares harm, the complaint fails to state a plausible Section

48

1983 excessive force claim. Accordingly, the branch of the County defendants' motion seeking dismissal of Cazares's Section 1983 excessive force claim is granted and Cazares's Section 1983 excessive force claim is dismissed in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief.[24]

### 7.    Qualified Immunity

The County defendants contend: (1) that the individual County defendants are shielded from the consolidated plaintiffs' Section 1983 claims against them by the doctrine of qualified immunity because the consolidated plaintiffs "fail to allege the bare minimum to establish an objectively serious deprivation[,]" (County Mem. I at 32); and (2) that Sheriff Sposato has qualified immunity because (a) Jovany's, A. Torres's and G. Torres's "claim [sic] is void of a valid 'deprivation'" and their "complaints about the conditions at NCCC, the food at NCCC, their cell temperatures, and their medical treatment do not amount to Eighth Amendment violations * * *" and, thus, "do not violate any 'clearly-established constitutional rights[,]'" and (b) "[w]hile [Jovany, A. Torres and G. Torres] argue their clearly-established constitutional rights were violated by County Defendants[,] specifically their rights to be free from cruel and unusual punishment * * *, none of their rights were violated." (County Mem. II at 27).

"Qualified immunity protects federal and state officials from both civil damages and 'unnecessary and burdensome discovery or trial proceedings[,]'" Spavone, 719 F.3d at 134

---

[24] Since Cazares did not oppose the County defendants' motion, or seek leave to amend his complaint, the dismissal of his Section 1983 excessive force claim is with prejudice. However, since Cazares's Section 1983 conditions of confinement claims remain in this action, the branch of the County defendants' motion seeking dismissal of Cazares's state law claims for lack of jurisdiction is denied.

(quoting Crawford-El v. Britton, 523 U.S. 574, 598, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998));

see also Coollick v. Hughes, 699 F.3d 211, 219 (2d Cir. 2012) (accord), "where the officials'

conduct was not in violation of a 'clearly established' constitutional right." Sudler v. City of

New York, 689 F.3d 159, 174 (2d Cir. 2012), cert. denied, 133 S. Ct. 2777, 186 L. Ed. 2d 219

(2013); see also Walker, 717 F.3d at 125 ("A federal official is entitled to qualified immunity

from suit for money damages unless the plaintiff shows that the official violated a statutory or

constitutional right, and that the right was 'clearly established' at the time of the challenged

conduct.") "It is an affirmative defense that the defendants have the burden of raising in their

answer and establishing at trial or on a motion for summary judgment." Spavone, 719 F.3d at

134 (quotations and citation omitted); see also Sudler, 689 F.3d at 174 ("Qualified immunity is

an affirmative defense, on which the defendant officials bear the burden of proof.")

"Qualified immunity * * * extends to circumstances where an official's conduct 'does not

violate clearly established statutory or constitutional rights of which a reasonable person would

have known,' and applies 'regardless of whether the government official's error is a mistake of

law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" Spavone, 719

F.3d at 135 (quoting Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565

(2009)); see also Vincent v. Yelich, 718 F.3d 157, 166 (2d Cir. 2013) ("Qualified immunity, an

affirmative defense on which the defendant officials bear the burden of proof, * * * protects

public officials performing discretionary functions from personal liability in a civil suit for

damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known."); Taylor v. Vermont Department of

Education, 313 F.3d 768, 793 (2d Cir. 2002) ("Individual public officials are entitled to qualified

immunity from claims for monetary damages if the statutory right infringed was not clearly established at the time of the violation or if it was objectively reasonable for officials to believe their acts did not infringe upon those rights.") "So long as a defendant has an objectively reasonable belief that his actions are lawful, he is entitled to qualified immunity." Spavone, 719 F.3d at 135 (quotations and citation omitted); see also Sudler, 689 F.3d at 174 ("If the conduct did not violate a clearly established right, or if it was objectively reasonable for the official to believe that his conduct did not violate such a right, then the official is protected by qualified immunity." (quotations, brackets and citation omitted)). "Qualified immunity 'provides ample protection to all but the plainly incompetent or those who knowingly violate the law.'" Vincent, 718 F.3d at 166 (emphasis omitted) (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)); see also Sudler, 689 F.3d at 174 ("Qualified immunity * * * shields government officials from liability when they make reasonable mistakes about the legality of their actions * * *." (quotations and citation omitted)).

"Because the immunity not only protects against a judgment for damages but also is in part an entitlement not to be forced to litigate, * * * early resolution of the qualified immunity defense is encouraged * * *." Vincent, 718 F.3d at 166-67 (quotations and citations omitted); see also Walker, 717 F.3d at 126 ("[C]ourts should resolve the question of qualified immunity at the 'earliest possible stage in litigation[.]" (quotations and citation omitted)). However, "a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route[.]" Walker, 717 F.3d at 126 (quoting McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004)). "[O]n a motion to dismiss, 'it is the defendant's conduct as alleged in the complaint that

51

is scrutinized for objective legal reasonableness.'" McGarry v. Pallito, 687 F.3d 505, 514 (2d Cir. 2012) (quoting Behrens v. Pelletier, 516 U.S. 299, 309, 116 S. Ct. 834, 133 L. Ed. 2d 773 (1996)). Accordingly, "qualified immunity is often best decided on a motion for summary judgment when the details of the alleged deprivations are more fully developed." Walker, 717 F.3d at 130.

"Where the nonexistence of a constitutional right may be discerned from the face of the complaint, an official defendant sued in his individual capacity may be granted a dismissal on the ground of qualified immunity pursuant to Rule 12(b)(6) * * *." Vincent, 718 F.3d at 167; see also Bush v. City of Utica, N.Y., 558 F. App'x 131, 133 (2d Cir. Mar. 17, 2014) (summary order) (accord). However, "a ruling on the availability of a qualified immunity defense would be premature [on a motion to dismiss] [if,] [f]or example, the objective reasonableness of the defendants' acts depends in part on what information they had at the time." Taylor, 313 F.3d at 793-94.

Since, liberally read, the consolidated plaintiffs' complaints and amended complaint plausibly allege violations of their rights under the Eighth and/or Fourteenth Amendments by the County defendants with respect to the conditions of confinement at the NCCC, and that the County defendants acted with at least deliberate indifference with respect to those rights, as set forth above, the issue with respect to qualified immunity in this case is whether defendants reasonably believed that their conduct did not violate those rights. Where, as here, "[i]t is unclear what information the individual defendants possessed when they allegedly deprived [the consolidated] plaintiffs of [their] rights under the [Constitution], or whether other facts may come to light that would render their actions objectively reasonable[,]" Taylor, 313 F.3d at 794, a

52

qualified immunity defense is properly denied at the pleadings stage. See id.; Starkey ex rel. Starkey v. Somers Cent. Sch. Dist., 319 F. Supp. 2d 410, 421 (S.D.N.Y. 2004) ("[T]he qualified immunity issue turns on factual questions that cannot be resolved at the motion to dismiss stage of proceedings." (quotations, brackets and citation omitted)). Accordingly, the branches of the County defendants' motions seeking dismissal of the consolidated plaintiffs' Section 1983 claims against the individual defendants as barred by the doctrine of qualified immunity are denied.

C.     The Prison Litigation Reform Act of 1995

1.     Exhaustion of Administrative Remedies

Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("PLRA"), 110 Stat. 1321-71, as amended, 42 U.S.C. § 1997e, et seq., provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007); see also Woodford v. Ngo, 548 U.S. 81, 85, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006) (holding that under the PLRA, "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory.") Although "failure to exhaust is an affirmative defense under the PLRA * * *[,]" Jones, 549 U.S. at 216, 127 S. Ct. 910; see also Grullon, 720 F.3d at 141, once the defense is asserted "no unexhausted claim may be considered." Jones, 549 U.S. at 219-20, 127 S. Ct. 910; see also Amador v. Andrews, 655 F.3d 89, 96 (2d Cir. 2011) ("Exhaustion is

53

mandatory– unexhausted claims may not be pursued in federal court.")

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Johnson v. Killian, 680 F.3d 234, 238 (2d Cir. 2012) (brackets in original) (quoting Porter v. Nussle, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002)). "[T]he PLRA exhaustion requirement requires proper exhaustion[,]" Woodford, 548 U.S. at 93, 126 S. Ct. 2378, "that is, 'using all steps that the agency holds out, and doing so properly.'" Amador, 655 F.3d at 96 (quoting Woodford, 548 U.S. at 90, 126 S. Ct. 2378); see also Jones, 549 U.S. at 218, 127 S. Ct. 910 ("Compliance with prison grievance procedures * * * is all that is required by the PLRA to 'properly exhaust.'") "This entails both completing the administrative review process in accordance with the applicable procedural rules, * * * and providing the level of detail necessary in a grievance to comply with the grievance procedures." Amador, 655 F.3d at 96 (quotations, brackets and citations omitted); see also Woodford, 548 U.S. at 90-91, 126 S. Ct. 2378 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules * * *.") "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218, 127 S. Ct. 910; see also Johnson, 680 F.3d at 238.

Moreover, "complete exhaustion of administrative remedies through the highest level for each claim is required." Bennett v. James, 737 F. Supp. 2d 219, 224 (S.D.N.Y. 2010), aff'd, 441 Fed. Appx. 816 (2d Cir. Dec. 20, 2011)) (alterations, quotations and citation omitted); see also Schwartz v. Dennison, 518 F. Supp. 2d 560, 568 (S.D.N.Y. 2007), aff'd, 339 Fed. Appx. 28 (2d

Cir. July 22, 2009) ("A prisoner must completely exhaust the administrative remedies to the highest level for each claim he seeks to present. * * * Moreover, a claim must be completely exhausted prior to commencing suit."); Baez v. Kahanowicz, 469 F. Supp. 2d 171, 178-79 (S.D.N.Y. 2007), aff'd, 278 Fed. Appx. 27 (2d Cir. May 15, 2008) (accord).

"The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. * * * The PLRA also was intended to reduce the quantity and improve the quality of prisoner suits." Woodford, 548 U.S. at 93, 126 S. Ct. 2378 (quotations, brackets and citations omitted); see also Johnson, 680 F.3d at 238 ("[T]he purpose of the PLRA is to reduce the quantity and improve the quality of prisoner suits[,] and to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." (second brackets in original) (quoting Amador, 655 F.3d at 96)). Where "a prior [properly exhausted] grievance identifies a specific and continuing complaint that ultimately becomes the basis for a lawsuit," Johnson, 680 F.3d at 239, the prior grievance is sufficient to exhaust a prisoner's administrative remedies with respect to continuing violations at the facility. Id. at 238-39. However, "generalized complaints regarding the conditions of an inmate's confinement will [not] suffice to shortcut the administrative remedy process." Id. at 239.

In Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004), the Second Circuit "established a three-part inquiry to guide the analysis of whether a plaintiff has met the requirements of Section 1997e(a) of the PLRA." Amador, 655 F.3d at 102. Pursuant to that inquiry,

> "[t]he court must ask whether administrative remedies were in fact 'available' to the prisoner. * * * The court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it * * *, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense * * *. If the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies, the court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements."

Hemphill, 380 F.3d at 686 (quotations and citations omitted).[25] "If any of the three parts is satisfied, the prisoner is deemed to have exhausted internal procedures for purposes of the PLRA." Amador, 655 F.3d at 102.

a.    Reid

Although Reid alleges that there is no prisoner grievance procedure in the NCCC, (Reid Compl., ¶ II(A)), all of the other consolidated plaintiffs admit that there is a prisoner grievance procedure available at the NCCC. (Compls., ¶ II(A)). For the question on the complaint form: "[d]id you present the facts relating to your complaint in the prisoner grievance procedure[,]"

---

[25] In Amador, the Second Circuit indicated that "[s]ubsequent decisions have questioned the continued viability of th[e] [Hemphill] framework following the Supreme Court's decision in Woodford * * * [and] whether, in light of Woodford, the doctrines of estoppel and special circumstances survived[,]" 655 F.3d at 102 (citing Macias v. Zenk, 495 F.3d 37, 43 n. 1 (2d Cir. 2007) and Ruggiero v. County of Orange, 467 F.3d 170, 176 (2d Cir. 2006)), and "decline[d] to reach the issue * * *." Id. However, in a subsequent case, Johnston v. Maha, 460 F. App'x 11, 15 n. 6 (2d Cir. Feb. 2, 2012) (summary order), the Second Circuit rejected as "meritless" the defendant's argument that Woodford abrogated Hemphill, indicating that "[a]lthough [Woodford] requires that prisoners 'properly' exhaust the available remedies under the PLRA, it certainly does not abrogate the unavailability defense to nonexhaustion." Id.

56

Reid crossed out the check he put next to the word, "Yes," and left the question unanswered. Reid also omitted any response to the follow-up questions: "[i]f your answer is YES, 1. What steps did you take? [and] 2. What was the result?" (Compl., ¶ II(B)). However, for the follow-up question: "[i]f your answer is NO, explain why not," Reid wrote, "[d]idn't get to that yet."[26] (Compl., ¶ II(D)). Reid answered the question: "[i]f there is no prison grievance procedure in the institution, did you complain to prison authorities[,]" in the affirmative, (Compl., ¶ II(E)), and indicated in the follow-up questions that he "filled out a few sick call sheets and they gave [him] something to put on the rash[,]" but his "rash is still there." (Compl., ¶ II(F)).

Since, *inter alia*, there were administrative remedies available to Reid at the NCCC; the County defendants preserved the affirmative defense of non-exhaustion by asserting it in their instant motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; and Reid failed to oppose the County defendants' motion, thereby waiving any contention that the County defendants are estopped from asserting the non-exhaustion defense or that "special circumstances" otherwise exist justifying his failure to exhaust the available grievance procedures, the branch of the County defendants' motion seeking dismissal of the consolidated plaintiffs' Section 1983 claims for failure to exhaust is granted to the extent that Reid's Section 1983 claims are dismissed in their entirety with prejudice pursuant to 42 U.S.C. § 1997e(a) for failure to exhaust available administrative remedies.

---

[26] By indicating that he "didn't get to that [i.e., presenting the facts relating to his complaint in the prisoner grievance procedure] yet," Reid contradicts his claim, refuted by all of the other consolidated plaintiffs, that there is no prisoner grievance procedure available at the NCCC.

### b.    The Other Consolidated Plaintiffs

Delosrios, Cazares and Jackson all contend that there is a prisoner grievance procedure available in the NCCC and that they presented the facts relating to their respective complaints in the prisoner grievance procedure. (Compls., ¶¶ II(A) and (B)).  Specifically, Delosrios and Cazares both contend that they presented "'two' grievances" to the NCCC's grievance committee and Jackson alleges that on March 8, 2013, he "filed * * * a grievance" about the conditions at the NCCC, which defendants "choose [sic] to ignore and fail[ed] to correct * * *." (Compls., ¶¶ II(C)(1) and IV).  For the follow-up question, "[w]hat was the result[,]" Delosrios responded, "none, cannot remedy the grievances[;]" Cazares responded, "cannot correct or remedy grievances[;]" and Jackson responded, "cannot remedy problem on grievance." (Compls., ¶ II(C)(2)).  Jovany, A. Torres and G. Torres also allege in their amended complaint that they filed grievances, and attach copies of some grievances filed by them to the amended complaint.

The County defendants improperly rely upon matters outside the pleadings, i.e., the NCCC's Inmate Handbook, in support of the branches of their motions seeking dismissal of the consolidated plaintiffs' claims for failure to exhaust administrative remedies.  Unlike Reid's complaint, which demonstrated on its face that Reid had not complied with the NCCC's prisoner grievance procedure, i.e., he never even filed a grievance with respect to his claims, the complaints and amended complaint of the other consolidated plaintiffs all allege that those consolidated plaintiffs at least filed grievances regarding their claims.  Thus, unlike Reid's complaint, the issue of whether the other consolidated plaintiffs properly exhausted their administrative remedies is not discernible from the face of their complaints and amended complaint.

Rule 12(d) of the Federal Rules of Civil Procedure provides, in relevant part, that "[i]f, on

a motion under Rule 12(b)(6) * * *, matters outside the pleadings are presented to and not

excluded by the court, the motion must be treated as one for summary judgment under Rule 56[]

[and] [a]ll parties must be given a reasonable opportunity to present all the material that is

pertinent to the motion." "A district court may not convert a motion under Fed. R. Civ. P.

12(b)(6) into a Rule 56 motion for summary judgment without sufficient notice to an opposing

party and an opportunity for that party to respond." Groden v. Random House, Inc., 61 F.3d

1045, 1052 (2d Cir. 1995); see also Hernandez v. Coffey, 582 F.3d 303, 307 (2d Cir. 2009) ("[A]

district court acts properly in converting a motion for judgment on the pleadings into a motion

for summary judgment when the motion presents matters outside the pleadings, but the rule

requires that the court give sufficient notice to an opposing party and an opportunity for that party

to respond." (quotations and citation omitted)). "In the case of a *pro se* party, * * * notice is

particularly important because the *pro se* litigant may be unaware of the consequences of his

failure to offer evidence bearing on triable issues." Hernandez, 582 F.3d at 307 (quotations,

brackets and citation omitted); see also Parada v. Banco Industrial de Venezuela, C.A., 753 F.3d

62, 68 (2d Cir. 2014) ("Notice is particularly important for a *pro se* litigant, who must be

unequivocally informed of the meaning and consequences of conversion to summary judgment."

(quotations, brackets and citation omitted)). "Accordingly, *pro se* parties must have unequivocal

notice of the meaning and consequences of conversion to summary judgment." Hernandez, 582

F.3d at 307-08 (quotations and citation omitted). Thus, before a district court converts a motion

to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure into a motion for

summary judgment, *pro se* plaintiffs are "entitled to (i) an opportunity to take relevant discovery

and to submit any evidence relevant to the issues raised by the motion, and (ii) absent a clear indication that [they] already possessed such understanding, an explanation of the consequence of a grant of summary judgment, as well as of what [they] could do to defeat the motion." Id. at 308.

However, even if converted to a motion for summary judgment, these branches of the County defendants' motions would be denied because they have not satisfied their burden of showing that each consolidated plaintiff, other than Reid, did not properly exhaust all administrative remedies available to him or her. Although the County defendants contend, *inter alia*, that the other consolidated plaintiffs did not take their grievances to the highest level of administrative review, (See County Mem. I at 19; County Mem. II at 30), they have not submitted any evidence, e.g., an affidavit or declaration, in support of that assertion. Rule 56(c) of the Federal Rules of Civil Procedure requires, in relevant part, that all factual assertions must be supported by "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations * * *, admissions, interrogatory answers, or other materials; * * *."[27] Accordingly, the branches of the County defendants' motion seeking dismissal of the other consolidated plaintiffs' Section 1983

---

[27] In addition, although the County defendants correctly contend that "exhaustion is an affirmative defense[] [that] must be raised by the defendants, *and need not be pleaded by the plaintiff*," (County Mem. I at 19; County Mem. II at 29) (emphasis added), they erroneously argue: (1) that the consolidated plaintiffs' purported failure to exhaust administrative remedies is not excused on the grounds of estoppel or otherwise because they "allege no complications[,]" (County Mem. I at 20; County Mem. II at 30), i.e., that the NCCC "did anything to complicate or eschew [their] use of the grievance procedure," (County Mem. I at 19), or that there existed "complicated procedures []or inhibiting factors at NCCC," (County Mem. II at 30); and (2) that "[n]o extenuating circumstances appear to be present in the NCCC that would warrant Consolidated Plaintiffs' non-compliance." (County Mem. I at 20; County Mem. II at 30). The consolidated plaintiffs were not required to plead such matters in their complaints.

claims pursuant to 42 U.S.C. § 1997e(a) for failure to exhaust administrative remedies are denied with leave to renew as a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[28]

### 2. Claims for Mental or Emotional Injury

The County defendants contend, *inter alia*, that the consolidated plaintiffs' "claim[s] for damages should be dismissed under the PLRA [42 U.S.C. § 1997e(e)] for lack of a - or enough of a - 'compensable physical injury.'" (County Mem. I at 28; County Mem. II at 32).

Section 1997e(e) of Title 42 of the United States Code provides, in relevant part, that "[n]o Federal civil action may be brought by a prisoner * * * for mental or emotional injury suffered while in custody without a prior showing of physical injury * * *." "[T]here is no statutory definition of 'physical injury' as used in Section 1997e(e)." Liner v. Goord, 196 F. 3d 132, 135 (2d Cir. 1999). In Liner, the Second Circuit held:

> "[T]he alleged sexual assaults qualify as physical injuries as a matter of common sense. Certainly, the alleged sexual assaults would constitute more than *de minimis* injury if they occurred. Cf. Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997) (relying on Eighth Amendment jurisprudence, court holds that the physical injury required by § 1997e(e) must simply be more than *de minimis*)."

Id. Since Liner, district courts in this Circuit have consistently held that "[t]he Prison Litigation

---

[28]  In the event that the County defendants renew this branch of their motion as a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, they must serve, as a separate document, the "Notice To Pro Se Litigants Who Oppose a Motion for Summary Judgment" contained in Local Civil Rule 56.2 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Civil Rules"), together with the full texts of Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 56.1, upon each consolidated plaintiff. See Local Civil Rule 56.2.

Reform Act requires more than a showing of *de minimis* physical injury to allow an inmate to pursue an emotional or mental injury claim." Jacoby v. Conway, No. 10 cv 920, 2013 WL 1559292, at * 1 (W.D.N.Y. Apr. 10, 2013) (citing cases). Although district courts in the Southern, Northern and Western Districts of New York have found that allegations of bruising, abrasions, dizzy spells and blurred vision, see, e.g. Jacoby, 2013 WL 1559292, at * 1; chronic headaches, episodic "black[] out[s]", depression, insomnia and dizziness, see, e.g. Abreu v. Nicholls, No. 04 Civ. 7778, 2011 WL 1044373, at * 3 (S.D.N.Y. Mar. 22, 2011), report and recommendation adopted by 2012 WL 1079985 (Mar. 30, 2012); "dry, cracked skin and athlete's foot fungus," Thompson v. Carlsen, No. 9:08-cv-0965, 2010 WL 3584409, at * 14 (N.D.N.Y. Aug. 16, 2010), report and recommendation adopted by 2010 WL 3584396 (Sept. 7, 2010); a skin rash, see, e.g. Dolberry, 567 F. Supp. 2d at 418; and "a 'physical injury' that was essentially *emotional* in nature (e.g., anxiety, depression, stress, nausea, hyperventilation headaches, insomnia, dizziness, appetite loss, weight loss, etc.)," Darvie v. Countyman, No. 9:08-cv-0715, 2008 WL 2725071, at * 7 (N.D.N.Y. July 10, 2008), report and recommendation adopted by 2008 WL 3286250 (Aug. 7, 2008), are not the types of physical injuries contemplated by Section 1997e(e), two (2) courts in this district, i.e., the Eastern District of New York, have found that allegations of "intestinal illnesses," "skin conditions," respiratory and fungal infections, nose bleeds, headaches, blurred vision and dizziness, Butler v. Suffolk County, 289 F.R.D. 80, 93-94 (E.D.N.Y. 2013); and dizziness, "uncontrollable coughing," lack of appetite, runny eyes and high blood pressure, Enigwe v. Zenk, No. 03-cv-854, 2006 WL 2654985, at * 6 (E.D.N.Y. Sept. 14, 2007), reconsideration denied, 2007 WL 2713849 (Sept. 14, 2007), may constitute "physical

injury" within the meaning of the PLRA.[29]

"Section 1997e(e) applies to all federal civil actions including claims alleging constitutional violations," Thompson, 284 F.3d at 416, "so that the plaintiff cannot recover damages *for mental or emotional injury* for a constitutional violation in the absence of a showing of actual physical injury." Id. at 417 (emphasis added). However, "[b]ecause Section 1997e(e) is a limitation on recovery of damages *for mental and emotional injury* in the absence of a showing of physical injury, it does not restrict a plaintiff's ability to recover compensatory damages for actual injury, nominal or punitive damages, or injunctive and declaratory relief." Id. at 416 (emphasis added). As the Second Circuit indicated,

> "By its terms, [Section 1997e(e)] does not limit the prisoner's right
> to request injunctive or declaratory relief. Nor should it be read as
> a general preclusion of all relief if the only injury the prisoner can
> claim– other than the intangible harm presumed to flow from
> constitutional injuries– is emotional or mental. * * * Both in its
> text and in its caption ['Limitation on recovery'], Section 1997e(e)
> purports only to limit recovery for emotional and mental injury, not
> entire lawsuits."

Id. at 418. Similarly, since Section 1997e(e) refers only to claims for mental or emotional injury, it "does not limit the availability of nominal damages for the violation of a constitutional right or of punitive damages," id., or provide any basis "for barring an award of compensatory damages * * * provided [the plaintiff] can establish actual injury." Id.

---

[29] The Court was unable to find any case in this Circuit determining whether insect bites constitute "physical injury" within the meaning of the PLRA. While the Fifth Circuit seems to suggest that they do, see, e.g. Harrison v. Smith, 83 F. App'x 630, 631 (5th Cir. Dec. 11, 2003) (affirming dismissal of a conditions of confinement claim pursuant to Section 1997e(e) because, *inter alia*, the plaintiff "did not suffer any insect bites" and, therefore, "[a]ny deficiencies in * * * the jail's pest-control measures did not physically harm him"), a district court in the Western District of Louisiana has held that insect bites constitute a *de minimis* injury. Ordon v. Jack, Civ. Action No. 09-0164, 2009 WL 2044654, at * 4 (W.D. La. July 7, 2009).

In addition, "Section 1997e(e) * * * does not limit [a] [p]laintiff's ability to recover compensatory damages for a serious risk of future physical harm" due to exposure to a toxic substance, Rahman v. Schriro, — F. Supp. 2d —, 2014 WL 2208050, at * 10 (S.D.N.Y. May 27, 2014), e.g., radiation, friable asbestos, environmental tobacco smoke, etc. See id. (radiation exposure); Enigwe, 2006 WL 2654985, at * 5 (environmental tobacco smoke); Crawford v. Artuz, 98 Civ. 0425, 1999 WL 435155, at * 6 (S.D.N.Y. June 24, 1999) (friable asbestos). In sum, "[t]he PLRA's limitation on recovery of damages does not apply where the claim asserted is not one for mental or emotional injury." Rahman, — F. Supp. 2d —, 2014 WL 2208050, at * 10.

Since Delosrios, Cazares and Jackson do not allege that they suffered any mental or emotional injury, or seek damages on the basis of any mental or emotional injury[30], Section 1997e(e) does not apply to any of their claims against the County defendants. Although Jovany, A. Torres and G. Torres allege, inter alia, that they suffer from "mental issues," stress and sleep disturbances, they also allege, inter alia, the following injuries: "persistent and recurring digestive issues," "skin and head infections," severe migraine headaches, dizzy spells and "severe fungal infections" on their feet. It is unnecessary at this stage of the litigation to determine whether those injuries satisfy the "physical injury" requirement of the PLRA because, inter alia: (1) in addition to those injuries, the amended complaint can be liberally read to assert a claim for a serious risk of future physical harm due to Jovany's, A. Torres's and G. Torres's

_____

[30] Delosrios, Cazares and Jackson assert claims seeking compensatory damages for, inter alia, suffering infections on various parts of their bodies, bug bites, "severe migraine headaches," and dizzy spells and/or weakness. Delosrios and Cazares also seek compensatory damages for stomachaches, stomach pain and fevers and Jackson seeks compensatory damages for suffering a mouse bite, for which he received a shot. All three (3) of these consolidated plaintiffs also seek injunctive and declaratory relief, as well as nominal and punitive damages.

exposure to a toxic substance, i.e., black mold; and (2) in addition to compensatory damages, Jovany, A. Torres and G. Torres also seek injunctive and declaratory relief and punitive damages. Thus, Jovany's, A. Torres's and G. Torres's Section 1983 conditions of confinement claims will proceed to trial regardless of how the "physical injury" issue is decided. Therefore, the better course is to allow the finder of fact to determine the issues of whether Jovany, A. Torres and G. Torres show a physical injury and, if so, to what compensatory damages they are entitled for both the physical, as well as the mental and emotional, injuries they sustained as a result of the County defendants' constitutional violations. See, e.g. Abreu, 2011 WL 1044373, at * 4. Accordingly, the branches of the County defendants' motions seeking dismissal of the consolidated plaintiffs' "claims for damages" pursuant to Section 1997e(e) are denied.[31]

### D. State Law Claims

#### 1. Jovany's, A. Torres's and G. Torres's Negligence Claim

The County defendants contend, *inter alia*, that they "are only liable to Plaintiffs for foreseeable injuries[] [and] [t]he injuries alleged * * * are not foreseeable" and that "[t]he injuries alleged by the Plaintiffs here hardly rise to the level of prisoner negligence claims that have stated a valid cause of action, particularly prisoner-on-prisoner attack cases." (County Mem. II at 36-37).

"To establish a *prima facie* case of negligence under New York law, a plaintiff must show (1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and

---

[31] Since, with the exception of Reid, the consolidated plaintiffs' Section 1983 conditions of confinement claims remain in this action, the branches of the County defendants' motion seeking dismissal of this action for lack of jurisdiction are denied.

65

(3) injury to the plaintiff as a result thereof." In re World Trade Center Lower Manhattan Disaster Site Litigation, — F.3d —, 2014 WL 3360598, at * 5 (2d Cir. July 10, 2014) (quotations and citations omitted); see also Greenberg, Trager & Herbst, LLP v. HSBC Bank USA, 17 N.Y.3d 565, 576, 934 N.Y.S.2d 43, 958 N.E.2d 77 (N.Y. 2011) ("To establish a cause of action sounding in negligence, a plaintiff must establish the existence of a duty on defendant's part, breach of the duty and damages[.]") "[T]he scope of the duty owed by the defendant is defined by the risk of harm reasonably to be perceived * * *." Sanchez v. State of N.Y., 99 N.Y.2d 247, 252, 754 N.Y.S.2d 621, 784 N.E.2d 675 (N.Y. 2002) (citation omitted). "Although the precise manner in which the harm occurred need not be foreseeable, liability does not attach unless the harm is within the class of reasonably foreseeable hazards that the duty exists to prevent * * *." Sanchez, 99 N.Y.2d at 252, 754 N.Y.S.2d 621 (citation omitted); see also Aegis Ins. Services, Inc. v. 7 World Trade Co., L.P., 737 F.3d 166, 177 (2d Cir. 2013) ("While a plaintiff must establish that a harm was within the ambit of reasonably foreseeable risk, a plaintiff need not demonstrate that the precise manner in which the accident happened, or the extent of the injuries, was foreseeable." (quotations, alterations and citation omitted)).

The allegations in the amended complaint are sufficient to allege, *inter alia*, that the County defendants owed a duty to Jovany, A. Torres and G. Torres to provide them with life's basic necessities; that the County defendants breached that duty by depriving them of adequate food and shelter; and that Jovany, A. Torres and G. Torres sustained injuries, e.g., bug and rodent bites, weakness, dizzy spells, headaches, rashes, illness, etc., that were reasonably foreseeable based upon the County defendants' purported deprivations of adequate food and shelter. Accordingly, the branch of the County defendants' motion seeking dismissal of Jovany's, A.

Torres's and G. Torres's negligence claim is denied.

2.  Jovany's, A. Torres's and G. Torres's "Ministerial Negligence" Claim

The County defendants contend, *inter alia*: (1) that "[b]ecause [Jovany's, A. Torres's and G. Torres's] ordinary negligence claim is attenuated, their ministerial negligence claim is also slim[;]" and (2) that Jovany, A. Torres and G. Torres "cannot make out *a* [sic] *prima facie* negligence, and, by inference, also cannot make out a ministerial negligence claim." (County Mem. II at 38).

"[T]here is no independent cause of action for ministerial neglect in New York." Hayut, 352 F.3d at 755. "Rather, a claim of ministerial neglect 'merely removes the issue of governmental immunity from a given case[,]'" Id. (quoting Lauer v. City of New York, 95 N.Y.2d 95, 99, 711 N.Y.S.2d 112, 733 N.E.2d 184 (N.Y. 2000)), and is "a defense * * * potentially available to [a municipality]." Valdez v. City of New York, 18 N.Y.3d 69, 75, 936 N.Y.S.2d 587, 960 N.E.2d 356 (N.Y. 2011). With respect to the "governmental function immunity defense," Valdez, 18 N.Y.3d at 75, 936 N.Y.S.2d 587, the Court of Appeals of the State of New York, in Lauer, explained that

> "[m]unicipalities long ago surrendered common-law tort immunity for the negligence of their employees. A distinction is drawn, however, between 'discretionary' and 'ministerial' governmental acts. A public employee's discretionary acts–meaning conduct involving the exercise of reasoned judgment–may not result in the municipality's liability even when the conduct is negligent. By contrast, ministerial acts–meaning conduct requiring adherence to a governing rule, with a compulsory result–may subject the municipal employer to liability for negligence * * *."

Lauer, 95 N.Y.2d at 99, 711 N.Y.S.2d 112 (citation omitted); see also Valdez, 18 N.Y.3d 69, 75-

76, 936 N.Y.S.2d 587 ("Although the State long ago waived sovereign immunity on behalf of itself and its municipal subdivisions, the common-law doctrine of governmental immunity continues to shield public entities from liability for discretionary actions taken during the performance of governmental functions * * *." (citations omitted)). "In other words, even if a plaintiff establishes all elements of a negligence claim, a state or municipal defendant engaging in a governmental function can avoid liability if it timely raises the [governmental function immunity] defense and proves that the alleged negligent act or omission involved the exercise of discretionary authority." Valdez, 18 N.Y.3d at 76, 936 N.Y.S.2d 587. However, "the governmental function immunity defense cannot attach unless the municipal defendant establishes that the discretion possessed by its employees was in fact exercised in relation to the conduct on which liability is predicated." Id.

In Valdez, the Court of Appeals of the State of New York held that

> "[i]n order to prevail on a governmental function immunity defense, a municipality must do much more than merely allege that its employee was engaged in activities involving the exercise of discretion. 'Whether an action of a governmental employee or official is cloaked with any governmental immunity requires an analysis of the functions and duties of the actor's particular position and whether they inherently entail the exercise of some discretion and judgment. If these functions and duties are essentially clerical or routine, no immunity will attach' (Mon [v. City of New York], 78 N.Y.2d [309,] 313, 574 N.Y.S.2d 529, 579 N.E.2d 689 [N.Y. 1991] [citations omitted]).
>
> Beyond the role the individual employee plays in the organization, the availability of governmental function immunity also turns on 'whether the conduct giving rise to the claim is related to an exercise of that discretion' (id.). The defense precludes liability for a 'mere error of judgment' (see Haddock, 75 N.Y.2d at 485, 554 N.Y.S.2d 439, 553 N.E.2d 987) but this immunity is not available unless the municipality establishes that the action taken actually

68

resulted from discretionary decision-making–i.e., 'the exercise of reasoned judgment which could typically produce different acceptable results' (Tango [by Tango v. Tulevech], 61 N.Y.2d [34,] 41, 471 N.Y.S.2d 73, 459 N.E.2d 182 [N.Y. 1983])."

Valdez, 18 N.Y.3d at 79, 936 N.Y.S. 2d 587.

Nonetheless, "a ministerial breach by a governmental employee [does not] necessarily give[] rise to municipal liability" under New York law. Lauer, 95 N.Y.2d at 99, 711 N.Y.S.2d 112. "Ministerial negligence may not be immunized, but it is not necessarily tortious * * *." Id. (citation omitted). "There must still be a basis to hold the municipality liable for negligence." Id. at 100, 711 N.Y.S.2d 112.

In order to impose liability upon a governmental entity, "there must be some showing that the conduct by the official violated some duty to the injured party directly, as opposed to a general duty to society." Hayut, 352 F.3d at 755 (quotations and citation omitted); see also Lauer, 95 N.Y.2d at 100, 711 N.Y.S.2d 112 ("To sustain liability against a municipality, the duty breached must be more than that owed the public generally.") "Without a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm * * *." Lauer, 95 N.Y.2d at 100. 711 N.Y.S.2d 112 (citation omitted); see also Hayut, 352 F.3d at 755 (accord).

In sum, "government action, if discretionary, may not be a basis for liability, while ministerial actions may be, but only if they violate a special duty owed to the plaintiff, apart from any duty to the public in general[.]" Valdez, 18 N.Y.3d at 76-77, 936 N.Y.S.2d 587 (quotations, brackets and citation omitted). "[I]f plaintiffs cannot overcome the threshold burden of demonstrating that defendant owed the requisite duty of care, there will be no occasion to address

69

whether defendant can avoid liability by relying on the governmental function immunity

defense." Id. at 80, 936 N.Y.S.2d 587; see also Metz v. State of New York, 20 N.Y.3d 175, 179,

958 N.Y.S.2d 314, 982 N.E.2d 76 (N.Y. 2012) ("[C]laimants must first establish the existence of

a special duty owed to them by the State [or municipality] before it becomes necessary to address

whether the State can rely upon the defense of governmental immunity.")

    In Valdez, the Court of Appeals of the State of New York held that

> "[t]o establish a special relationship, plaintiffs [are] required to
> show that there was: (1) 'an assumption by the municipality,
> through promises or actions, of an affirmative duty to act on behalf
> of the party who was injured; (2) knowledge on the part of the
> municipality's agents that inaction could lead to harm; (3) some
> form of direct contact between the municipality's agents and the
> injured party; and (4) that party's justifiable reliance on the
> municipality's affirmative undertaking' (Cuffy v. City of New
> York, 69 N.Y.2d 255, 260, 513 N.Y.S.2d 372, 505 N.E.2d 937)."

Valdez, 18 N.Y.3d at 80, 936 N.Y.S.2d 587. "Special relationships that have been recognized to

give rise to a governmental duty * * * have included custodial relationships such as a prison and

inmate * * *." Ying Jing Gan v. City of New York, 996 F.2d 522, 533 (2d Cir. 1993); see also

P.W. Fairport Cent. Sch. Dist., 927 F. Supp. 2d 76, 81 (W.D.N.Y. 2013) ("The State may be

responsible for the care and protection of individuals where a special relationship exists between

the State and the individual * * *. Such a special relationship exists, for example, when a person

is incarcerated in a state prison * * *.")

    As noted above, the allegations in the amended complaint are sufficient to allege, *inter

alia*, that the County owed a duty to Jovany, A. Torres and G. Torres to, *inter alia*, provide them

with life's basic necessities, e.g., adequate food and shelter, during their incarceration at the

NCCC; that County employees breached that duty by depriving them of adequate food and

shelter; and that Jovany, A. Torres and G. Torres sustained injuries, e.g., bug and rodent bites, weakness, dizzy spells, headaches, rashes, illness, etc., that were reasonably foreseeable based upon the purported deprivations of adequate food and shelter. Since Jovany's, A. Torres's and G. Torres's claim seeking damages for "ministerial negligence" in their amended complaint, liberally construed, states a plausible claim for negligence against the County, and the County defendants have not even alleged, much less demonstrated, that the challenged acts or omissions were discretionary, the branch of the County defendants' motion seeking dismissal of Jovany's, A. Torres's and G. Torres's "ministerial negligence" claim is denied.

### 3. Notice of Claim

The County defendants contend that all of the consolidated plaintiffs' state law claims are barred because they fail to allege that they filed a notice of claim in compliance with New York General Municipal Law § 50-e.

Attached to G. Torres's opposition to the County defendants' motion is a notice of claim, dated June 13, 2013, indicating, *inter alia*: (1) that he intended to make claims against the County defendants and Armor for "[p]oor medical care, and conditions of confinement in violations [sic] of [his] rights under the Eighth and Fourteenth Amendments, and Due Process Clause of New York State Constitution[;]" (2) that his claims occurred at "[v]arious times (Day and Night), on or about March 11, 2013, at [NCCC] at different times[;]" and that he sustained "[r]ashes on buttocks, skin infections, severe headaches [and] stomach pains."

Attached to A. Torres's opposition to the County defendants' motion is a notice of claim, dated May 7, 2013, indicating, *inter alia*: (1) that she claims "unsanitary conditions at the

NCCC[,] food preparation and service is unsanitary, [f]ailure to control rodents [illegible][;]" (2) that the nature of her claim is "[c]ondition [sic] of confinement[,] unsanitary that was caused by [the County defendants], that caused health damage to claimant[;]" (3) that her claims arose at "[v]arious times on or about March 17, 2013 at NCCC at 5:16 p.m. on housing units throughout the jail[;]" and (4) that she sustained an "[i]nfection on arms from roaches and [i]nsect bites[,] severe [m]igraine headaches, experiencing [d]izzy spells, and stomach aches."

State notice of claim requirements apply to state law claims brought in federal court. See Felder v. Casey, 487 U.S. 131, 151, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988); Parise v. New York City Department of Sanitation, 306 F. App'x 695, 697 (2d Cir. Jan. 16, 2009) (summary order); Hardy v. New York City Health & Hosp. Corp., 164 F.3d 789, 793 (2d Cir. 1999). Under New York law, service of a notice of claim upon a municipality is a condition precedent to maintaining a tort action against the municipality, or any of its officers, agents or employees acting within the scope of their employment. N.Y. Gen. Mun. L. §§ 50-e and 50-i(1); see Heslin v. County of Greene, 14 N.Y.3d 67, 73-74, 896 N.Y.S.2d 723, 923 N.E.2d 1111 (N.Y. 2010); Davidson v. Bronx Municipal Hospital, 64 N.Y.2d 59, 61, 484 N.Y.S.2d 533, 473 N.E.2d 761 (N.Y. 1984). "Notice of claim requirements 'are construed strictly by New York state courts * * * [and a] [f]ailure to comply with th[o]se requirements ordinarily requires a dismissal for failure to state a cause of action." Hardy, 164 F.3d at 793-794; see also Davidson, 64 N.Y.2d at 62, 484 N.Y.S.2d 533 ("Failure to comply with provisions requiring notice and presentment of claims prior to the commencement of litigation ordinarily requires dismissal.") Moreover, "[t]o survive a motion to dismiss, a plaintiff must affirmatively plead that a notice of claim was filed." Naples v. Stefanelli, 972 F. Supp. 2d 373, 390 (E.D.N.Y. 2013) (citing N.Y. Gen. Mun. Law § 50-

i(1)(b)).

With the exception of A. Torres and G. Torres, all of the consolidated plaintiffs' state law claims against the County defendants must be dismissed because none of them allege that they served a notice of claim in accordance with New York General Municipal Law § 50-e. See, e.g. Naples, 972 F. Supp. 2d at 390; Dillon v. Suffolk County Department of Health Services, 917 F. Supp. 2d 196, 217 (E.D.N.Y. 2013); Burks v. Nassau County Sheriff's Department, 288 F. Supp. 2d 298, 301 (E.D.N.Y. 2003). Accordingly, the branch of the County defendants' motion seeking dismissal of the consolidated plaintiffs' state law claims for failure to serve a notice of claim in accordance with New York General Municipal Law §50-e is granted to the extent that any state law claims asserted by the consolidated plaintiffs, except A. Torres and G. Torres, are dismissed in their entirety for failure to comply with New York General Municipal Law § 50-e.

> a. Sufficiency of A. Torres's and G. Torres's Notices of Claim

New York General Municipal Law § 50-e(2) requires that a notice of claim "be in writing, sworn to by or on behalf of the claimant and * * * set forth: (1) the name and post-office address of each claimant, and of his attorney, if any; (2) the nature of the claim; (3) the time when, the place where and the manner in which the claim arose; and (4) the * * * injuries claimed to have been sustained so far as then practicable * * *." Section 50-e(2) "does not require those things to be stated with literal nicety or exactness." Brown v. City of New York, 95 N.Y.2d 389, 393, 718 N.Y.S.2d 4, 740 N.E.2d 1078 (2000) (internal quotations and citation omitted); see also Rosenbaum v. City of New York, 8 N.Y.3d 1, 10-11, 828 N.Y.S.2d 228, 861 N.E.2d 43 (N.Y. 2006). Rather, "[t]he test of the sufficiency of a Notice of Claim is merely 'whether it includes

information sufficient to enable the [municipality] to investigate [the claim]." Brown, 95 N.Y.2d at 393, 718 N.Y.S.2d 4 (quoting O'Brien v. City of Syracuse, 54 N.Y.2d 353, 358, 445 N.Y.S.2d 687, 429 N.E.2d 1158 (1981)). "Thus, in determining compliance with the requirements of General Municipal Law § 50-e, courts should focus on the purpose served by a Notice of Claim: whether based on the claimant's description municipal authorities can locate the place, fix the time and understand the nature of the [incident]." Id.

Clearly, A. Torres's and G. Torres's notices of claim are facially deficient insofar as, *inter alia*, they do not indicate, *inter alia*, "the place where and the manner in which the claim[s] arose," nor provide any description of the acts or omissions upon which they are basing their state law claims or how such acts or omissions caused any injury to them, so as to allow the County defendants to understand the nature of, and investigate, their claims against them. Accordingly, the branch of the County defendants' motion seeking dismissal of the consolidated plaintiffs' state law claims for failure to serve a notice of claim in accordance with New York General Municipal Law §50-e is granted to the extent that A. Torres's and G. Torres's state law claims are dismissed in their entirety for failure to comply with New York General Municipal Law § 50-e.[32]

III.     Conclusion

For the reasons set forth above, (1) the branches of the County defendants' motions seeking dismissal of (a) all of Reid's Section 1983 claims, (b) the consolidated plaintiffs' Section

---

[32] In light of this determination, it is unnecessary to consider the County defendants' contention that the consolidated plaintiffs' state law claims against them are barred by the doctrine of qualified immunity under New York State law.

1983 claims (i) against Sposato in his official capacity and (ii) alleging deliberate indifference to their medical needs, (c) Cazares's Section 1983 excessive force claim, and (d) the consolidated plaintiffs' state law claims for failure to serve a notice of claim in accordance with New York General Municipal Law § 50-e are granted and those Section 1983 claims, and all state law claims of the consolidated plaintiffs, are dismissed in their entirety with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and the County defendants' motion is otherwise denied; and (2) the branch of Armor's motion seeking dismissal of the amended complaint against it for Jovany's, A. Torres's and G. Torres's failure to state a plausible Section 1983 claim of deliberate indifference to their medical needs is granted and the amended complaint is dismissed in its entirety with prejudice as against Armor pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief.[33]

Pursuant to Rule 77(d)(1) of the Federal Rules of Civil Procedure, the Clerk of the Court shall serve notice of entry of this order, as provided in Rule 5(b) of the Federal Rules of Civil Procedure, upon each party remaining in this action and record such service on the docket.

SO ORDERED.

_____
Sandra J. Feuerstein
United States District Judge

Dated: August 20, 2014
        Central Islip, New York

---

[33] For the sake of clarity, with respect to the complaints and amended complaint at issue on these motions, only the following claims remain: (1) Jovany's, Cazares's, Jackson's, A. Torres's and G. Torres's Section 1983 conditions of confinement claims against the County and Sposato, in his individual capacity; (2) Delosrios's Section 1983 conditions of confinement claims against the County; and (3) Jovany's, A. Torres's and G. Torres's Section 1983 conditions of confinement claims against the County Cooks. Since all of Reid's claims have been dismissed in this action, the Clerk of the Court shall amend the caption of this consolidated action to **Jovany Henrius, et al. v. County of Nassau, et al.**