FILED
CLERK
3/24/2016 1:52 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JOVANY HENRIUS, et al.

               Plaintiffs,

      -against-                                     13-CV-1192 (SJF)(SIL)

COUNTY OF NASSAU, et al.                      **OPINION and ORDER**

               Defendants.
------------------------------------------------------------------X
FEUERSTEIN, District Judge:

Pending before the Court is, *inter alia*, the motion of defendant Michael J. Sposato ("Sheriff Sposato"), as Sheriff of Nassau County, and two (2) "John Doe" defendants, identified as the warden ("the Warden") and the superintendent ("the Superintendent") of the Nassau County Correctional Center ("NCCC") (collectively, the "County defendants"), seeking, *inter alia*, to dismiss all claims asserted against them by consolidated plaintiff Luis Espinal ("Espinal") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). For the reasons set forth below, the County defendants' motion is granted to the extent set forth herein.

I.      BACKGROUND

      A.      Factual Background

Espinal alleges, *inter alia*, that on or about July 19, 2013, he "complained to the housing officer about the condition of [his] cell and the unbearable heat[,]" which was over ninety degrees (90º). (Espinal Compl., ¶ IV(1)). According to Espinal, he "had to seek [medical]

1

attention" because he "was unable to breathe properly" and he filed "grievances to try and reduce the problems." (Id.)

Espinal further alleges (1) that he had rodents in his cell, which would "eat from [his] commissary and leave mice dropping [sic] all around [his] cell," causing him to become ill and seek medical treatment, (Espinal Compl., ¶ IV(2)); and (2) that since "[t]he facility water fountain was not working[,]" he was "force[d]" to drink unfiltered water from the bathroom sink, which made him sick. (Id., ¶ IV(3)).

Espinal alleges that he submitted five (5) grievances, but the "condition [sic] remains the same." (Espinal Compl., ¶ II(C)). However, Espinal attached to his complaint, *inter alia*, "all [his] submitted grievances and sick call requests[,]" (Id. at 5), i.e., three (3) sick call requests, dated July 17 and 19, and August 29, 2013, and three (3), not five (5), grievance forms, dated July 20 and August 5 and 31, 2013.

In the first sick call request, dated July 17, 2013, Espinal complained of stomach pain and nausea "for the past weeks."

In the second sick call request, dated July 19, 2013, which is partially illegible, Espinal complained of, *inter alia*, feeling dizzy and breathing hard when he woke up. The following day, Espinal filed his first grievance, dated July 20, 2103, complaining of "asphyxiating air for the past three days[;]" that his cell was "extremely hot;" and that there was no air conditioner or fresh air coming through the vents. Espinal did not allege any adverse effects from the temperature of his cell and requested only that the NCCC fix the air conditioner and air vents in the cells. The grievance was accepted, but the grievance coordinator's decision thereon is illegible. On August 1, 2013, Espinal indicated that he "read and accept[ed] the Grievance

Coordinator's decision."

In his second grievance, dated August 5, 2013, Espinal complained that the water fountain was broken. Espinal did not allege any adverse effects from the broken water fountain and requested only "a proper and a working water fountain" in his housing unit. The grievance was accepted, but the grievance coordinator's decision is illegible. On August 16, 2013, Espinal indicated that he "read and accept[ed] the Grievance Coordinator's decision."

In the third sick call request, dated August 29, 2013, Espinal complained of stomach pain "for the past week."

In his third grievance, dated August 31, 2013, Espinal complained that on August 30, 2013, he received his "breakfast snack bag with rat bites on the bag and dropping [sic]." Espinal requested "that the workers be more carefull [sic] because rat dropping [sic] can be fatal." The grievance was accepted and the grievance coordinator was told by the kitchen supervisor that he "will personally inspect the snack bags prior to its [sic] distribution . . . to ensure that the grievant's meals are devoid of [illegible]." Espinal signed the grievance form on September 11, 2013, but did not indicate whether he accepted or appealed the grievance coordinator's decision. The area of the grievance form pertaining to any appeal of the grievance coordinator's decision is blank.

Espinal alleges that he suffered from heat exhaustion, stomach and abdominal pain, vomiting, diarrhea and migraine headaches as a result of "the condition of [his] cell," for which he received medication and medical treatment. (Espinal Compl., ¶ IV(A)). Espinal seeks compensatory damages in the amount of ten million dollars ($10,000,000.00) and punitive damages in the amount of ten million dollars ($10,000,000.00). (Id., ¶ V).

B.  Procedural History

On or about October 7, 2013, Espinal commenced an action in this Court pursuant to 42 U.S.C. § 1983 against Sheriff Sposato, the Warden and the Superintendent, which was assigned docket number 13-cv-5653. By order dated November 5, 2013, Espinal's action was consolidated with the case assigned docket number 13-cv-1192, which is now called Henrius v. County of Nassau ("the Henrius case")[1], the lead case in a number of consolidated cases challenging the conditions of confinement purportedly existing at the NCCC that were commenced on or after February 28, 2013.

The County defendants now move, *inter alia*, to dismiss Espinal's claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and the PLRA.

II.  DISCUSSION

A.  Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[1] At the time Tedesco's complaint was consolidated, the lead case was entitled Reid v. Nassau County Sheriff's Department, et al. The name was subsequently changed after Reid's claims were dismissed in their entirety with prejudice pursuant to an order dated August 20, 2014. (Doc. No. 149 in lead case).

alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id.

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678, 129 S. Ct. 1937 (quoting Twombly, 550 U.S. at 555, 127 S. Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557, 127 S. Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. 544, 127 S. Ct. at 1959.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P., 737 F.3d 166, 176 (2d Cir. 2013) (quotations and citation omitted); Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678, 129 S. Ct. 1937. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679, 129 S. Ct. 1937. "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.; see also Ruston v. Town Bd. of Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010).

Nonetheless, a plaintiff is not required to plead "specific evidence or extra facts beyond what is needed to make the claim plausible." Arista Records, LLC v. Doe 3, 604 F.3d 110, 120-1 (2d Cir. 2010); accord Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 729-30 (2d Cir. 2013). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679, 129 S. Ct. 1937.

In deciding a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); see also ASARCO LLC v. Goodwin, 756 F.3d 191, 198 (2d Cir. 2014), cert. denied, 135 S. Ct. 715, 190 L. Ed. 2d 441 (2014).

Moreover, although a *pro se* complaint "must be construed liberally to raise the strongest arguments it suggests[,] * * * [it] must state a plausible claim for relief." Nielsen v. Rabin, 746 F.3d 58, 93 (2d Cir. 2014) (quoting Walker v. Schult, 717 F.3d 119, 124 (2d Cir. 2013) (internal citations, quotation marks, and brackets omitted)).

B.   Exhaustion of Administrative Remedies

Section 1997e(a) of the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are

6

available are exhausted." 42 U.S.C. § 1997e(a). "Accordingly, the PLRA does not require the exhaustion of all administrative remedies, but only those that are 'available' to the inmate." Hubbs v. Suffolk County Sheriff's Dep't, 788 F.3d 54, 59 (2d Cir. 2015). "To be 'available' under the PLRA, a remedy must afford the possibility of some relief for the action complained of." Id. (quotations and citations omitted). "Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements." Id.

"[E]xhaustion is mandatory under the PLRA and * * * unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007); see also Woodford v. Ngo, 548 U.S. 81, 86, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002); accord Johnson v. Killian, 680 F.3d 234, 238 (2d Cir. 2012). "The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford, 548 U.S. at 93, 126 S. Ct. 2378 (alterations, quotations and citation omitted); see also Amador v. Andrews, 655 F.3d 89, 96 (2d Cir. 2011). "The PLRA also was intended to reduce the quantity and improve the quality of prisoner suits." Woodford, 548 U.S. at 93, 126 S. Ct. 2378; see also Porter, 534 U.S. at 524-25, 122 S. Ct. 983.

"[T]he PLRA exhaustion requirement requires proper exhaustion," Woodford, 548 U.S. at 93, 126 S. Ct. 2378; see also Johnson, 680 F.3d at 238, "that is, using all steps that the agency

holds out, and doing so properly." Amador, 655 F.3d at 96 (quotations and citation omitted); see also Porter, 534 U.S. at 524; 122 S. Ct. 983 ("All 'available' remedies must * * * be exhausted."); Macias v. Zenk, 495 F.3d 37, 43 (2d Cir. 2007) ("[T]o satisfy the PLRA a prisoner must * * * procedurally exhaust his available administrative remedies." (emphasis omitted)). "This entails both completing the administrative review process in accordance with the applicable procedural rules * * * and providing the level of detail necessary in a grievance to comply with the grievance procedures." Amador, 655 F.3d at 96 (alterations, quotations and citations omitted). "The exhaustion inquiry * * * requires that [the court] look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." Espinal v. Goord, 558 F.3d 119, 124 (2d Cir. 2009). Merely "alerting the prison officials as to the nature of the wrong for which redress is sought * * * does not constitute 'proper exhaustion' * * *." Macias, 495 F.3d 44 (alterations, quotations and citations omitted).

"[F]ailure to exhaust is an affirmative defense under the PLRA, and * * * inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones, 549 U.S. at 216, 127 S. Ct. 910; see also Hubbs, 788 F.3d at 59 ("Because failure to exhaust is an affirmative defense, . . . defendants bear the initial burden of establishing, by pointing to legally sufficient sources such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute[.]" (quotations, alterations and citations omitted)). Like other affirmative defenses, failure to exhaust may be grounds for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure if the defense appears on the face of the complaint. See Kucharczyk v. Westchester County, 95 F. Supp. 3d 529, 546 (S.D.N.Y. 2015); Butler v. Suffolk County, 289 F.R.D. 80, 92 (E.D.N.Y. 2013); see also Sewell v. Bernardin, 795 F.3d 337, 339 (2d

Cir. 2015) ("Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when a defendant raises a statutory bar, * * * as an affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." (quotations and citation omitted); Kelly-Brown v. Winfrey, 717 F.3d 295, 308 (2d Cir. 2013) ("Affirmative defenses may be adjudicated at th[e] [pleadings] stage in the litigation * * * where the facts necessary to establish the defense are evident on the face of the complaint.")

Moreover, "the affirmative defense of exhaustion is subject to estoppel." Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004); see also Ruggiero v. County of Orange, 467 F.3d 170, 178 (2d Cir. 2006). "A prisoner may invoke the doctrine of estoppel when defendants took affirmative action to prevent him from availing himself of grievance procedures." Amador, 655 F.3d at 103 (quotations and citation omitted); see also Ruggiero, 467 F.3d at 178. "[V]erbal and physical threats of retaliation, physical assault, denial of grievance forms or writing implements, and transfers constitute such affirmative action." Amador, 655 F.3d at 103.

The Second Circuit formulated the following three (3)-part test in determining a failure to exhaust affirmative defense:

> "Depending on the inmate's explanation for the alleged failure to exhaust, the court must ask whether administrative remedies were in fact available to the prisoner. The court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense. If the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies, the court should consider whether special circumstances have been plausibly alleged that justify the prisoner's failure to

9

comply with administrative procedural requirements."

Macias, 495 F.3d at 41 (quoting Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004)); see also Amador, 655 F.3d at 102. "If any of the three parts is satisfied, the prisoner is deemed to have exhausted internal procedures for purposes of the PLRA." Amador, 655 F.3d at 102.

1. The NCCC's Inmate Grievance Procedure

The rules and regulations of the New York State Commission of Correction, applicable to the NCCC, see http://www.scoc.ny.gov/jailaddre.htm#Nassau, provides a three (3)-step process for the handling of inmate grievances.[2] To initiate the process, "[a]n inmate must file a grievance within five days of the date of the act or occurrence giving rise to the grievance[,]" N.Y. Comp. Codes R. & Regs. tit. 9, § 7032.4(d), with the grievance coordinator designated by the chief administrative officer. Id., § 7032.4(e). A "grievance" is defined, in relevant part, as "a written inmate complaint concerning either written or unwritten facility policies, procedures, rules, practices, programs or the action or inaction of any person within the facility." N.Y. Comp. Codes R. & Regs., tit. 9, § 7032.2(a). "[A] grievance that is too vague to understand or fails to set forth supporting evidence or information may be returned to the inmate." Id., § 7032.4(f). "Within two business days after receipt of the grievance coordinator's written determination, the grievant may appeal to the chief administrative officer or his designee." Id., § 7032.4(j).

---

[2] Pursuant to the applicable regulations, "[t]he chief administrative officer of each local correctional facility shall ensure the development and implementation of written policies and procedures consistent [therewith]." N.Y. Comp. Codes R. & Regs., tit. 9, § 7032.3. The NCCC has done so. (See Grievance Forms attached to Espinal Compl.; Declaration of Thomas Lai, Ex. A at 4-5).

10

"Within three business days of the receipt of the chief administrative officer's determination, any grievant may appeal any grievance denied by the facility administrator, in whole or in part, to the [Citizen's Policy and Complaint Review Council of the New York] State Commission of Correction ["CPCRC"] by indicating his/her desire to appeal on the inmate grievance form in the space provided for such purpose." Id., § 7032.5; see Hill, 657 F.3d at 124-25 ("A further appeal may be taken through the Citizens' Policy and Complaint Review Council of the New York State Commission of Corrections.") Thus, it is clear that administrative remedies were available to Espinal at the NCCC. Indeed, Espinal essentially concedes as much by asserting in his opposition to the County defendants' motion, *inter alia*, that he "diligently exhausted his administrative remedies in order to procure administrative resolution to the cruel and harsh confinement" through the grievances and sick call requests attached to his complaint and that his grievances were "accepted by the [NCCC] but, issue never addressed." (Espinal Opp. at 4-5).

        2.      Espinal's Grievances

Espinal alleges, in relevant part, that he attached "all [his] submitted grievances" to his complaint. (Espinal Compl. at 5). On two (2) of the grievances, i.e., the first grievance complaining about the temperature of his cell and the second grievance complaining about the broken water fountain, Espinal indicated, in relevant part, that he "read and accept[ed]," as opposed to "read and appeal[ed]," the grievance coordinator's respective decisions. Since it is clear that Espinal did not appeal the grievance coordinator's decisions, or file a grievance concerning the "inaction of any person within the [NCCC]," N.Y. Comp. Codes R. & Regs. tit. 9, § 7032.2(a), in implementing the decisions within five (5) days thereof, he did not properly

exhaust all available administrative remedies at the NCCC with respect to his claims about the temperature of his cell and the broken water fountain.

Although the third grievance does not indicate whether Espinal accepted or appealed the grievance coordinator's decision, he signed the section pertaining to "Acceptance/Appeal of Grievance Coordinator's decision" on September 11, 2013 and there is no indication in the area of the grievance form pertaining to appeals to the chief administrative officer that he ever timely sought to appeal the grievance coordinator's decision. Nor did he ever file a grievance concerning the "inaction of any person within the [NCCC]," N.Y. Comp. Codes R. & Regs. tit. 9, § 7032.2(a), in implementing the decision within five (5) days thereof. In any event, Espinal's third grievance complained only about the presence of rat bites and droppings on the snack bag he received from the kitchen on one (1) occasion, i.e., on August 30, 2013, which he does not assert as a claim in his complaint. As Espinal asserts that he attached all of his grievances to his complaint, it is clear that he never filed a grievance about the purportedly unsanitary condition of his cell, i.e., the presence of rodents and/or rodent droppings in his cell which allegedly caused him to become ill. Thus, Espinal also did not properly exhaust all available administrative remedies with respect to his claim about the presence of rodents in his cell.

Since, *inter alia*, it is clear from the face of Espinal's complaint, and the documents attached thereto, that he did not properly exhaust all available administrative remedies at the NCCC, and there are no allegations in the complaint or Espinal's opposition to the County defendants' motion from which it may reasonably be inferred that administrative remedies were not available to him with respect to such conduct; that defendants may have forfeited, or may be estopped from raising, the affirmative defense of non-exhaustion; or that special circumstances

otherwise exist justifying his failure to exhaust those claims, the branch of the County defendants' motion seeking dismissal of Espinal's claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and the PLRA is granted and Espinal's claims against the County defendants are dismissed in their entirety for his failure to exhaust administrative remedies.

C. Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a party shall be given leave to amend "when justice so requires." Although "a *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated[,]" Nielsen, 746 F.3d at 62 (quotations and citation omitted); accord Grullon, 720 F.3d at 139-40, leave to amend may be denied, *inter alia*, when amendment would be futile. See Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962); Nielsen, 746 F.3d at 62; Grullon, 720 F.3d at 140. "Futility is a determination, as a matter of law, that . . . amendment[] would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." Panther Partners Inc. v. Ikanos Commc'ns, Inc., 681 F.3d 114, 119 (2d Cir. 2012); accord IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC, 783 F.3d 383, 389 (2d Cir. 2015). Since the deficiencies in plaintiff's claims against the County defendants are not curable by way of re-pleading, any amendment to the complaint would be futile. Accordingly,

plaintiff's claims against the County defendants are dismissed in their entirety with prejudice.³

III.   CONCLUSION

For the reasons set forth above, the branch of the County defendants' motion seeking dismissal of Espinal's claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and the PLRA for failure to exhaust administrative remedies is granted and Espinal's claims against the County defendants are dismissed in their entirety with prejudice for failure to exhaust administrative remedies. The Clerk of the Court shall sever Espinal's claims from this consolidated action and re-open the case under docket number 13-cv-5653 for the purpose of entering judgment in favor of the County defendants.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed.2d 21 (1962).

SO ORDERED.

/s/
Sandra J. Feuerstein
United States District Judge

Dated: March 24, 2016
       Central Islip, New York

---

³ In light of this determination, it is unnecessary to consider the County defendants' remaining contentions.