UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
CLERK

3/31/2016 3:02 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

-----------------------------------------------------------------X

JOVANY HENRIUS, et al.

                           Plaintiffs,

           -against-                        13-CV-1192 (SJF)(SIL)

COUNTY OF NASSAU, et al.               **OPINION and ORDER**

                          Defendants.

-----------------------------------------------------------------X

FEUERSTEIN, District Judge:

       Pending before the Court is, *inter alia*, the motion of defendants Michael J. Sposato

("Sheriff Sposato"), as Sheriff of Nassau County[1]; the County of Nassau ("the County"); County

Executive Edward Mangano ("Mangano"); the Nassau County Jail or Nassau County

Correctional Center ("NCCC"); the Nassau County Sheriff's Department ("NCSD"); "Officer

Saeed, (N.C.C.C.)" ("C.O. Saeed"); "Officer Hayman, (N.C.C.C.)" ("C.O. Hayman"); and "John

Doe" corrections officers at the NCCC (collectively, "the County defendants"), seeking, *inter

alia*, to dismiss all claims asserted against them by consolidated plaintiffs Anthony Tedesco

("Tedesco"), Young, Bruny E. Fenelon ("Fenelon"), Joseph Marone ("Marone") and Alan Mayo

---

[1] Although consolidated plaintiff Richard Fitzgerald Young ("Young") named Vincent DeMarco
("Sheriff DeMarco"), as the Suffolk County Sheriff, and Michael Sharkey ("Sharkey"), as Chief
of the Suffolk County Sheriff's Office, as defendants in all three (3) of his complaints, by letters
to the Court, dated July 20 and 25, 2015, he indicated, in essence, that his inclusion of those
individuals as defendants in this case was a "typing error." (Docket Entry ["DE"] 298 and 300).
Since, *inter alia*, it is clear from the allegations in his complaints that Young is challenging the
conditions purportedly existing at the NCCC, and the Nassau County Attorney's Office has
appeared in this action to seek the dismissal of Young's remaining claims in their entirety, I
construe Young's letters to be applications to amend his complaints and deem Young's
complaints amended to substitute Sheriff Sposato for Sheriff DeMarco and to dismiss all claims
against Sharkey.

1

("Mayo") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and the Prison

Litigation Reform Act ("PLRA"), 42 U.S.C. §§ 1997e(a) and (e).[2]  Only Marone opposes the

motion.  Although Tedesco, Young, Fenelon, and Mayo were served with the County defendants'

motion to dismiss their claims on August 22, 2014, none of them have filed any response to the

respective motions, nor sought an extension of time to do so.[3]  Accordingly, the County

defendants' application to have their motion to dismiss the claims of Tedesco, Young, Fenelon

and Mayo be considered as unopposed, (DE 266), is granted.  For the reasons set forth below, the

County defendants' motion to dismiss is granted in part and denied in part.


I.      Background

        A.      Tedesco's Action

        On or about February 11, 2014, Tedesco commenced an action in this Court against

Anthony J. Annucci ("Annucci"), and/or his predecessor, as the Acting Commissioner of the

New York State Department of Corrections and Community Supervision; Sheriff Sposato; the

Nassau University Medical Center ("NUMC") and its employees Mrs. Davis, "John Doe" and

"Jane Doe" (collectively, "the NUMC defendants"); Armor Correctional Health Services of New

---

[2]  Although the County defendants' also seek dismissal of all claims asserted against them by
consolidated plaintiffs Keith Crews, Triandos C. Walker and Marc Jasmin, by order dated May
19, 2015, the claims of those plaintiffs were dismissed in their entirety with prejudice pursuant to
Rule 41(b) of the Federal Rules of Civil Procedure.  (See DE 283).  Accordingly, those branches
of the County defendants' motion are denied as moot.

[3]  Moreover, since April 6, 2015, all mail sent to Mayo to his address of record, i.e., the NCCC,
has been returned to the Court as undeliverable with the notation that Mayo has been discharged,
and Mayo has not advised the Court of his change of address or other contact information, nor
taken any other steps to prosecute his claims in this consolidated action.  (See DE 255, 271, 290,
310, 322, 325).

York, Inc. ("Armor"), i/s/h "Armour Correctional Health, Inc.," and its employees Dr. Theodora Kay-Njemanzi, Mrs. Miller, "John Doe" and "Jane Doe" (collectively, "the Armor defendants"); C.O. Saeed; C.O. Hayman; and "John Doe" and "Jane Doe" employees of the Nassau County Sheriff's Department and the NCCC, which was assigned docket number 14-cv-1054.

Tedesco challenges, *inter alia*, a variety of purportedly unsanitary, unhealthy and/or unsafe conditions existing at the NCCC during the time that he was incarcerated there as a pretrial detainee, i.e., from on or about March 23, 2011 through April 6, 2012, and as a convicted prisoner, i.e., from on or about August 3, 2012 through December 5, 2012, (see Complaint filed by Anthony Tedesco, originally assigned docket number 14-cv-1054, ["Tedesco Compl."], at 1 and ¶ 4), as well as C.O. Hayman's alleged verbal harassment and interference with his medical needs on September 6, 2012, (id. at 19, ¶¶ 62-63); and claims, *inter alia*, to have suffered "irritation and itching on [his] body, . . . severe foot and toenail fungus[,] . . . rashes and skin irritation[] and discoloration . . . ," from the purported conditions of confinement, (Tedesco Compl., ¶ 7), as well as "stress, physical[] and mental anguish, . . . depression[,] . . . anxiety . . . [and] symtoms [sic] of (P.T.S.D.) Post Tramatic [sic] Stress Disorder" as a result of "the continued abuse and neglect conspired by the defendants at [the NCCC]." (Id. at 23, ¶ 72).

Tedesco seeks, *inter alia*, (1) judgment declaring that defendants "have acted in violation of the United States Constitution[;]" (2) an injunction prohibiting defendants "from repeating such action as described in [his] complaint to [him] and or any person, inmate, at [the NCCC];" and (3) compensatory damages in the amount of one million dollars ($1,000,000.00), "cosmetic damages" in the amount of two hundred fifty-thousand dollars ($250,000.00), "indeterminate damages" in the amount of one million dollars ($1,000,000.00), and punitive damages in the

amount of ten million dollars ($10,000,000.00).  (Id., at 31-32).

By order dated April 22, 2014, Tedesco's action was consolidated with the case assigned

docket number 13-cv-1192, which is now called Henrius v. County of Nassau ("the Henrius

case")[4], the lead case in a number of consolidated cases challenging the conditions of

confinement purportedly existing at the NCCC that were commenced on or after February 28,

2013.

By order dated September 16, 2015, Tedesco's claims against the Armor defendants were

dismissed in their entirety with prejudice, (see DE 306), and by order dated March 24, 2016,

Tedesco's claims against Annucci and seeking prospective injunctive relief were dismissed in

their entirety with prejudice, (see DE 320).  The NUMC defendants have not moved to dismiss

Tedesco's claims against them in this action.


B.      Young's Action

On or about March 12, 2014, Young commenced an action in this Court against

DeMarco, Sharkey, and the "Medical Staff" and "Dental Staff" at the NCCC ("the

Medical/Dental defendants"), which was assigned docket number 14-cv-1675.  Like Tedesco,

Young also challenges, *inter alia*, a variety of purportedly unsanitary, unhealthy and/or unsafe

conditions existing at the NCCC during the time he was incarcerated there, i.e., from June 30,

2012 until March 10, 2013, (see Complaint filed by Richard Fitzgerald Young, originally

_____

[4] At the time Tedesco's complaint was consolidated, the lead case was entitled Reid v. Nassau
County Sheriff's Department, et al.  The name was subsequently changed after Reid's claims
were dismissed in their entirety with prejudice pursuant to an order dated August 20, 2014.
(Doc. No. 149 in lead case).

assigned docket number 14-cv-1675 ["Young Compl."], at 4-5), and claims, *inter alia*, (1) that he once "lost [his] balance as [he] was taking a shower . . . [and] stumbled into the stainless steel sides[,]" infecting his ring finger, which became swollen and painful, and his right arm, (id. at 4, ¶ IV.A); and (2) that he "was bitten one night by an unidentified insects [sic] on [his] left arm[,]" which "grew red bumbs [sic]" for which he was given "Hydrocrotozone cream by the nurse Ms. Davis." (Id. at 6). Young seeks "[a] portion of the class-action relief." (Young Compl., ¶ V).

On or about March 19, 2014 and April 9, 2014, Young filed identical complaints against DeMarco, Sharkey and the Medical/Dental defendants, which were assigned docket numbers 14-cv-1955 and 14-cv-2353, respectively. As set forth above, Young's complaints are deemed amended to substitute Sheriff Sposato for Vincent DeMarco and to withdraw all claims against Michael Sharkey.

By order dated April 24, 2014, Young's actions were consolidated with each other, to proceed under the lead case docket number, 14-cv-1675, and the lead case was consolidated with the Henrius case. By order dated September 16, 2015, Young's claims against the Medical/Dental defendants were dismissed in their entirety with prejudice. (See DE 306).


C.    Fenelon's Action

On or about February 18, 2014, Fenelon commenced an action in this Court against Sheriff Sposato, which was assigned docket number 14-cv-1143. Fenelon alleges:

> "I have recieved [sic] emotional distress for over excessive [six] lock-ins in my cell. Also I've been exposed to very unhealthy and poor conditions of the jail. I have been exposed to unsafe showers throughout my entire incarceration. My cell and dorm that I lived in was without heat[;] also showers are without hot water. I have been eating with the same plastic spoon for over a year and been refused by

5

officers for a new one.  Worked as a dorm worker without pay and was given food for my work compensation.  I have been held in dorms where administrative segregation inmates were held in which I have been punished by having my recreation time out cut."

(Complaint filed by Bruny E. Fenelon, originally assigned docket number 14-cv-1143 ["Fenelon Compl."], ¶ IV).  Fenelon does not assert any injuries resulting from the conduct of which he complains,  (see Fenelon Compl., ¶ IV(A)), and seeks "therapy for the continuous lock in [sic] treatment and the loud banging of the cell gates early in the morning . . . [and] $500,000 [five hundred thousand dollars] for the wrongful treatment and exposure to the unsafe and unhealthy conditions."  (Id., ¶ V).

By order dated April 22, 2014, Fenelon's action was consolidated with the Henrius case.


D.     Marone's Action

On or about June 11, 2014, Marone commenced an action in this Court against the County of Nassau; County Executive Edward Mangano; the NCCC; Sheriff Sposato; and Armor and its employees Dr. C. Sanchez, Michael Parrinello, and Laina Hunt (collectively, "the Armor defendants"), which was assigned docket number 14-cv-3786.  Marone alleges, *inter alia*, (a) that upon his admission to the NCCC on May 7, 2014, until May 24, 2014, he was issued only one (1) uniform even though the Inmate Handbook clearly states that each inmate will get two (2) sets of uniforms, (Complaint filed by Joseph Marone, originally assigned docket number 14-cv-3786 ["Marone Compl."], ¶ IV[1]); (b) that cells had "green or black mold" and "bad air circulation from the air vents being clogged with a lot of dust[,]" (id.);  (c) that there is "[t]errible roach infestation[,]" (id.); (d) that from May 10, 2014 to May 12, 2014, he "was forced to sleep on a

6

mattress that had black mold growing on it," (Id.); and (e) that when he asked "multiple officers" for a new mattress, he was told that "they [would] work on it," then they never got back to him. (Id.)

Marone further alleges that on May 14, 2014, at approximately 10:30 a.m., he was moved to a cell in a different housing area, which had a problem with the toilet. (Marone Compl. at 4a, ¶ 4). According to Marone, he asked numerous officers to call maintenance and they told him that they would, "but it never got done," (id.), so he "had no choice but to hold [his] bowel movements for 3 days causing [him] constipation and pains in [his] stomach." (Id.)

In addition, Marone alleges that on May 17, 2014, at approximately 7:30 a.m., he was not allowed to go to religious services and was told that it was because he was supposed "to sign up the day before." (Marone Compl. at 4a, ¶ 3). According to Marone, the Inmate Handbook provides that inmates "should sign up before 7 a.m. the mourning [sic] of service." (Id.)

Marone alleges that on May 19, 2014, he requested his "personal sneakers to be in [his] possession" because "the Jail issued pataki's [sic]" were the wrong size and hurt his feet. (Marone Compl. at 4a, ¶ 5).

Marone also alleges that "[w]hen asked to stand by the gate for count they slam and bang the cell gates back and forth repeatedly over and over which is . . . hurting [his] ears" and that "the constant banging of the cell gates causes a state of paranoia along with mental, emotional and physical distress." (Marone Compl. at 4a, ¶ 6).

Marone seeks, *inter alia*, "to have the Inmate handbook updated and revised . . . [and] monetary compensation of [$]14,000,000 [fourteen million dollars]. . . ." (Marone Compl., ¶ V).

By order dated June 30, 2014, Marone's action was consolidated with the Henrius case.

By order dated September 16, 2015, Marone's claims against the Armor defendants were dismissed in their entirety with prejudice. (See DE 306).

Marone submits an "Answer to Opposition," presumably in response to the County defendants' motion to dismiss, in which he asserts, *inter alia*, that "all of the proper [administrative remedy] procedures have been followed," (Marone Opp., ¶ 1); and that a "Cause of Action is also specifically stated" in his complaint. (Id., ¶ 2). Marone attached to his opposition all of the grievances he filed with respect to the medical care he received at the NCCC.

E.  Mayo's Action

On or about June 19, 2014, Mayo commenced an action in this Court against the NCSD, which was assigned docket number 14-cv-3861. Mayo challenges, *inter alia*, a variety of purportedly unsanitary, unhealthy and/or unsafe conditions existing at the NCCC during the time he was incarcerated there, (Complaint filed by Alan Mayo, originally assigned docket number 14-cv-3861 ["Mayo Compl."], ¶ IV), but does not claim any injuries resulting therefrom. (See Id., ¶ IV(A)). Mayo seeks unspecified damages in the amount of one million dollars ($1,000,000.00). (Id., ¶ V).

By order dated July 8, 2014, Mayo's action was consolidated with the Henrius case.

II.     DISCUSSION

A.      Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id.

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678, 129 S. Ct. 1937 (quoting Twombly, 550 U.S. at 555, 127 S. Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557, 127 S. Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. 544, 127 S. Ct. at 1959.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P., 737 F.3d 166, 176 (2d Cir. 2013) (quotations and citation omitted); Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013). However, this tenet "is inapplicable to legal conclusions. Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678, 129 S. Ct. 1937. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679, 129 S. Ct. 1937. "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.; see also Ruston v. Town Bd. of Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010).

Nonetheless, a plaintiff is not required to plead "specific evidence or extra facts beyond what is needed to make the claim plausible." Arista Records, LLC v. Doe 3, 604 F.3d 110, 120-1 (2d Cir. 2010); accord Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 729-30 (2d Cir. 2013). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679, 129 S. Ct. 1937.

In deciding a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); see also ASARCO LLC v. Goodwin, 756 F.3d 191, 198 (2d Cir. 2014), cert. denied, 135 S. Ct. 715, 190 L. Ed. 2d 441 (2014).

Moreover, although a *pro se* complaint "must be construed liberally to raise the strongest arguments it suggests[,] * * * [it] must state a plausible claim for relief." Nielsen v. Rabin, 746

F.3d 58, 93 (2d Cir. 2014) (quoting Walker v. Schult, 717 F.3d 119, 124 (2d Cir. 2013) (internal

citations, quotation marks, and brackets omitted)).


      B.     The PLRA

      1.     Exhaustion of Administrative Remedies

Section 1997e(a) of the PLRA provides that "[n]o action shall be brought with respect to

prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined

in any jail, prison, or other correctional facility until such administrative remedies as are

available are exhausted." 42 U.S.C. § 1997e(a). "Accordingly, the PLRA does not require the

exhaustion of all administrative remedies, but only those that are 'available' to the inmate."

Hubbs v. Suffolk County Sheriff's Dep't, 788 F.3d 54, 59 (2d Cir. 2015). "To be 'available'

under the PLRA, a remedy must afford the possibility of some relief for the action complained

of." Id. (quotations and citations omitted). "Whether an administrative remedy was available to

a prisoner in a particular prison or prison system is ultimately a question of law, even when it

contains factual elements." Id.

"[E]xhaustion is mandatory under the PLRA and * * * unexhausted claims cannot be

brought in court." Jones v. Bock, 549 U.S. 199, 211, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007);

see also Woodford v. Ngo, 548 U.S. 81, 86, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006). "[T]he

PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they

involve general circumstances or particular episodes, and whether they allege excessive force or

some other wrong." Porter v. Nussle, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12

(2002); accord Johnson v. Killian, 680 F.3d 234, 238 (2d Cir. 2012). "The PLRA attempts to

eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford, 548 U.S. at 93, 126 S. Ct. 2378 (alterations, quotations and citation omitted); see also Amador v. Andrews, 655 F.3d 89, 96 (2d Cir. 2011). "The PLRA also was intended to reduce the quantity and improve the quality of prisoner suits." Woodford, 548 U.S. at 93, 126 S. Ct. 2378; see also Porter, 534 U.S. at 524-25, 122 S. Ct. 983.

"[T]he PLRA exhaustion requirement requires proper exhaustion," Woodford, 548 U.S. at 93, 126 S. Ct. 2378; see also Johnson, 680 F.3d at 238, "that is, using all steps that the agency holds out, and doing so properly." Amador, 655 F.3d at 96 (quotations and citation omitted); see also Porter, 534 U.S. at 524; 122 S. Ct. 983 ("All 'available' remedies must * * * be exhausted."); Macias v. Zenk, 495 F.3d 37, 43 (2d Cir. 2007) ("[T]o satisfy the PLRA a prisoner must * * * procedurally exhaust his available administrative remedies." (emphasis omitted)). "This entails both completing the administrative review process in accordance with the applicable procedural rules * * * and providing the level of detail necessary in a grievance to comply with the grievance procedures." Amador, 655 F.3d at 96 (alterations, quotations and citations omitted). "The exhaustion inquiry * * * requires that [the court] look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." Espinal v. Goord, 558 F.3d 119, 124 (2d Cir. 2009). Merely "alerting the prison officials as to the nature of the wrong for which redress is sought * * * does not constitute 'proper exhaustion' * * *." Macias, 495 F.3d 44 (alterations, quotations and citations omitted).

"[F]ailure to exhaust is an affirmative defense under the PLRA, and * * * inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones, 549 U.S. at

216, 127 S. Ct. 910; see also Hubbs, 788 F.3d at 59 ("Because failure to exhaust is an affirmative defense, . . . defendants bear the initial burden of establishing, by pointing to legally sufficient sources such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute[.]" (quotations, alterations and citations omitted)).  Like other affirmative defenses, failure to exhaust may be grounds for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure if the defense appears on the face of the complaint.  See Kucharczyk v. Westchester County, 95 F. Supp. 3d 529, 546 (S.D.N.Y. 2015); Butler v. Suffolk County, 289 F.R.D. 80, 92 (E.D.N.Y. 2013); see also Sewell v. Bernardin, 795 F.3d 337, 339 (2d Cir. 2015) ("Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when a defendant raises a statutory bar, * * * as an affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." (quotations and citation omitted); Kelly-Brown v. Winfrey, 717 F.3d 295, 308 (2d Cir. 2013) ("Affirmative defenses may be adjudicated at th[e] [pleadings] stage in the litigation * * * where the facts necessary to establish the defense are evident on the face of the complaint.")

Moreover, "the affirmative defense of exhaustion is subject to estoppel."  Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004); see also Ruggiero v. County of Orange, 467 F.3d 170, 178 (2d Cir. 2006).  "A prisoner may invoke the doctrine of estoppel when defendants took affirmative action to prevent him from availing himself of grievance procedures."  Amador, 655 F.3d at 103 (quotations and citation omitted); see also Ruggiero, 467 F.3d at 178.  "[V]erbal and physical threats of retaliation, physical assault, denial of grievance forms or writing implements, and transfers constitute such affirmative action."  Amador, 655 F.3d at 103.

The Second Circuit formulated the following three (3)-part test in determining a failure to exhaust affirmative defense:

> "Depending on the inmate's explanation for the alleged failure to exhaust, the court must ask whether administrative remedies were in fact available to the prisoner. The court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense. If the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies, the court should consider whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements."

Macias, 495 F.3d at 41 (quoting Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004)); see also Amador, 655 F.3d at 102. "If any of the three parts is satisfied, the prisoner is deemed to have exhausted internal procedures for purposes of the PLRA." Amador, 655 F.3d at 102.


a.      The NCCC's Inmate Grievance Procedure

The rules and regulations of the New York State Commission of Correction, applicable to the NCCC, see http://www.scoc.ny.gov/jailaddre.htm#Nassau, provide a three (3)-step process for the handling of inmate grievances.[5] To initiate the process, "[a]n inmate must file a grievance within five days of the date of the act or occurrence giving rise to the grievance[,]" N.Y. Comp. Codes R. & Regs. tit. 9, § 7032.4(d), with the grievance coordinator designated by the chief

---

[5] Pursuant to the applicable regulations, "[t]he chief administrative officer of each local correctional facility shall ensure the development and implementation of written policies and procedures consistent [therewith]." N.Y. Comp. Codes R. & Regs., tit. 9, § 7032.3. The NCCC has done so. (See Grievance Forms attached to Marone Opp.; Declaration of Thomas Lai, Ex. A at 4-5).

14

administrative officer.  Id., § 7032.4(e).  A "grievance" is defined, in relevant part, as "a written

inmate complaint concerning either written or unwritten facility policies, procedures, rules,

practices, programs or the action or inaction of any person within the facility."  N.Y. Comp.

Codes R. & Regs., tit. 9, § 7032.2(a).  "[A] grievance that is too vague to understand or fails to

set forth supporting evidence or information may be returned to the inmate."  Id., § 7032.4(f).

"Within two business days after receipt of the grievance coordinator's written determination, the

grievant may appeal to the chief administrative officer or his designee."  Id., § 7032.4(j).

"Within three business days of the receipt of the chief administrative officer's determination, any

grievant may appeal any grievance denied by the facility administrator, in whole or in part, to the

[Citizen's Policy and Complaint Review Council of the New York] State Commission of

Correction ["CPCRC"] by indicating his/her desire to appeal on the inmate grievance form in the

space provided for such purpose."  Id., § 7032.5.  Thus, it is clear that administrative remedies

were available at the NCCC.


b.     Tedesco's Grievances

Tedesco alleges, in relevant part, that the NCCC "stonewalls the Grievance process[,]" by

not having any inmates on the Grievance Committee and setting up a system "so that the

Grievances never leave the jail or go to Albany[,]" in order "to deny inmates of their First

Amendment right to redress the government for Grievances."  (Tedesco Compl. at 8).  As

indicated in the Court's September 16, 2015 order, those allegations are conclusory and, thus, not

entitled to the assumption of truth.

Tedesco further alleges that on September 6, 2012, at approximately 1:30 p.m., he was

being examined by "a female physician named Rose" for a sick call request when C.O. Hayman entered the room, without being called, "gave her prognoses of [his] medical condition" and told him "to write a grievance" if he did not like it.  (Tedesco Compl. at 19, ¶ 62).  According to Tedesco, he responded, "[E]xcuse me but you're not my medical provider, and at this time my medical condition is none of your concern and if you don't mind I would like some privacy during my examination."  (Id.)  C.O. Hayman then "began yelling at [Tedesco] and told [him] to get out into the hallway, which [he] did."  (Id. at 20, ¶ 63).  Once in the hallway, C.O. Hayman said, "Fuck you, and fuck your medical problems, you don't have a right to privacy."  (Id.)  In response, Tedesco said, "I don't need to be verbally assaulted by you, and you have interfered in my medical examination, I want a grievance."  (Id.)  C.O. Hayman then indicated that Tedesco's medical examination was done and he was "placed in a cell and denied a grievance . . . ."  (Id.)  C.O. Hayman subsequently wrote Tedesco up and he was "punished by being sent to solitary confinement."  (Id.)  Tedesco's grievance about C.O. Hayman's conduct and interference with his medical examination was returned to him on the basis that "disciplinary issues are not grievable,"  (id.), and that grievance was not otherwise appealable under the NCCC's grievance procedures.[6]  Accordingly, administrative remedies were not available to Tedesco with respect to

---

[6]  In addition, Tedesco alleges that he filed a grievance with respect to his claim of deliberate indifference to his medical needs against an Armor employee, Dr. Kay-Njemanzi, concerning her conduct on or about July 26, 2011, (Tedesco Compl., ¶ 37), but the grievance coordinator, Mrs. Boyce, *inter alia*, refused to allow him his right to appeal the grievance; to provide him with a copy of the grievance; and to provide him with the grievance number and date of the grievance, (id., ¶¶ 55-58).  Although by order dated September 16, 2015, I, *inter alia*, found those allegations to be sufficient at the pleadings stage to withstand dismissal of Tedesco's claim against Dr. Kay-Njemanzi relating to her conduct on or about July 26, 2011 for failure to exhaust administrative remedies on the basis of estoppel, I nonetheless dismissed that claim against Dr. Kay-Njemanzi in its entirety with prejudice for failure to state a claim for relief.  (DE 306).

his Section 1983 claims against C.O. Hayman for verbal harassment and interference with his medical examination on September 6, 2012.

However, with the exception of his claims of verbal harassment and interference with his medical examination against C.O. Hayman, Tedesco does not allege (1) that he completed even the first step of the grievance procedure with respect to any of the other County defendants' conduct challenged in his complaint, or (2) any factual allegations from which it may reasonably be inferred (a) that administrative remedies were not available to him with respect to such conduct; (b) that the County defendants may have forfeited, or may be estopped from raising, the affirmative defense of non-exhaustion; or (c) that special circumstances otherwise exist justifying his failure to exhaust his claims against the County defendants. Accordingly, the branch of the County defendants' motion seeking dismissal of Tedesco's Section 1983 claims against them pursuant to Section 1997e(a) of the PLRA is granted to the extent that, with the exception of Tedesco's claims against C.O. Hayman, Tedesco's Section 1983 claims against the County defendants are dismissed in their entirety with prejudice for his failure to exhaust administrative remedies.[7]


c.      Young's Grievances

Young challenges the conditions purportedly existing at the NCCC during the period he was incarcerated there, i.e., from June 30, 2012 to March 10, 2013. (Young Compl., ¶ IV). At

---

[7] In light of this determination, and Tedesco's failure to oppose the County defendants' motion or seek leave to amend his complaint, it is unnecessary to consider the County defendants' remaining contentions seeking dismissal of Tedesco's claims against them, with the exception of his claims against C.O. Hayman.

the time Young filed this action, approximately one (1) year after he was transferred from the NCCC, he was incarcerated at the "Riverview [sic] Correctional Facility." (Id., ¶ II). Young alleges that he did not file a grievance with respect to any of his claims because he "ha[s] not needed to grieve anyone at Riverview [sic] Correctional Facility." (Id., ¶ II.D). In addition, Young alleges: (1) that [he] made complaints with no answer or remedy[,] . . . [and] didn't persue [sic] the situation, knowing the reputation of [the NCCC][,]" (Young Compl., at 5); (2) that after he complained about the condition of his second cell in the satellite building to one of the officers on duty, the officer gave him "a pair of blue gloves and opened the porter closet[,]" but did not give him any protection for his face, leaving him to "suffer[] the vapors while cleaning[,]" (id.); and (3) that when he complained to another officer on duty about the toilet clogging, the officer "brushed [him] off," so Young "got a mop and cleaned up the mess." (Id.) However, there is no explanation in any of Young's complaints for his failure to even file a grievance, much less to properly exhaust all available administrative remedies, during the approximate eight and a half (8 ½) months that he was incarcerated at the NCCC.

Since, *inter alia*, it is clear from the face of Young's complaints that he did not exhaust all available administrative remedies at the NCCC, and there are no factual allegations in his complaints from which it may reasonably be inferred that administrative remedies were not available to him during the approximate eight and a half (8 ½) months that he was incarcerated there; that the County defendants may have forfeited, or may be estopped from raising, the affirmative defense of non-exhaustion; or that special circumstances otherwise exist justifying his failure to exhaust his claims, the branch of the County defendants' motion seeking dismissal of Young's Section 1983 claims against them pursuant to Section 1997e(a) of the PLRA is granted

and Young's Section 1983 claims against the County defendants are dismissed in their entirety with prejudice for his failure to exhaust administrative remedies.[8]

### d.  Fenelon's Grievances

Fenelon alleges that he "grieved the issues two separate times[,]" but "nothing changed." (Fenelon Compl., ¶ II).  Fenelon did not attach copies of those grievances to his complaint; nor was he required to do so.

Since, *inter alia*, it cannot be ascertained from the face of Fenelon's complaint whether, (1) administrative remedies were available to him with respect to the conduct of which he complains; (2) he properly exhausted all administrative remedies that were available to him; or (3) the County defendants may have forfeited, or may be estopped from raising, the affirmative defense of non-exhaustion with respect to Fenelon's claims against them, the branch of the County defendants' motion seeking dismissal of Fenelon's Section 1983 claims against them pursuant to Section 1997e(a) of the PLRA for failure to exhaust administrative remedies is denied.

### e.  Marone's Grievances

Marone alleges, *inter alia*, (i) that he only filed grievances relating to his claims of deliberate indifference to his medical care at the NCCC, but did not file any grievances relating to the conditions purportedly existing at the NCCC because he was "afraid to," (Marone Compl.,

---

[8]  In light of this determination, and Young's failure to oppose the County defendants' motion or seek leave to amend his complaint, it is unnecessary to consider the County defendants' remaining contentions seeking dismissal of Young's claims against them.

¶ II(D)); (ii) that "[i]n the past, [he] . . . [was] retaliated physically and verbally by officers[,]" (id.); and (iii) that whenever he asked for a grievance, the officers would ask him what it was about, so "many times its [sic] unavailable to obtain one."  (Id.)  However, it may not reasonably be inferred from those conclusory allegations that the County defendants took any affirmative action that prevented Marone from availing himself of the NCCC's grievance procedures.  See, e.g. Contino v. City of New York, No. 11 Civ. 8537,  2013 WL 4015816, at * 6 (S.D.N.Y. Aug. 7, 2013) (finding that there was no basis to conclude that the defendants were estopped from raising the defense of failure to exhaust from plaintiff's conclusory assertion that he feared retaliation if he completed the grievance process); McCloud v. Tureglio, No. 9:07-cv-0650, 2008 WL 1772305, at * (N.D.N.Y. Apr. 15, 2008) (finding that the plaintiff's conclusory allegation that he feared retaliation from unidentified officers, and his allegations of physical and verbal threats and acts by the defendants that were unrelated to the filing of any grievance, or even the making of any verbal complaint, by the plaintiff, did not plausibly suggest that the defendants' actions inhibited him from exhausting his administrative remedies).  Moreover, those conclusory allegations are belied by the documentary evidence submitted by Marone in opposition to the County defendants' motion indicating that he was able to file numerous grievances while incarcerated at the NCCC.

Since, *inter alia*, it is clear from the face of Marone's complaint that he did not exhaust all available administrative remedies at the NCCC with respect to his conditions of confinement claims against the County defendants, and there are no factual allegations in his complaint from which it may reasonably be inferred that administrative remedies were not available to him; that the County defendants may have forfeited, or may be estopped from raising, the affirmative

defense of non-exhaustion; or that special circumstances otherwise exist justifying his failure to exhaust those claims, the branch of the County defendants' motion seeking dismissal of Marone's Section 1983 claims against them pursuant to Section 1997e(a) of the PLRA is granted and Marone's Section 1983 claims against the County defendants are dismissed in their entirety with prejudice for his failure to exhaust administrative remedies.

###### f.     Mayo's Allegations

Mayo alleges (i) that his "attempts to get a grievance fell on deaf ears[;] they ask why and then the [sic] say no or just ignore me," (Mayo Compl., ¶ II(D)); and (ii) that "when inmates fill out and send in grievence [sic] they go unanswered." (Id. at ¶ IV). Those conclusory allegations are insufficient to state a plausible claim of estoppel against the County defendants.

Since, *inter alia*, it is clear from the face of Mayo's complaint that he did not exhaust all available administrative remedies at the NCCC, and there are no factual allegations in his complaint from which it may reasonably be inferred that administrative remedies were not available to him; that the County defendants may have forfeited, or may be estopped from raising, the affirmative defense of non-exhaustion; or that special circumstances otherwise exist justifying his failure to exhaust those claims, the branch of the County defendants' motion seeking dismissal of Mayo's Section 1983 claims against them pursuant to Section 1997e(a) of the PLRA is granted and Mayo's Section 1983 claims against the County defendants are dismissed in their entirety with prejudice for his failure to exhaust administrative remedies.[9]

_____

[9] In light of this determination, and Mayo's failure to oppose the County defendants' motion, to seek leave to amend his complaint, or to otherwise prosecute his claims in this action for approximately one (1) year, it is unnecessary to consider the County defendants' remaining

2.       Damages for Mental or Emotional Injury

Section 1997e(e) of the PLRA provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." "Section 1997e(e) applies to all federal civil actions including claims alleging constitutional violations." Thompson v. Carter, 284 F.3d 411, 416 (2d Cir. 2002).

"Because Section 1997e(e) is a limitation on recovery of damages for mental and emotional injury in the absence of a showing of physical injury, it does not restrict a plaintiff's ability to recover compensatory damages for actual injury, nominal or punitive damages, or injunctive and declaratory relief." Thompson, 284 F.3d at 416. "Both in its text and in its caption, Section 1997e(e) purports only to limit recovery for emotional and mental injury, not entire lawsuits." Id. at 418. Thus, "Section 1997e(e) applies to claims in which a plaintiff alleges constitutional violations so that the plaintiff cannot recover damages for mental or emotional injury for a constitutional violation in the absence of a showing of actual physical injury." Id. at 417.

Fenelon does not allege that he sustained any physical injury or actual damages as a result of the conduct challenged in his complaint and he seeks unspecified damages in the amount of five hundred thousand dollars ($500,000.00) "for the wrongful treatment and exposure to the unsafe and unhealthy conditions" purportedly existing at the NCCC. (Fenelon Compl., ¶ V). Absent any indication of the nature of the damages sought by Fenelon, i.e., actual, nominal or

_____

contentions seeking dismissal of Mayo's claims against them.

punitive damages; damages for a physical injury; or damages solely for an emotional injury, Fenelon's complaint fails to state a claim for relief pursuant to Section 1997e(e). Accordingly, the branch of the County defendants' motion seeking dismissal of Fenelon's Section 1983 claims against them pursuant to Section 1997e(e) of the PLRA is granted and Fenelon's claims against the County defendants are dismissed in their entirety pursuant to Section 1997e(e) of the PLRA.[10]

 

C.     Section 1983 Claims

Section 1983 of Title 42 of the United States Code provides, in relevant part:

> "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."

To state a claim under Section 1983, a plaintiff must allege (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010) (quoting Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994)); see also Rehberg v. Paulk, 132 S. Ct. 1497, 1501-02, 182 L. Ed. 2d 593 (2012).

 

1.     Claims Against Individual Defendants in their Individual Capacity

A Section 1983 claim must allege the personal involvement of an individual defendant in

---

[10] Although this dismissal is without prejudice, Fenelon's allegations against the County defendants also fail to state a claim for relief as set forth below.

the purported constitutional deprivation.  See Littlejohn v. City of New York, 795 F.3d 297, 314 (2d Cir. 2015); Raspardo v. Carlone, 770 F.3d 97, 115, 116 (2d Cir. 2014); Spavone v. New York State Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir. 2013).  "An individual cannot be held liable for damages under § 1983 merely because he held a high position of authority, but can be held liable if he was personally involved in the alleged deprivation."  Back v. Hastings On Hudson Union Free Sch. Dist., 365 F.3d 107, 127 (2d Cir. 2004) (quotations and citation omitted); see also Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003) ("[M]ere linkage in the prison chain of command is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." (quotations and citation omitted)); Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003) ("[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on *respondeat superior*. . . . Similarly, proof of linkage in the prison chain of command is insufficient." (quotations and citations omitted)).  "Personal involvement can be established by showing that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring."

Littlejohn, 795 F.3d at 314 (quoting Back, 365 F.3d at 127); accord Grullon, 720 F.3d at 139. "In this Circuit, a 'direct participant' [in the constitutional violation] includes a person who authorizes, orders, or helps others to do the unlawful acts, even if he or she does not commit the acts personally."  Terebesi v. Torreso, 764 F.3d 217, 234 (2d Cir. 2014), cert. denied, 135 S. Ct. 1842, 191 L. Ed. 2d 723 (2015).

"In addition to fulfilling one of th[e] requirements [for supervisory liability], a plaintiff must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation."  Littlejohn, 795 F.3d at 314 (quoting Raspardo, 770 F.3d at 116).

Fenelon and Marone have not alleged the direct participation of Sheriff Sposato in any of the alleged violations of his constitutional rights, nor any basis upon which to find Sheriff Sposato liable in a supervisory capacity.  Likewise, Marone has not alleged the direct participation of Mangano in any of the alleged violations of his constitutional rights, nor any basis upon which to find Mangano liable in a supervisory capacity.  Indeed, there are no factual allegations from which it may reasonably be inferred that Sheriff Sposato or Mangano were ever aware of the purported conditions of which Fenelon and Marone complain, or created a policy or custom under which the purported conditions occurred.  Accordingly, Fenelon's and Marone's complaints fail to state plausible Section 1983 claims against Sheriff Sposato and Mangano in their individual capacity.  See, e.g. Grullon, 720 F.3d at 139 (affirming dismissal of the plaintiff's claims against the warden where the complaint "did not sufficiently allege the [w]arden's personal involvement in or awareness of the health, safety, and communications issues raised by [the plaintiff].")  Thus, the branch of the County defendants' motion seeking dismissal of Fenelon's and Marone's claims against Sheriff Sposato and Mangano in their individual capacity pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and Fenelon's and Marone's claims against Sheriff Sposato and Mangano in their individual capacity are dismissed in their entirety with prejudice for failure to state a claim for relief.

2.     Claims against Individual Defendants in their Official Capacity

"Claims against individual municipal employees in their official capacities [sic] are 'essentially [] claim[s] against the [municipality].'" Greenaway v. County of Nassau, 97 F. Supp. 3d 225, 239 (E.D.N.Y. 2015) (brackets in original) (quoting Curley v. Village of Suffern, 268 F.3d 65, 72 (2d Cir. 2001)); see also Ferreira v. Town of E. Hampton, 56 F. Supp. 3d 211, 236 (E.D.N.Y. 2014) ("Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." (quotations, brackets and citation omitted)).  Accordingly, to the extent that Fenelon asserts claims against Sheriff Sposato in his official capacity, those claims are construed to be against the County and are dismissed as against Sheriff Sposato in his official capacity.  Since Marone asserts claims directly against the County, his claims against Mangano and Sheriff Sposato in their official capacity are dismissed as redundant.  See, e.g. Greenaway, 97 F. Supp. 3d at 239; Ferreira, 56 F. Supp. 3d at 236-37; Cunney v. Bd. of Trustees of Vill. of Grand View, 56 F. Supp. 3d 470, 488 (S.D.N.Y. 2014).


3.     Claims against the NCCC and NCSD

"[U]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and therefore, cannot sue or be sued." Cunney, 56 F. Supp. 3d at 488 (quotations and citation omitted); see also Robischung-Walsh v. Nassau County Police Dep't, 699 F. Supp. 2d 563, 565 (E.D.N.Y. 2010), aff'd, 421 F. App'x 38 (2d Cir. 2011).  Since the NCCC and NCSD are administrative arms of the County of Nassau, they lack the capacity to be sued.  See, e.g. Jones v. Nassau County Corr. Inst., Nos. 14-cv-1217, 14-cv-1562, 2014 WL 1277908, at * 4 (E.D.N.Y. Mar. 26, 2014)

(holding that the Nassau County Jail is merely an administrative arm of the County of Nassau and "lack[s] any independent legal identity apart from Nassau County"); Hawkins v. Nassau County Corr. Facility, 781 F. Supp. 2d 107, 109 at n. 1 (E.D.N.Y. 2011) (holding that the NCCC "is an 'administrative arm[]' of * * * the County of Nassau, and thus lacks the capacity to be sued as a separate entity" (brackets in original)); Varricchio v. County of Nassau, 702 F. Supp. 2d 40, 50 (E.D.N.Y. 2010) (dismissing claims against the NCSD). Accordingly, Marone's claims against the NCCC and NCSD are dismissed in their entirety with prejudice for failure to state a claim for relief.

### 4.      Municipal Liability

"[A] municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." Jones v. Town of East Haven, 691 F.3d 72, 80 (2d Cir. 2012); accord Matusick v. Erie County Water Auth., 757 F.3d 31, 62 (2d Cir. 2014). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee." Jones, 691 F.3d at 80; see also Connick v. Thompson, 563 U.S. 51, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) (holding that under Section 1983, governmental bodies are not vicariously liable for their employees' actions); Los Angeles County, Cal. v. Humphries, 562 U.S. 29, 131 S. Ct. 447, 452, 178 L. Ed. 2d 460 (2010) ("[A] municipality cannot be held liable solely for the acts of others, e.g., *solely* because it employs a tortfeasor." (emphasis in original) (quotations and citation omitted)); Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Thus, to prevail on a Section 1983 claim

against a municipal entity, a plaintiff must show: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008); see also Connick, 563 U.S. 51, 131 S. Ct. at 1359 ("Plaintiffs who seek to impose liability on local governments under Section 1983 must prove that 'action pursuant to official municipal policy' caused their injury." (quoting Monell, 436 U.S. at 691, 98 S. Ct. 2018)); Humphries, 562 U.S. 29, 131 S. Ct. at 452 ("[A] municipality may be held liable when execution of a government's *policy or custom* . . . inflicts the injury." (emphasis in original) (quotations and citation omitted)).

"A municipal policy may be pronounced or tacit and reflected in either action or inaction." Cash v. County of Erie, 654 F.3d 324, 333 (2d Cir. 2011). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick, 563 U.S. 51, 131 S. Ct. at 1359. In addition, municipal liability can be established "by showing that a policymaking official ordered or ratified the employee's actions - either expressly or tacitly." Jones, 691 F.3d at 81. "Thus, a plaintiff can prevail against a municipality by showing that the policymaking official was aware of the employee's unconstitutional actions and consciously chose to ignore them." Id. To establish such deliberate indifference, "a plaintiff must show that a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights." Id. "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action[,]" Connick, 563 U.S. 51, 131 S. Ct.

at 1360 (quotations and citation omitted), and "requires a showing that the official made a conscious choice, and was not merely negligent." Jones, 691 F.3d at 81; see also Cash, 654 F.3d at 334.

To state a claim for municipal liability under Section 1983, a plaintiff must allege more than that a municipal policy or custom exists. Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) ("[T]he mere assertion that a municipality has * * * a custom or policy is insufficient [to withstand dismissal] in the absence of allegations of fact tending to support, at least circumstantially, such an inference * * *." (quotations, alterations and citation omitted)); accord Zherka v. City of New York, 459 F. App'x 10, 12 (2d Cir. Jan. 19, 2012) (summary order). "Rather, a plaintiff must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." Santos v. New York City, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012); accord Triano v. Town of Harrison, N.Y., 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012).

Fenelon's and Marone's complaints are devoid of any factual allegations from which it may reasonably be inferred (1) that a formal policy, officially endorsed by the County or the NCCC, existed with respect to the conditions of which they complain; (2) that any policymaking official of the County or the NCCC (a) took any action or made any decision which caused the alleged constitutional violations, or (b) failed to properly train or supervise their subordinates with deliberate indifference to the rights of the prisoners who come into contact with them; or (3) that the conditions at the NCCC of which they complain were so persistent and widespread as to practically have the force of law. Accordingly, the branch of the County defendants' motion seeking dismissal of Fenelon's and Marone's Section 1983 claims against the County, or as

construed to be against the County, pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure is granted and Marone's Section 1983 claims against the County, and Fenelon's claims

as construed to be against the County, are dismissed in their entirety with prejudice for failure to

state a claim for relief.[11]


5.      Deprivation of a Constitutional or Federally Protected Right

"Although the Constitution does not require 'comfortable' prison conditions, the

conditions of confinement may not 'involve the wanton and unnecessary infliction of pain.'"

Walker, 717 F.3d at 125 (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 349, 101 S. Ct. 2392,

69 L. Ed. 2d 59 (1981)); see also Willey v. Kirkpatrick, 801 F.3d 51, 66 (2d Cir. 2015) ("The

Eighth Amendment does not mandate comfortable prisons, . . . but prisons nevertheless must

provide humane conditions of confinement[.]" (quotations and citations omitted)).  Prison

officials have a duty, imposed under either the Eighth Amendment with respect to convicted

prisoners or the Due Process Clauses of the Fifth and Fourteenth Amendments with respect to

pretrial detainees in federal custody and state custody, respectively,[12] to "ensure that inmates

receive adequate food, clothing, shelter, and medical care, and [to] take reasonable measures to

guarantee the safety of the inmates."  Farmer v. Brennan, 511 U.S. 825, 832-33, 114 S. Ct. 1970,

_____

[11]  In light of this determination, and Fenelon's failure to oppose the County defendants' motion, or seek leave to amend his complaint, it is unnecessary to consider the County defendants' remaining contentions seeking dismissal of Fenelon's claims against them.

[12]  The same "deliberate indifference" standard applies to claims challenging prison conditions regardless of whether the claim is brought under the Eighth Amendment or the Due Process Clauses of the Fifth and Fourteenth Amendments.  See Caiozzo v. Koreman, 581 F.3d 63, 70-1 (2d Cir. 2009).

128 L. Ed. 2d 811 (1994) (quotations and citations omitted).

a.     Conditions of Confinement Claims

To state a Section 1983 claim based upon the conditions of confinement, "an inmate must allege that: (1) objectively, the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) subjectively, the defendant official acted with a sufficiently culpable state of mind [], such as deliberate indifference to inmate health or safety." Walker, 717 F.3d at 125 (quotations and citation omitted); accord Willey, 801 F.3d at 66.

With respect to the objective element, prisoners may not be deprived "of their 'basic human needs– e.g., food, clothing, shelter, medical care, and reasonable safety[,]'" Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002) (quoting Helling v. McKinney, 509 U.S. 25, 32, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993)); nor may they be exposed "to conditions that 'pose an unreasonable risk of serious damage to their future health.'" Id. (quoting Helling, 509 U.S. at 35, 113 S. Ct. 2475); accord Jabbar v. Fischer, 683 F.3d 54, 57 (2d Cir. 2012). "Because society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a 'conditions-of-confinement' claim." Blyden v. Mancusi, 186 F.3d 252, 263 (2d Cir. 1999); see also Sims v. Artuz, 230 F.3d 14, 21 (2d Cir. 2000) ("To prevail on a claim based on the conditions of his confinement, a prisoner must show extreme deprivations, because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society." (quotations, alterations and citation omitted)). "To meet the objective element [of a conditions-of-confinement claim], the inmate must show that the conditions, either alone or

in combination, pose an unreasonable risk of serious damage to his health." <u>Walker</u>, 717 F.3d at 125. "[T]here is no static test to determine whether a deprivation is sufficiently serious; the conditions themselves must be evaluated in light of contemporary standards of decency." <u>Id.</u> (brackets in original) (quoting <u>Jabbar</u>, 683 F.3d at 57); <u>see also</u> <u>Phelps</u>, 308 F.3d at 185 ("Ultimately, to establish the objective element of an Eighth Amendment claim, a prisoner must prove that the conditions of his confinement violate contemporary standards of decency.")

Moreover, "conditions of confinement may be aggregated to rise to the level of a constitutional violation, but 'only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise.'" <u>Walker</u>, 717 F.3d at 125 (quoting <u>Wilson v. Seiter</u>, 501 U.S. 294, 304, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)).

"To meet the subjective element, the plaintiff must show that the defendant acted with 'more than mere negligence.'" <u>Walker</u>, 717 F.3d at 125 (quoting <u>Farmer</u>, 511 U.S. at 835, 114 S. Ct. 1970); <u>accord</u> <u>Jabbar</u>, 683 F.3d at 57. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 837, 114 S. Ct. 1970. "An official's failure to alleviate a significant risk that he should have perceived but did not [] cannot be condemned as the infliction of punishment."[13] <u>Jabbar</u>, 683 F.3d at 57 (quotations, alterations

---

[13] "To establish a due process violation of the Fourteenth Amendment, an inmate must show that a government official made a deliberate decision to deprive him of his life, liberty, or property." <u>Jabbar</u>, 683 F.3d at 57. Thus, "[m]erely negligent conduct does not give rise to claims under the

and citation omitted).  "Evidence that a risk was obvious or otherwise must have been known to a defendant may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk."  Walker, 717 F.3d at 125 (quotations and citation omitted).

i.      Objective Element

The NCCC's failure to provide Marone with more than one uniform for two (2) weeks, i.e., from May 17, 2014 to May 24, 2014, (see Marone Compl., ¶ IV(1)), does not rise to the level of a constitutional violation.  See, e.g. McCorkle v. Walker, 871 F. Supp. 555, 557 (N.D.N.Y. 1995) (finding that the lack of a change of underwear for fifteen (15) days did not rise to the level of a constitutional violation); Chavis v. Fairman, 51 F.3d 275, 1995 WL 156599, at * 5 (7th Cir. Apr. 6, 1995) (unpublished disposition) (finding that wearing the same uniform for three weeks did "not amount to the sort of serious deprivations that drag [the plaintiff's] conditions of confinement below 'the minimal civilized measure of life's necessities.'"); McGee v. Pallito, No. 1:10-cv-11, 2011 WL 6291954, at * 8 (D. Vt. Aug. 3, 2011), report and recommendation adopted by 2011 WL 6294202 (D. Vt. Dec. 15, 2011) (finding that the plaintiff's allegation that he had to wear the same clothes for approximately three months did not rise to the level of a constitutional violation); Roberts v. Dep't of Corr., No. 94 C 7002, 1996 WL 526779, at * 4 (N.D. Ill. Sept. 12, 1996) (finding that a thirteen (13)-day period without a change of clothing "is nothing more than a temporary inconvenience and hardly rises to the level of [a constitutional violation].")

Moreover, Marone's allegations, (1) that the repeated slamming and banging of the cell gates during "count" hurt his ears and caused him mental distress; and (2) that the shoes issued to

---

Fourteenth Amendment."  Id.

him by the NCCC were the wrong size and hurt his feet, are insufficient, without more, to satisfy the objective element of a conditions of confinement claim.  See, e.g. Phelan v. Durniak, No. 9:10-cv-666, 2014 WL 4759937, at * 10 (N.D.N.Y. Sept. 24, 2014) (holding that the plaintiff's allegations that he was unable to sleep and suffered migraines because of the noise of the other inmates' televisions and radios late at night failed to satisfy the objective element of an Eighth Amendment claim); Martin v. City of New York, No. 11 Civ. 600, 2012 WL 1392648, at * 9 (S.D.N.Y. Apr. 20, 2012) (finding that the DOC's issuance of the wrong shoe size did not satisfy the objective element of an Eighth Amendment claim); Williams v. Dep't of Corr., No. 11 Civ. 1515, 2011 WL 3962596, at * 4 (S.D.N.Y. Sept. 7, 2011) (accord); Hallett v. City of New York, No. 08 Civ. 2831, 2010 WL 1379733, at * 6 (S.D.N.Y. Mar. 26, 2010) (accord).

However, Marone's allegations that there was mold in his cell, and on the mattress on which he slept for two (2) days; poor air ventilation in his cell; and "roach infestation" in the NCCC are arguably sufficient, in combination, to satisfy the objective element of a Section 1983 claim.  See, e.g. Gaston v. Coughlin, 249 F.3d 156, 166 (2d Cir. 2001) (holding that allegations of "rodent infestation" may rise to the level of a constitutional violation); Poole v. Nassau County Jail, No. 15-cv-2825, 2016 WL 1089384, at * 3 (E.D.N.Y. Mar. 21, 2016) (holding that allegations that the cells and kitchen areas of the jail are infested with, *inter alia*, roaches, and that the cells have mold, lead paint, and broken heaters, in combination, are sufficient to satisfy the objective element of the plaintiff's conditions of confinement claim); Dartz v. Vienna Correctional Center, No. 13-cv-00889-JPG, 2013 WL 5435806, at * 1 (S.D. Ill. Sept. 30, 2013) (holding that allegations, *inter alia*, that the plaintiff is being exposed to asbestos and mold, and that water drips from the ceiling and there is black mold, "are actionable Eighth Amendment

claims"); <u>Dillingham v. Schofield</u>, No. 2:11-cv-07, 2011 WL 3664470, at * 8 (E.D. Tenn. Aug. 19, 2011) (holding that claims of, *inter alia*, black mold "may arguably state a claim for relief").

Moreover, it is assumed, for purposes of this motion only, that Marone's claim that he did not have a working toilet in his cell for three (3) days, causing him constipation and stomach pains, (Marone Compl. at 4a, ¶ 4), rises to the level of a constitutional violation. <u>See</u>, <u>e.g.</u> <u>D'Attore v. New York City</u>, No. 10 Civ. 3102, 2011 WL 3629166, at * 5 (S.D.N.Y. June 2, 2011), <u>report and recommendation adopted as modified by</u> 2011 WL 3629018, at * 1 (S.D.N.Y. Aug. 17, 2011) (finding that the plaintiff's allegations "that the toilets were broken, thus forcing him to endure pain[] waiting to go to the bathroom" were sufficient to satisfy the objective element of a deliberate indifference claim).

### ii.      Subjective Element

Nonetheless, Marone's complaint is devoid of any factual allegations from which it may reasonably be inferred that the County defendants acted with the requisite culpable state of mind. Indeed, the complaint does not contain any explanations for the challenged conduct of the County defendants or conditions at the NCCC, or any factual allegations from which the explanations for such conduct or conditions can reasonably be inferred, <u>e.g.</u>, for why Marone was issued only one (1) uniform and the wrong-sized shoes; why he was forced to sleep on a mattress with mold on it for two (2) days; why he was moved to a new cell on May 14, 2014; why the unidentified "problem" with the toilet in that new cell was not resolved for three (3) days; why the cell gates were banged during "count;" or how long the mold, clogged air vents and roach infestation existed at the NCCC.

Moreover, Marone does not allege, *inter alia*, that he, or any other inmate, ever complained or filed a grievance about (a) the failure to be issued two (2) uniforms or to be allowed to possess "personal sneakers" because the jail-issued shoes were the wrong size; (b) the mold and clogged air vents in the cells, or "roach infestation;" or (c) the banging of the cell gates during "count." Although Marone conclusorily alleges that he asked "multiple officers" for a new mattress, but they never got back to him, (Marone Compl., at IV, ¶ 1), he does not identify those officers or indicate when he complained to them. In any event, it is clear that after two (2) days, Marone was provided with a different mattress, as he alleges that he was only "forced to sleep" on the moldy mattress from May 10, 2014 to May 12, 2014. (Id.)

Similarly, Marone conclusorily alleges that he asked "numerous officers" to call maintenance about the unidentified "problem" with the toilet in the cell into which he was moved on May 14, 2014, and that those officers told him that they would do so. (Id.) Although Marone alleges that "it never got done," (id.), it is clear that the problem was somehow resolved within three (3) days, when he no longer had "to hold [his] bowel movements." (Id.)

Since it may not reasonably be inferred from any of the factual allegations in Marone's complaint that "there was any intent to punish or other improper motivation," behind the conduct and conditions of which he complains, Jabbar, 683 F.3d at 58; or that the County defendants, i.e., the County, Mangano, the NCCC and Sheriff Sposato, knew, or must have known, that such conditions even existed at the NCCC, much less posed an excessive risk to the health or safety of inmates exposed to them, Marone's complaint fails to satisfy the subjective element of a Section 1983 deliberate indifference claim. Accordingly, the branch of the County defendants' motion seeking dismissal of Marone's Section 1983 conditions of confinement claims against them

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and Marone's Section 1983 conditions of confinement claims against the County defendants are dismissed in their entirety with prejudice for failure to state a claim for relief.

### b. Tedesco's Claims against C.O. Hayman

C.O. Hayman's alleged verbal harassment and interference with Tedesco's medical examination on one (1) occasion also do not rise to the level of a constitutional violation, particularly since Tedesco does not allege (i) that C.O. Hayman's interference with his medical examination caused a substantial risk of harm to him, see, e.g. Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003) ("When the basis for a prisoner's [deliberate indifference] claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious to support a[] [deliberate indifference] claim" (emphasis, quotations and citations omitted)); Bellotto v. County of Orange, 248 F. App'x 232, 237 (2d Cir. Sept. 25, 2007) (summary order) (holding that where the "risk of harm" that the plaintiff faced as a result of an interruption in medical treatment is "not substantial," there is no constitutional violation); or (ii) that the purported harassment caused him any injury. See, e.g. Little v. Municipal Corp., 51 F. Supp. 3d 473, 500 (S.D.N.Y. 2014) ("[V]erbal harassment or profanity alone, unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." (quotations and citation omitted)); Banks v. Annucci, 48 F.

Supp. 3d 394, 406 (N.D.N.Y. 2014) ("Verbal harassment and name calling, absent physical injury, are not constitutional violations cognizable under Section 1983.")  Accordingly, Tedesco's Section 1983 claims against C.O. Hayman are dismissed in their entirety with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief.

c.      Marone's Denial of Religious Services Claim

Marone's allegation that he was not allowed to attend religious services on one (1) occasion also does not rise to the level of a constitutional violation.  See, e.g. Lopez v. Cipolini, No. 14-cv-2441, 2015 WL 5732076, at * 11 (S.D.N.Y. Sept. 30, 2015) (holding that the plaintiff's preclusion from two (2) religious services is not, without more, a substantial burden on the plaintiff's free exercise of religion); Jean-Laurent v. Los, No. 12-cv-1325, 2015 WL 1015383, at * 6 (W.D.N.Y. Mar. 9, 2015) ("Courts within the Second Circuit have consistently held that missing two religious services does not pose a substantial burden on an inmate's religion."); Shapiro v. Cmty. First Servs., Inc., No. 11-cv-4061, 2014 WL 1276479, at * 11 (E.D.N.Y. Mar. 27, 2014) ("[N]ot permitting a prisoner to attend two religious services is a *de minimis*, or insubstantial, burden on an inmate's ability to freely exercise his religion." (quotations and citation omitted)); Smith v. Graziano, No. 9:08-cv-469, 2010 WL 1330019, at * 9 (N.D.N.Y. Mar. 16, 2010) (holding that the cancellation of two (2) religious services did not violate, *inter alia*, the plaintiff's free exercise rights under the First Amendment).  Accordingly, Marone's Section 1983 claim against the County defendants based upon the refusal to allow him to attend religious services on May 17, 2014 is dismissed in its entirety with prejudice pursuant

to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief.[14]

III.     CONCLUSION

For the reasons set forth above, the County defendants' motion seeking dismissal of Tedesco's, Young's, Fenelon's, Marone's and Mayo's claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and the PLRA is granted to the extent that, (1) with the exception of Tedesco's claims against C.O. Hayman, Tedesco's claims against the County defendants are dismissed in their entirety with prejudice for failure to exhaust administrative remedies; (2) Tedesco's Section 1983 claims against C.O. Hayman are dismissed in their entirety with prejudice for failure to state a claim for relief; (3) Young's and Mayo's claims against the County defendants are dismissed in their entirety with prejudice for failure to exhaust administrative remedies; (4) Fenelon's claims against the County defendants are dismissed in their entirety with prejudice for failure to state a claim for relief; and (5) Marone's claims against the County defendants are dismissed in their entirety with prejudice for failure to exhaust administrative remedies and failure to state a claim for relief, and the motion is otherwise denied.  There being no just reason for delay, the Clerk of the Court shall enter judgment in favor of the County defendants on Tedesco's claims against them pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.  The Clerk of the Court shall: (1) sever Tedesco's remaining claims against the NUMC defendants from this consolidated action and re-open the case under docket number 14-cv-1054 for the purpose of proceeding with Tedesco's claims against the NUMC

---

[14]  In light of this determination, it is unnecessary to consider the County defendants' remaining contentions seeking dismissal of Marone's claims against them.

defendants; and (2) sever Young's, Fenelon's, Marone's and Mayo's claims from this consolidated action and re-open those cases under docket numbers 14-cv-1675, 14-cv-1143, 14-cv-3786 and 14-cv-3861, respectively, for the purpose of entering judgment in favor of the County defendants. Pursuant to Rule 77(d)(1) of the Federal Rules of Civil Procedure, the Clerk of the Court is directed to serve notice of entry of this order upon all current parties to the consolidated action in accordance with Rule 5(b) of the Federal Rules of Civil Procedure.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed.2d 21 (1962).

SO ORDERED.

_____/s/_____
Sandra J. Feuerstein
United States District Judge

Dated: March 31, 2016
        Central Islip, New York