F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  SEP 07 2018  ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JOVANY HENRIUS, et al.

                Plaintiffs,

      -against-                                      13-CV-1192 (SJF)(SIL)

COUNTY OF NASSAU, et al.                        **OPINION and ORDER**

                Defendants.
------------------------------------------------------------------X
FEUERSTEIN, District Judge:

      Pending before the Court is the unopposed motion of defendants Michael J. Sposato ("Sposato"), individually and in his official capacity as Sheriff of Nassau County; the County of Nassau ("the County")[1]; "John Doe, Superintendent of Nassau County Jail" (the "Superintendent")[2]; Corporal Hardy and "John Doe, Officers" ("Correction Officers") (collectively, "defendants"), seeking, *inter alia*, to dismiss the claims of consolidated *pro se* plaintiff Sharod Williams ("Williams"): (i) against Sposato, the Superintendent, Corporal Hardy and the Correction Officers (collectively, "the individual defendants") in their official capacity; (ii) against Sposato and the Superintendent in their individual capacity; and (iii) as construed to be against the County, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docket Entry ["DE"] 519). Although Williams was served with defendants' motion on May

---

[1] Although consolidated plaintiff Sharod Williams did not name the County as a defendant in either his original complaint or his amended complaint, as set forth below, his claims against the individual defendants in their official capacity are construed to be asserted against the County.

[2] Although defendants indicate in their memorandum of law that "[t]here is no position titled, or otherwise known as, 'Superintendent of Nassau County Jail,'" (Def. Mem. at 3), since the Court's review on this motion is limited to the pleadings, it is assumed, for the purposes of this motion only, that there is such an individual as alleged in the pleadings.

1

11, 2018, (*see* DE 513), he has not filed any response to the motion, nor sought an extension of time to do so. Accordingly, by order dated July 5, 2018, the Court granted defendants' application to file the motion as unopposed. For the reasons set forth below, defendants' motion to dismiss is granted in its entirety.

I.  Background

    A.  Williams's Amended Complaint

In his amended complaint, Williams alleges: (i) that "every time" he asked "the defendant officers" for a grievance, they would say that his claims "were a 'non-grievable issue[,]'" (Amended Complaint ["Am. Compl."], ¶ 8); (ii) that "[a]t all relevant times, [he] made complaints to the prison authorities at the Nassau County Jail ['the NCCC'] . . . [and] told the Supervisors of his claims and grievances when said Supervisors came to the housing unit[,]" (*id.*, ¶¶ 9-10); (iii) that he "was told by defendants to stop with the complaints or things would get worse for [him]," (*id.*, ¶ 11); (iv) that he nonetheless "continued with his grievances and complaints and, in direct retaliation, the Defendants threatened [him] with worsened conditions and did in fact carry out their threats, causing harm to [him]," (*id.*, ¶ 12); (v) that at the time of his initial complaint, he had been incarcerated in the NCCC for thirty-five (35) months and was "subjected to very harsh and foul living conditions[,] . . . include[ing] dirty showers, mice droppings on the food trays, as well as roaches and other vermin, cold winters, very hot summers, and overall conditions that were cruel and unusual and unsatisfactory for the basic standards of decent human habitability[,]" (*id.*, ¶¶13-14); (vi) that "[a]s a direct result of [his] continued and persistent complaints to various supervisors, on December 3, 2012, [he] was sent

2

to the main, where the living Conditions were much worse[,]" (*id.,* ¶ 15); (vii) that "[o]nce in the 'Main,' the Defendant Officers told [him] not to ask for any grievances or complain about anything or things 'would get bad' for [him]," (*id.*, ¶ 16); (viii) that on May 9th 2013, "[w]hile [he] was still being held in the Main on B3C7 cell, [he] complained to Corporal Hardy about a foul smell coming out of the vents[] . . . [and] Corporal Hardy[] told [him] to 'stop being a bitch' and 'just deal with it[,]'" (*id.*, ¶ 17); (ix) that when he asked for a grievance, he "was told no," (*id.*); (x) that "hours later at 9:45 pm, while on B3C company while walking back to his cell for lock in, [he] was assaulted from behind by persons unknown and pushed into his cell bleeding really badly[,]" (*id.*, ¶ 18); (xi) that "[w]hen the Defendant Officers responded, [they] opened [his] cell and took [him] off the company[,]" (*id.*); (xii) that "[o]nce in the hallway, . . . Corporal Hardy stated to [him]: 'It looks like things got really bad for you tonight. Now you have more to worry about than the smell of the Company[,]" (*id.*, ¶ 19); (xiii) that he was then taken to the medical unit and treated for four (4) puncture wounds and "sent to the bullpens where pictures were taken[,]" (*id.*, ¶ 20); and (xiv) that he was seen by a nurse in the medical unit, who (A) told him that he "had four (4) puncture wounds to his forehead and chin[,] . . . [B] stopped the bleeding, [C] cleaned the wounds and [D] gave [him] five (5) or more sutures for the wounds and a tetanus shot." (*Id.*, ¶ 21).

Williams further alleges that "[d]efendants, and in particular [Sposato] as supervisor, failed to remedy wrongs as against [him] after being informed of the wrongs through a report[;] . . . have 'personal involvement' in the failing to allow [him] to seek meaningful redress of the claims made[;] . . . [and] was [sic] acting as a policy maker for the County . . . with respect to the events at issue in th[e] complaint." (Am. Compl., ¶¶ 23-24). In addition, Williams alleges that

3

"[d]efendants's [sic] actions establish the policy or custom or practice in [the County], that [d]efendants intentionally precluded Plaintiff from seeking redress through the administrative remedy program and failed, as a result of the Defendants' deliberate indifference to protect Plaintiff from the violent actions of other inmates." (*Id.*, ¶ 25). Williams seeks compensatory damages in the amount of one million dollars ($1,000,000.00) and punitive damages in the amount of fifty million dollars ($50,000,000.00).

B. Procedural History

In July 2013, Williams, a former inmate at the NCCC, filed a civil rights complaint against defendants pursuant to 42 U.S.C. § 1983 ("Section 1983"), which was initially assigned docket number 13-cv-4247. By order dated October 1, 2013, Williams's action was consolidated with the case assigned docket number 13-cv-1192, which is now called *Henrius v. County of Nassau* ("the *Henrius* case")[3], the lead case in a number of consolidated cases challenging the conditions of confinement purportedly existing at the NCCC that were commenced on or after February 28, 2013.

On June 22, 2017, defendants filed a motion pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for partial judgment on the pleadings as against Williams, (DE 464), which was subsequently referred to the Honorable Steven I. Locke, United States Magistrate Judge, for a report and recommendation. On February 15, 2018, Magistrate Judge Locke issued a report

---

[3] At the time Williams's complaint was consolidated, the lead case was entitled *Reid v. Nassau County Sheriff's Department, et al.* The name was subsequently changed after Reid's claims were dismissed in their entirety with prejudice pursuant to an order dated August 20, 2014. (Doc. No. 149 in lead case).

4

and recommendation (the "Report"), *inter alia*, recommending: (i) that Williams's claims (A) against the individual defendants in their official capacity be dismissed and construed to be asserted as against the County, (B) as construed to be against the County be dismissed without prejudice because his original complaint failed to contain any factual allegations from which an official policy or custom resulting in a violation of his constitutional rights could reasonably be inferred, (C) against the Superintendent in his individual capacity be dismissed with prejudice because his original complaint alleged no facts demonstrating the Superintendent's personal involvement in the purported constitutional violations, and (D) against Sposato in his individual capacity be dismissed without prejudice due to his failure to allege the personal involvement of Sposato in the purported constitutional violations; and (ii) that Williams be granted leave to amend his complaint to re-plead his claims against Sposato in his individual capacity and the County.

By letter dated February 20, 2018, (DE 493), defendants advised the Court that they did not intend to file objections to the Report. Williams did not file any objections to the Report and filed an amended complaint in accordance therewith on or about April 6, 2018.

By order dated May 10, 2018, this Court, *inter alia*, accepted so much of the Report as recommended that defendants' motion for partial judgment on the pleadings as to Williams be granted and, for the reasons set forth therein, dismissed Williams's claims in his original complaint in their entirety without prejudice.

Defendants now move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Williams's claims in the amended complaint against the individual defendants in their official capacity; Sposato and the Superintendent in their individual capacity; and as construed to

5

be against the County.  Although Williams was served with defendants' motion on May 11, 2018, he has not filed any response to the motion, nor sought an extension of time to do so. Accordingly, by order dated July 5, 2018, the Court granted defendants' application to file the motion as unopposed.

II.  DISCUSSION

  A.  Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.* at 679 (brackets in original) (quoting Fed. R. Civ. P. 8(a)(2)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (quoting *Twombly*,

550 U.S. at 555, 127 S. Ct. 1955).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 550 U.S. 544, 127 S. Ct. at 1959.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff.  *See Kim v. Kimm*, 884 F.3d 98, 102-03 (2d Cir. 2018); *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017).  However, this tenet "is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937; *see also Allen v. Credit Suisse Sec. (USA) LLC*, 895 F.3d 214, 222 (2d Cir. 2018) ("Bald assertions and conclusions of law will not suffice to avoid dismissal, . . . nor will factual allegations that are wholly conclusory." (quotations, alterations and citations omitted)).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937.  "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id.*; *see also Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017) (holding that "legal conclusions couched as factual allegations" are given no effect).

Nonetheless, a plaintiff is not required to plead "specific evidence or extra facts beyond what is needed to make the claim plausible."  *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120-

7

1 (2d Cir. 2010); *accord Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 729-30 (2d Cir. 2013). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937.

Moreover, although *pro se* litigants are "entitled to special solicitude," and their pleadings must be construed liberally "to raise the strongest arguments that they suggest[,] . . . a *pro se* complaint must allege enough facts to state a claim to relief that is plausible on its face." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quotations and citation omitted); *see also Teichmann v. New York*, 769 F.3d 821, 825 (2d Cir. 2014) ("Although we liberally construe [the plaintiff's] pro se amended complaint, . . . we still require that he plead facts sufficient to state a claim to relief that is plausible on its face." (quotations and citations omitted)).

In deciding a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *see also Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230-31 (2d Cir. 2016).

8

B.  Section 1983 Claims

Section 1983 of Title 42 of the United States Code provides, in relevant part:

> "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."

To state a claim under Section 1983, "a plaintiff must allege that (1) the defendant was a state actor, *i.e.*, acting under color of state law, when he committed the violation and (2) the defendant deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States." *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015) (quotations and citation omitted); *see also Rehberg v. Paulk*, 566 U.S. 356, 361, 132 S. Ct. 1497, 182 L. Ed. 2d 593 (2012).

1.  Individual Capacity Claims

A Section 1983 claim must allege the personal involvement of an individual defendant in the purported constitutional deprivation. *See Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016); *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015). "A defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Victory*, 814 F.3d at 67 (quotations, alterations and citation omitted); *see also Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004) ("An individual cannot be held liable for damages under § 1983 merely because he held a high position of authority, but can be held liable if he was personally involved in the alleged deprivation." (quotations and citation omitted)); *Richardson v. Goord*, 347 F.3d 431, 435

9

(2d Cir. 2003) ("[M]ere linkage in the prison chain of command is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." (quotations and citation omitted)).

"Personal involvement can be established by showing that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring."

*Littlejohn*, 795 F.3d at 314 (ellipsis in original) (quoting *Back*, 365 F.3d at 127); *accord Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013). "[D]irect participation," in this context, requires "intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." *Victory*, 814 F.3d at 67. However, "[i]n this Circuit, a 'direct participant' [in the constitutional violation] includes a person who authorizes, orders, or helps others to do the unlawful acts, even if he or she does not commit the acts personally." *Terebesi v. Torreso*, 764 F.3d 217, 234 (2d Cir. 2014).

"In addition to fulfilling one of th[e] requirements [for supervisory liability], a plaintiff must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation." *Littlejohn*, 795 F.3d at 314 (quoting *Raspardo v. Carlone*, 770 F.3d 97, 115, 116 (2d Cir. 2014)).

Williams has not alleged the direct participation of Sposato or the Superintendent in any of the alleged violations of his constitutional rights, nor any basis upon which to find either of those defendants liable in a supervisory capacity. Indeed, there are no factual allegations in the

10

amended complaint from which it may reasonably be inferred that Sposato or the Superintendent were ever aware of the purported conditions of which Williams complains, or created a policy or custom under which the purported conditions occurred. Williams's conclusory allegations that "at all relevant times," he made unspecified complaints to unidentified "prison authorities" and "supervisors" at the NCCC, (*See* Am. Compl., ¶¶ 9-10, 15), are insufficient to state a plausible Section 1983 claim against Sposato and the Superintendent in their individual capacity. Moreover, Williams's allegations (i) that "[d]efendants, and in particular [Sposato] as supervisor, failed to remedy wrongs as against [him] after being informed of the wrongs through a report[,] . . . have 'personal involvement' in the failing to allow [him] to seek meaningful redress of the claims made[,] . . . was [sic] acting as a policy maker for the County . . . with respect to the events at issue in th[e] complaint[,] . . . intentionally precluded [him] from seeking redress through the administrative remedy program and failed, as a result of [their] deliberate indifference, to protect [him] from the violent actions of other inmates[,]" (Am. Compl., ¶¶ 23-25); and (ii) that "[d]efendants's [sic] actions establish the policy or custom or practice in [the County]," (i*d.*, ¶ 25), constitute the type of "formulaic recitation of the elements of a cause of action," devoid of "further factual enhancement," that the Supreme Court held is insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937; *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. Accordingly, Williams's amended complaint fails to state plausible Section 1983 claims against Sposato and the Superintendent in their individual capacity. *See, e.g. Grullon*, 720 F.3d at 139 (affirming dismissal of the plaintiff's claims against the warden where the complaint "did not sufficiently allege the [w]arden's personal involvement in or awareness of the health, safety, and communications issues raised by [the plaintiff].") Thus, the

11

branches of defendants' motion seeking dismissal of Williams's claims against Sposato and the Superintendent in their individual capacity pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure are granted and Williams's claims against Sposato and the Superintendent in their individual capacity are dismissed in their entirety with prejudice for failure to state a claim for relief.

### 2. Official Capacity Claims

"Claims against individual municipal employees in their official capacities [sic] are 'essentially [] claim[s] against the [municipality].'" *Greenaway v. County of Nassau*, 97 F. Supp. 3d 225, 239 (E.D.N.Y. 2015) (brackets in original) (quoting *Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001)); *see also Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) ("Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent. . . . It is not a suit against the official personally, for the real party in interest is the entity." (quotations and citation omitted)). Accordingly, the branch of defendants' motion seeking dismissal of Williams's Section 1983 claims against the individual defendants in their official capacity pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and those claims are construed to be against the County and are dismissed with prejudice as against the individual defendants in their official capacity. *See, e.g. Reynolds v. Giuliani*, 506 F.3d 183, 191 (2d Cir. 2007) ("An official capacity suit against a public servant is treated as one against the governmental entity itself."); *Coon v. Town of Springfield, Vt.*, 404 F.3d 683, 687 (2d Cir. 2005) ("[A] § 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself.")

### 3. Municipal Liability

"[A] municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see also Mitchell v. City of New York*, 841 F.3d 72, 80 (2d Cir. 2016) ("To prevail [on a Section 1983 municipal liability claim], a plaintiff must identify the existence of a municipal policy or practice that caused the alleged constitutional violation.")  "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee." *Jones*, 691 F.3d at 80; *see also Connick v. Thompson*, 563 U.S. 51, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) (holding that under Section 1983, governmental bodies are not vicariously liable for their employees' actions); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor– or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." (emphasis in original)).

"A plaintiff must also demonstrate a sufficient causal relationship between the [constitutional] violation and the municipal policy or practice." *Mitchell*, 841 F.3d at 80; *see also Outlaw v. City of Hartford*, 884 F.3d 351, 373 (2d Cir. 2018) ("[I]nherent in the principle that a municipality can be liable under § 1983 only where its policies are the moving force behind the constitutional violation . . . is the concept that the plaintiff must show a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." (quotations, alterations and citations omitted)).  Thus, to prevail on a Section 1983 claim against a municipal entity, a plaintiff must show: "(1) actions taken under color of law; (2) deprivation

13

of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008).

"A municipal policy may be pronounced or tacit and reflected in either action or inaction." *Cash v. County of Erie*, 654 F.3d 324, 333 (2d Cir. 2011); *see also Outlaw*, 884 F.3d at 372 ("[A] § 1983 plaintiff need not prove that his injury was caused by an explicitly stated municipal rule or regulation. . . . [A] municipality may be liable even for its inaction if, in its failure to act, it exhibited deliberate indifference to constitutional deprivations caused by subordinates." (quotations, alterations and citation omitted)). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. 51, 131 S. Ct. at 1359. In addition, municipal liability can be established "by showing that a policymaking official ordered or ratified the employee's actions - either expressly or tacitly." *Jones*, 691 F.3d at 81. "Thus, a plaintiff can prevail against a municipality by showing that the policymaking official was aware of the employee's unconstitutional actions and consciously chose to ignore them." *Id.* To establish such deliberate indifference, "a plaintiff must show that a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights." *Id.* "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action[,]" *Connick*, 563 U.S. 51, 131 S. Ct. at 1360 (quotations and citation omitted), and "requires a showing that the official made a conscious choice, and was not merely negligent." *Jones*, 691 F.3d at 81; *see also*

14

*Outlaw*, 884 F.3d at 373; *Cash*, 654 F.3d at 334.

To state a claim for municipal liability under Section 1983, a plaintiff must allege more than that a municipal policy or custom exists. *See Montero v. City of Yonkers, N.Y.*, 890 F.3d 386, 403-04 (2d Cir. 2018) ("[T]he mere assertion [] that a municipality has . . . a custom or policy is insufficient [to withstand dismissal] in the absence of allegations of fact tending to support, at least circumstantially, such an inference." (quotations, alterations and citation omitted)); *accord Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995); *see also Missel v. County of Monroe*, 351 F. App'x 543, 545 (2d Cir. Nov. 4, 2009) (summary order) ("To allege the existence of an affirmative municipal policy, a plaintiff must make factual allegations that support a plausible inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policymaking authority for the municipality.") "To survive a motion to dismiss a municipal liability claim, 'a plaintiff must allege facts tending to support, at least circumstantially, an inference that . . . a municipal policy or custom exists.'" *McLennon v. City of New York*, 171 F. Supp. 3d 69, 95 (E.D.N.Y. 2016) (quoting *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012)); *see also Smalls v. City of New York*, 181 F. Supp. 3d 178, 189 (E.D.N.Y. 2016) ("A complaint's mere assertion [] that a municipality has . . . a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." (quotations, alterations and citation omitted)).

Williams's amended complaint is devoid of any factual allegations from which it may reasonably be inferred (1) that a formal policy, officially endorsed by the County or the NCCC, existed with respect to the conduct or conditions of which he complains; (2) that any

15

policymaking official of the County or the NCCC (a) took any action or made any decision which caused the alleged constitutional violations, or (b) failed to properly train or supervise their subordinates with deliberate indifference to the rights of the prisoners who come into contact with them; or (3) that the conduct or conditions at the NCCC of which Williams complains was so persistent and widespread as to practically have the force of law. Since Williams only conclusorily asserts the existence of a policy or custom of the County, (*see* Am. Compl., ¶¶ 23-25), without any factual allegations to reasonably support such an inference, the amended complaint fails to plausibly allege a Section 1983 claim against the County. *See, e.g. Montero*, 890 F.3d at 404. Accordingly, the branch of defendants' motion seeking dismissal of Williams's Section 1983 claims as construed to be against the County pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and Williams's Section 1983 claims as construed to be against the County are dismissed in their entirety with prejudice for failure to state a claim for relief.[4]

III. CONCLUSION

For the reasons set forth above, defendants' motion to dismiss Williams's claims against the individual defendants in their official capacity; against Sposato and the Superintendent in

---

[4] Since, *inter alia*, Williams failed to cure the pleading deficiencies indicated in the Report in his amended complaint, and did not oppose defendants' motion to dismiss or seek leave to file a second amended complaint, his claims against Sposato and the County are dismissed in their entirety with prejudice. As Williams's claims against the individual defendants in their official capacity have also been dismissed with prejudice, the only remaining claims in this action are his claims against Corporal Hardy and the Correction Officers in their individual capacity, which do not involve common questions of law or fact with the other claims remaining in this consolidated action. Accordingly, Williams's remaining claims are severed from this consolidated action and will proceed under the original docket number assigned to his original complaint, 13-cv-4247.

their individual capacity; and as construed to be against the County pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and those claims are dismissed in their entirety with prejudice.   There being no just reason for delay, the Clerk of the Court shall enter judgment in favor of Sposato, the Superintendent and the County on Williams's claims against them in this action pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.   The Clerk of the Court shall sever Williams's remaining claims against Corporal Hardy and the "John Doe Officers" in their individual capacity from this consolidated action and re-open the case under docket number 13-cv-4247 for the purpose of proceeding with Williams's claims against those defendants.   A telephone status conference will be held in that action before the undersigned **on Wednesday, October 10, 2018 at 11:00 a.m.**   Defendants shall make the necessary arrangements for Williams's participation in the conference call and initiate the conference call.   Pursuant to Rule 77(d)(1) of the Federal Rules of Civil Procedure, the Clerk of the Court shall serve notice of entry of this order upon all current parties to the consolidated action in accordance with Rule 5(b) of the Federal Rules of Civil Procedure.

      The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal.   *See Coppedge v. United States*, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed.2d 21 (1962).

SO ORDERED.

                                                                    _____/s/_____
                                                                      Sandra J. Feuerstein
                                                                      United States District Judge

Dated: September 7, 2018
       Central Islip, New York